**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **FRIENDS OF LUBAVITCH, INC.,** | ) | |
| *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:18-cv-03943-GLR |
| | ) | |
| v. | ) | |
| | ) | |
| **BALTIMORE COUNTY,** | ) | |
| **MARYLAND**, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

_____

**<u>MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS</u>**

MICHAEL E. FIELD
COUNTY ATTORNEY

_____/s/_____
James J. Nolan, Jr. (#1875)
Assistant County Attorney
BALTIMORE COUNTY OFFICE OF LAW
400 Washington Avenue, Room 219
Baltimore, MD 21204

- and –

_____/s/_____
Harry S. Johnson (#00618)
Howard R. Feldman (#05991)
Peter W. Sheehan, Jr. (#29310)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202-1626

*Counsel for Defendants,
Baltimore County, Maryland,
Baltimore County Department of Planning,
and Baltimore County Board of Appeals*

TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     FACTS ................................................................................................................. 2

III.    STANDARD OF REVIEW .................................................................................. 9

IV.     ARGUMENT ..................................................................................................... 10

        A.    The Court Should Dismiss Plaintiffs' Claims Under the *Rooker-Feldman*
              Doctrine ...................................................................................................... 10

        B.    The Court Should Dismiss Plaintiffs' Claims Because Plaintiffs
              Lack of Standing. ....................................................................................... 14

        C.    The Court Should Dismiss Plaintiffs' RLUIPA Claims (Counts I-V) Because
              They Fail to State Plausible Claims for Relief ........................................... 18

              1.    Each of Plaintiffs' RLUIPA claims fail because the alleged harm does not
                    result from the County's imposition or implementation of a land use
                    regulation. ........................................................................................... 18

              2.    Additional arguments for dismissing the individual RLUIPA counts. . . . .19

                    a.    Substantial burden (Count I).................................................19

                    b.    Equal terms (Count II)..........................................................21

                    c.    Nondiscrimination (Count III)...............................................22

                    d.    Total exclusion (Count IV)....................................................23

                    e.    Unreasonable limits (Count V)..............................................24

                    f.    Standing of individual Plaintiffs under RLUIPA......................25

        D.    The Court Should Dismiss Plaintiffs' Section 1983 Claims (Counts VI-VIII)
              Because They Fail to State Plausible Claims for Relief. ........................... 25

              1.    Plaintiffs' Section 1983 claims fail because the County did not cause the
                    alleged harm................................................................................... 25

              2.    Additional arguments for dismissing the individual Section 1983
                    counts ............................................................................................. 26

                    a.    Free exercise (Count VI)........................................................26

b.   Equal protection (Count VII)……………………………………...27

c.   Due process (Count VIII)……………………………………………27

E.   The Court Should Dismiss Plaintiffs' State Law Defamation Count (Count IX) Because It Fails to State a Plausible Claim for Relief. ......................................... 29

F.   The Court Should Abstain the Under *Younger* Doctrine. .................................... 33

V.   CONCLUSION............................................................................................................. 35

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adhi Parasakthi Charitable, Medical, Educational, and Cultural Society of North America v. West Pikeland,*
    721 F. Supp. 2d 361 (E.D. Pa. 2010) ............................................................ 16-17, 24, 26

*Andon, LLC v. City of Newport News,*
    813 F.3d 510 (4th Cir. 2016) ..................................................................................... 18-21

*Ashcroft v. Iqbal,*
    556 U.S. 62 (2009) ...........................................................................................................9

*Bethel World Outreach Ministries v. Montgomery Cnty.,*
    706 F.3d 548 (4th Cir. 2013) ............................................................................... 20, 23-24

*Biser v. Town of Bel Air,*
    991 F.2d 100 (4th Cir. 1993) ...........................................................................................28

*Butz v. Economou,*
    438 U.S. 478 (1978) .........................................................................................................31

*Canton v. Harris,*
    489 U.S. 378 (1989) .........................................................................................................25

*Chien v. Grogan,*
    710 F. App'x 600 (4th Cir. 2018) ....................................................................................13

*Civil Liberties for Urban Believers v. Chicago,*
    342 F.3d 752 (7th Cir. 2003) ("*CLUB*") .........................................................................20

*Comite De Apoyo a Los Trabajadores Agricolas v. Dep't of Labor,*
    995 F.2d 510 (4th Cir. 1993) ...........................................................................................17

*Davani v. Va. DOT,*
    434 F.3d 712 (4th Cir. 2006) ................................................................................... 10-13

*Evans v. B.F. Perkins Co.*
    166 F.3d 642 (4th Circ. 1999) ...........................................................................................9

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,*
    544 U.S. 280 (2005) ...................................................................................... 10-11, 13-14

*Frank Krasner Enters. v. Montgomery Cnty.*,
    410 F.3d 230 (4th Cir. 2005) .................................................................. 14-16

*Friends of Ferrell Pkwy. v. Stasko*,
    282 F.3d 315 (4th Cir. 2002) .................................................................. 14-15

*Gohari v. Darvish*,
    767 A.2d 321 (Md. 2001) ............................................................................32

*Harper v. PSC*,
    396 F.3d 348 (4th Cir. 2005) ......................................................................33

*Hodge v. College of S. Md.*,
    121 F. Supp. 3d 486 (D. Md. 2015) ........................................................22, 29

*Jesus Christ Is the Answer Ministries v. Balt. Cnty.*,
    No. 18-1450, 2019 WL 469715 (4th Cir. Feb. 7, 2019) ...................................26

*Jordahl v. Democratic Party of Va.*,
    122 F.3d 192 (4th Cir. 1997) .................................................................. 12-14

*Kelly v. Med-l Solutions, LLC*,
    548 F.3d 600 (7th Cir. (2008) ......................................................................11

*Kline v. Burke Constr. Co.*,
    260 U.S. 226 (1922)...................................................................................34

*Kluckhuhn v. Ivy Hill Ass'n.*,
    461 A.2d 16 (Md. App. 1983).......................................................................34

*Lamar v. Ebert*,
    681 F.App'x 279 (4th Cir. 2017) ....................................................... 10, 12-13

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...................................................................................15

*Mercantile-Safe Deposit & Trust co. v. City of Balt.*,
    521 A.2d 734 (Md. 1987) ............................................................................19

*Migra v. Warren City Sch. Dist.*,
    465 U.S. 75 (1984).....................................................................................33

*Miller v. Brown*,
    462 F.3d 312 (4th Cir. 2006) .........................................................................9

*Mirant Potomac Tiver, LLC v. EPA,*
    577 F.3d 223 (4th Cir. 2009) ........................................................16

*Mostofi v. Midland Funding, LLC,*
    117 A.3d 639 (Md. App. 2015)................................................ 32-33

*Newman v. Indiana,*
    129 F.3d 937 (7th Cir. 1997) .......................................................14

*New Orleans Public Service, Inc. v. New Orleans,*
    491 U.S. 350 (1989)......................................................................33

*Offen v. Brenner,*
    935 A.2d 719 (Md. 2007) ........................................................ 30-31

*O'Malley v. Litscher,*
    465 F.3d 799 (7th Cir. 2006) .................................................. 13-14

*Parker v. State,*
    653 A.2d 436 (Md. 1995) .............................................................31

*Petra Presbyterian Church v. Village of Northbrook,*
    489 F.3d 846 (7th Cir. 2007) .......................................................21

*Prater v. City of Burnside,*
    289 F.3d 417 (6th Cir. 2002) .......................................................18

*Princess Lido of Thurn & Taxis v. Thompson,*
    305 U.S. 456 (1939)......................................................................34

*Publish Am., LLP v. Stern,*
    84A.3d 237 (Md. App. 2014)........................................................29

*Pulte Home Corp. v. Montgomery Cnty.,*
    909 F.3d 685 (4th Cir. 2018) .......................................................28

*Reichardt v. Flynn,*
    823 A.2d 566 (Md. 2005) .............................................................31

*Sec'y of State for Defence v. Trimble Navigation, Ltd.,*
    484 F.3d 700 (4th Circ. 2007)....................................................4, 9

*Siena Corp. v. Rockville,*
    873 F.3d 456 (4th Cir. 2017) .................................................. 27-28

*Sprint Communs., Inc. v. Jacobs,*
    571 U.S. 69 (2013) ................................................................. 33-34

*State Eng'r v. S. Ford Band of the Te-Moak Tribe of the W. Shoshone Indians of Nev.*
    339 F.3d 804 (9th Cir. 2003) ................................................... 34

*Steuart Transp Co. v. Ashe,*
    304 A.2d 788 (Md. 1973) ......................................................... 4

*Thana v. Bd. of License Comm'rs for Charles County,*
    827 F.3d 314 (4th Cir. 2016) ................................................ 12-13

*Tree of Life Christian Sch. v. Upper Arlington,*
    905 F.3d 357 (6th Cir. 2018) ................................................ 21-22

*Vision Church v. Long Grove,*
    468 F.3d 975, 990 (7th Cir. 2006) ................................... 23-24, 26

*Voge v. Olin,*
    518 A.2d 474 (Md. App. 1986) ................................................ 34

## STATUTES

28 U.S.C. § 1331 .......................................................................... 10

42 U.S.C. §§2000cc *et seq.* ............................................... *passim*

42 U.S.C. § 1983 .................................................................. *passim*

Md. Code Ann., Cts. & Jud. Procs., §5-105 ............................ 29

Md. Code Ann., Cts. & Jud. Procs., §5-304 ........................ 29-30

Md. R. 2-648 ............................................................................... 34

BCZR § 1B01 ...................................................................... 24, 32

Defendants Baltimore County, Maryland, Baltimore County Department of Planning, and Baltimore County Board of Appeals (collectively "Baltimore County" or the "County"), by their undersigned counsel, submit this Memorandum of Law in Support of their Motion to Dismiss.

## I.    INTRODUCTION

This lawsuit was prompted by a decision by the Circuit Court for Baltimore County, ordering Plaintiff Friends of Lubavitch, Inc. ("FOL") to raze a structure it erected on Aigburth Road in Towson (the "Structure").  In private litigation initiated against FOL by its neighbors (and not involving the County), the Circuit Court, on April 17, 2017, entered an order declaring that the Structure violates a restrictive covenant running with the land and ordered FOL to remove it by March 1, 2018.  FOL did not comply with the order and, on October 31, 2018, the Circuit Court ordered FOL to raze the Structure.

Seeking to redress harm alleged to arise from the Circuit Court's orders, Plaintiffs ask this Court to nullify them.  Specifically, they seek declaratory and injunctive relief, under the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* (Counts I-V), and under 42 U.S.C. § 1983 ("Section 1983") (Counts VI-VIII), to enjoin the "disruption, destruction, 'razing,' and disturbance" of the Structure and "any and all interference by the Defendants with Plaintiffs' use and occupancy" of the Structure.  Compl., at pp. 20-21. As to the County, Plaintiffs also seek compensatory damages based on a state law defamation claim (Count IX).[1]

None of Plaintiffs' theories of relief against the County have merit because:

- Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine because Plaintiffs ask this Court to redress injury caused by the decisions of a state court.

---

[1] Plaintiffs' seek compensatory damages from the County only with respect to their defamation claim.  Compl. ¶ 68.  Plaintiffs do not assert their defamation claim against the Circuit Court.

- Plaintiffs do not have standing to sue the County.  They have not suffered an "injury in fact" caused by the County; their alleged injury is not "fairly traceable" to the County; and a favorable verdict against the County will not redress their alleged injury.

- Plaintiffs' RLUIPA claims fail as a matter of law.  Although Plaintiffs baldly allege that their claims arise from "Defendants' implementation of the Baltimore County land use regulations," this case and the underlying Circuit Court orders to remove and raze the Structure stem from a private dispute between private parties over a private agreement, the application of principles of Maryland contract law by a state court, and the fashioning of an equitable remedy by that court.  Additionally, as a matter of law, Baltimore County has not imposed a substantial burden on Plaintiffs, treated FOL on less than equal terms compared to any nonreligious assembly, discriminated against FOL based on its religion, totally excluded religious assemblies, or unreasonably limited religious assemblies.

- Plaintiffs' Section 1983 claims fail as a matter of law for essentially the same reasons as their RLUIPA claims.

- The state law defamation claim fails for a variety of reasons.  It is time-barred by Maryland's one-year statute of limitations; Plaintiffs did not comply with Maryland's Local Government Tort Claims Act; the allegedly defamatory statements are subject to absolute or qualified privileges; the statements are not defamatory; and, regardless, they are true.

- Even if this Court had jurisdiction and Plaintiffs had stated plausible claims for relief, the Court nevertheless should abstain because the assailed Circuit Court order to raze the Structure was issued to effectuate an earlier order with which FOL has failed to comply.

Accordingly, the Court should dismiss Plaintiffs' Complaint as to Baltimore County, Maryland, Baltimore County Department of Planning, and Baltimore County Board of Appeals.

## II.    FACTS

FOL is a Maryland religious corporation committed to supporting and developing "the religious and educational activities of the Chabad-Lubavitch movement in the State of Maryland."  Compl. ¶ 3.  According to Plaintiffs, "Chabad-Lubavitch is an international Jewish Orthodox movement that teaches and practices Jewish religious observance in almost 4000 locations in more than 85 countries across the globe.  Rabbinic emissaries ('shluchim') are assigned by Chabad-Lubavitch to each of these locations in order to assist local Jews in the

exercise of their religious observances.  The premises on which these religious observances are conducted and where the 'shluchim' frequently reside are called 'Chabad Houses.'"  *Id.* at ¶ 23.

In 2008, FOL purchased property at 14 Aigburth Road (the "Property") in Towson, Maryland "to be used as a 'Chabad House' to provide Jewish religious hospitality and education for students at Towson University and Goucher College."  *Id.* at ¶¶ 18, 25.  FOL appointed Plaintiffs Rabbi and Sheina Rivkin (the "Rivkin Plaintiffs") "to reside in and administer the Towson Chabad House for the benefit and religious observance of students at Towson University and Goucher College" and "conduct Jewish religious activities for students and neighbors in the property as a 'Chabad House'"; and, since 2008, the Property has been "openly conducted as a campus 'Chabad House.'"  *Id.* at ¶¶ 4, 5, 21, 25.  The Rivkin Plaintiffs "posted a sign on the premises identifying it as a Chabad House" and "began inviting students at Towson University and Goucher College to participate in festive Shabbat and Jewish holiday meals, to engage in Jewish religious observances, and to study Jewish religious texts."  *Id.* at ¶ 27.  All of the activities at the Property have been "open and public."  *Id.*

When FOL began operating its Chabad House at the Property, the building was a 2,200 square-foot house but, because "the popularity of the Chabad House increased" over the years, FOL and the Rivkin Plaintiffs decided to erect a much larger building on the Property.  *Id.* at ¶¶ 21, 29.  In April 2016, FOL obtained a building permit to build the 6,614 square-foot Structure "to be used as additional living space for [the Rivkin] family"; and, in June 2016, FOL started excavation for the Structure.  *Id.* at ¶ 52; Petition for Zoning Hearing, No. 2016-0170-SPH, attached as **Exhibit A**; Circuit Court Order and Memorandum Opinion (April 17, 2017) (the "April 2017 Circuit Court Memorandum"), attached as **Exhibit B**, at 4-5, 10; *Friends of*

*Lubavitch, Inc. v. Zoll*, No. 372, Sept. Term, 2017 (Md. App. Oct. 23, 2018) ("Court of Special Appeals Opinion"), attached as **Exhibit C**, at 8.[2]

The ensuing litigation between FOL and neighboring property owners over FOL's violation of a restrictive setback covenant running with the land is the genesis of the injury about which Plaintiffs complain in this Court.[3]  *See* Compl. ¶¶ 53-67.  In July 2016, neighboring property owners, the Zolls,[4] and the neighborhood association, Aigburth Manor Association of Towson, Inc., informed FOL that the then-planned Structure would violate the restrictive covenant.  Ex. B at 18.  But FOL decided to proceed with construction, even though, at that point, "only excavation had begun."  *Id.*  Thus, not surprisingly, the Zolls filed suit to enforce the restrictive covenant contained in FOL's deed, chain of title, and the title insurance policy issued when FOL purchased the Property in 2008.  *See id.* at 10-11.  By the time trial started in the Circuit Court, however, FOL had completed construction of the Structure.  The County was not a party to, and did not participate in, the Circuit Court proceedings.

In the order it entered on April 7, 2017, the Circuit Court found that the Structure violates the Property's restrictive covenant and, accordingly, ordered FOL to "remove the Structure and

---

[2] In considering a motion to dismiss, the Court can "properly take judicial notice of matters of public record."  *Sec'y of State for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

[3] A covenant running with the land, or real covenant, is binding on subsequent owners and grantees indefinitely.  *Steuart Transp Co. v. Ashe*, 304 A.2d 788, 797 (Md. 1973).  Here, the relevant restrictive covenant is a setback requirement created by deed in 1950, when the owner of a single parcel of land subdivided the parcel, creating 14 and 16 Aigburth Road.  It requires a "setback equal to one-half of the total setbacks of the two houses erected on the lots adjoining to the East and West [of the Property], measured to the centre of said houses, exclusive of porches."  Ex. B at 2.  Based on the evidence considered by the Circuit Court, the Structure "violates the Setback Covenant."  *Id.* at 14.

[4] The Zolls reside at 16 Aigburth Road, which is adjacent to the Property.  Mrs. Zoll is trustee of two revocable trusts that jointly own 16 Aigburth Road.  Ex. B at 1.  For ease of reference, however, the County refers to the plaintiffs in the state court restrictive covenant litigation simply as the Zolls.

all other improvements that violate the Setback Covenant no later than March 1, 2018." Ex. B, Order, at 2.  In its accompanying Memorandum Opinion, the Circuit Court observed: "Rabbi Rivkin's demeanor was evasive and aggressive during questioning.  Thus, where his testimony differed from that of Robin Zoll, whom the Court found credible, the Court credited Mrs. Zoll's testimony." *Id.*, Memorandum, at 8.  The Circuit Court found that FOL "had actual notice of the Setback Covenant in 2008," but regardless, even in 2016 (when Rabbi Rivkin admitted FOL had actual notice), FOL still "chose to proceed with construction" and, thus, "assumed the risk of harm . . . for violating the Setback Covenant." *Id.* at 10-11, 18-19.  The Circuit Court determined that FOL made "no innocent mistakes" in building the Structure in violation of the restrictive covenant. *Id.* at 16.

On appeal to the Court of Special Appeals, FOL challenged the Circuit Court's order of specific performance.  In affirming the Circuit Court's April 2017 order, the appellate court held that the Circuit Court properly acted within its discretion.  Specifically, the appellate court reasoned: "FOL acted with actual knowledge of the restrictive covenants and intentionally completed construction of the offending [Structure] prior to the completion of trial. . . .  FOL was a 'willful violator' of the Setback Covenant.  Despite receiving actual notice of the restrictive covenants in 2008 and again in July 2016, Rabbi Rivkin testified that FOL decided to 'go ahead and build' anyway and proceed 'aggressively.'" Ex. C, Court of Special Appeals Opinion, at 40. The appellate court also noted: "Importantly, the [trial] court found Mrs. Zoll to be a credible witness and Rabbi Rivkin to be 'evasive and aggressive during questioning.'" *Id.* at 18.

Notwithstanding the Circuit Court's April 2017 order to remove the transgressing Structure by March 1, 2018 and the Court of Special Appeals' affirmance of the Circuit Court's order, FOL failed to comply, resulting in the Circuit Court appointing a receiver to "oversee

compliance." Circuit Court Order and Memorandum Opinion (Oct. 31, 2018) (the "October

2018 Circuit Court Memorandum"), attached as **Exhibit D**, at 3.[5] On October 31, 2018, the

Circuit Court directed FOL to raze the Structure, based on its ongoing violations of the restrictive

covenant and the Circuit Court's April 2017 order to remove the Structure by March 31, 2018.

*Id.* at 2, 3, 10. In exercising its discretion to fashion an equitable remedy, the Circuit Court

declined FOL's proposal to "remove the *original home* on the property and move the [Structure]

into that portion of the lot." *Id.* at 3, 9 (italics added). Applying the doctrine of unclean hands,

which, the Circuit Court observed, prevents endorsing or rewarding "inequitable conduct," the

Circuit Court reasoned that FOL's proposal would create an inequitable anomaly: removal of

"the legitimate residential structure from the lot," while leaving only the Structure, which, the

Circuit Count found, is not a residential building. *Id.* at 9.

Before rejecting FOL's proposal, the Circuit Court held a post-trial evidentiary hearing

on September 5, 2018 and made its *own* findings that it applied in fashioning a remedy for the

Zolls' claims for equitable relief.[6] *Id.* at 8. It found that Mrs. Zoll "testified credibly [at the

September 5 hearing] that Rabbi Rivkin openly used the property as a the Chabad House for both

Towson University and Goucher College [and] that the students come and go, the house is lit up

throughout the night, and open invitations are posted for students to attend events and celebrate

religious holidays at the Chabad House." *Id.* The Circuit Court also noted that Plaintiff Sheina

Rivkin, in her September 5 testimony, "acknowledged that [the Rivkin Plaintiffs] advertise and

host dinners, and open their home to area students." *Id.* In fashioning a remedy, the court also

---

[5] Plaintiffs' Complaint includes as an attachment the October 2018 Circuit Court Memorandum.
*See* ECF Doc. No. 1-2.

[6] Attached as **Exhibit E** is the transcript of the Circuit Court's September 5, 2018 evidentiary
hearing. The testimony of Mrs. Zoll begins at page 24, and the testimony of Mrs. Rivkin begins
at page 45.

relied on its earlier findings (made by a different judge) that Rabbi Rivkin's trial testimony was "evasive and aggressive" and that Mrs. Zoll's trial testimony about FOL's "use of the property as a Chabad House [was] credible." *Id.* at 7.  The Circuit Court also recited some of the history of unrelated administrative proceedings and observed that the Board of Appeals made findings that mirrored the findings also reached by the Circuit Court that FOL's use of the Property was not residential in nature only.[7]  *Id.*  Ultimately, the Circuit Court found: "However commendable the goal [of FOL and the Rivkin Plaintiffs], based upon the evidence produced in other proceedings and the findings that were made, and based upon the testimony presented in post-trial proceedings in this Court, it is clear that the use of the [Property] as a Chabad House has expanded far beyond what can fairly be characterized as residential use." *Id.* at 8.

At a January 10, 2019 hearing on FOL's motion to stay enforcement of the October 31, 2018 order to raze the Structure, the Circuit Court further explained the reasoning behind the equitable remedy it awarded the Zolls:

> What troubled me and what got me to equitable issues, and then the reason I am putting it out there is I want you to be able to give, you know, I want both sides to understand part of where my reasoning was.  This was not -- **this was post-judgment remedies, because a party had failed to comply with a court order**.
>
> **It was ordered to be done.  It wasn't done.**  Therefore, Judge Souder appointed a trustee to, you know, give effect to the order that she had entered.  And then my role was to give guidance to that person as to how to exercise their discretion, among a lot of ways of going at it, how are we going to do it.  That's what I think puts me in the equity camp.

---

[7] It is undisputed that neither FOL nor the Rivkin Plaintiffs requested from the County a special exception for a community center.  Instead, they submitted a petition to build the Structure "as additional living space for [the Rivkin] family" and obtained its building permit based on the petition.  Ex. A, Petition for Zoning Hearing; Ex. B, April 2017 Circuit Court Memorandum, at 6; Ex. D, October 2018 Circuit Court Memorandum, at 6.  But while the petition was on appeal to the Board of Appeals, FOL voluntarily dismissed its petition with prejudice.  Ex. D at 6.

> Because if this were simply, pay a judgment, or if it were for me, in the first instance, to decide what the remedy is, that's different to me than at a point where **[FOL] has failed to comply with the court's order in a timely fashion, and we are well beyond it**, and the court has appointed somebody to enforce, then within the range of ways to go about enforcing, **I think the court has to consider equitable principles.**

Transcript of Proceedings (Jan. 10, 2019), attached as **Exhibit F**, at 8-9 (emphasis added).

Although Plaintiffs' Complaint in this Court seeks to recast the still on-going litigation against the Zolls as a County zoning action (as opposed to what it is: wholly private litigation, in which the Circuit Court properly exercised discretion to fashion equitable relief against an intransigent defendant), FOL was more candid in its characterization of the underlying state court case when it appealed the Circuit Court's April 2017 decision to the Court of Special Appeals.  In its reply brief, it wrote:

> [T]his case is not about whether Appellant, Friends of Lubavitch, Inc. ("FOL") was, is, or will in the future use the addition as a house of worship in contravention of local zoning law. . . .
>
> **Rather, this case solely concerns whether the addition was constructed in violation of a setback restriction within a deed and, if so, to what remedy, if any, are the Appellees entitled.**  The [Zolls'] Complaint demanded that the addition either not be built or, to the extent the addition was constructed while the case was pending, **that it be torn down**."

Appellant's Reply Br. (April 23, 2018), *Friends of Lubavitch, Inc. v. Zoll*, No. 00372 (Md. App.), attached as **Exhibit G**, at 1 (emphasis added).[8]

The Structure *was* constructed while the Zolls' state court lawsuit was pending (because FOL "chose to proceed with construction") and, thus, the Circuit Court exercised its discretion to order that the Structure "be torn down"—precisely the relief the Zolls sought (and FOL knew

---

[8] *See supra* note 2.  The reply brief is also available on LEXIS and Westlaw: 2018 Md. Sp. App. Ct. Briefs LEXIS 119; 2018 WL 2759305 (Md. App.).

they sought) from the Circuit Court all along.  Thus, Plaintiffs cannot now claim in good faith

that the tear-down order, which they seek to collaterally attack here, is not solely the result of

private litigation concerning a private a restrictive covenant.  If any aspect of the Circuit Court's

decision was erroneous or an abuse of discretion, FOL's only avenue of recourse is with

Maryland's appellate courts.  The Circuit Court's decision did not convert the private litigation

before it into government action by Baltimore County.

## III.    STANDARD OF REVIEW

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead enough

"factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals

of the elements of a cause of action, supported by mere conclusory statements" are insufficient.

*Id.*  In considering a motion to dismiss under Rule 12(b)(6), the Court "may consider documents

attached to the complaint" and "take judicial notice of matters of public record." *Sec'y of State*

*for Defence v. Trimble Navigation, Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007).

Additionally, "before a federal court can decide the merits of a claim, the claim must

invoke the jurisdiction of the court." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

Plaintiffs bear the burden of proving that subject matter jurisdiction exists. *Evans v. B.F. Perkins*

*Co.*, 166 F.3d 642, 647 (4th Cir. 1999).  The court should grant a motion to dismiss lack of

subject matter jurisdiction under Rule 12(b)(1), if the "material jurisdictional facts are not in

dispute and the moving party is entitled to judgment as a matter of law. *Id.*  In considering a

motion to dismiss under 12(b)(1), the court "should regard the pleadings as mere evidence on the

issue, and may consider evidence outside the pleadings without converting the proceeding to one

for summary judgment." *Id.*

IV.    **ARGUMENT**

A.    **The Court Should Dismiss Plaintiffs' Claims Under the *Rooker-Feldman* Doctrine.**

The *Rooker-Feldman* doctrine prohibits federal district courts from exercising subject matter jurisdiction over cases like this one: "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *see also Lamar v. Ebert*, 681 F. App'x 279, 287 (4th Cir. 2017) ("*Rooker-Feldman* prevents a losing party in state court from 'complaining of an injury caused by the state-court judgment and seeking federal-court review and rejection of that judgment.'"); *Davani v. Va. DOT*, 434 F.3d 712, 713 (4th Cir. 2006) ("[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself.").  The doctrine is rooted in the federal district courts' Congressionally-mandated authority to act solely as courts of original jurisdiction.  *See Exxon Mobil Corp.*, 544 U.S. at 283 ("Federal courts . . . are empowered to exercise original, not appellate, jurisdiction."); *see also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

In *Davani*, the Fourth Circuit explained the framework for applying the *Rooker-Feldman* doctrine following the Supreme Court's decision in *Exxon*:[9]

> ***Exxon* requires us to examine whether the state-court loser who files suit in federal district court seeks redress for an injury caused by the state-court decision itself.**  If he is not

---

[9] In *Davani*, the Fourth Circuit observed that the Supreme Court, in *Exxon*, sought to return the *Rooker-Feldman* doctrine to its original application: prohibiting a losing party in a state court proceeding from repairing to federal court to seek "redress for an injury caused by the state court's decision itself."  *Davani*, 434 F.3d at 716.

> challenging the state-court decision, the *Rooker-Feldman* doctrine does not apply.  If, on the other hand, he is challenging the state-court decision, the *Rooker-Feldman* doctrine applies. It is important to note that the *Rooker-Feldman* doctrine applies in this second situation even if the state-court loser did not argue to the state court the basis of recovery that he asserts in the federal district court. **A claim seeking redress for an injury caused by the state court decision itself -- even if the basis of the claim was not asserted to the state court -- asks the federal district court to conduct an appellate review of the state-court decision.**

*Davani*, 434 F.3d at 718-19 (emphasis added; internal citations omitted).

In *Davani*, the Fourth Circuit also made plain that any claims attacking a state court decision are, by their very nature, "inextricably intertwined" with the decision itself and, thus, are out-of-bounds when asserted in an original action in federal court:

> Under *Exxon*, then, *Feldman's* "inextricably intertwined" language does not create an additional legal test for determining when claims challenging a state-court decision are barred, but merely states a conclusion: if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, "inextricably intertwined" with the state court decision, and is therefore outside of the jurisdiction of the federal district court.

*Id.* at 719; *accord Kelly v. Med-1 Solutions, LLC*, 548 F.3d 600, 607 (7th Cir. 2008) ("[T]he Supreme Court definitively concluded in *Exxon Mobil* that lower federal courts do not have subject matter jurisdiction in cases in which the plaintiff complains of an injury that cannot be separated from the state court judgment.  In those cases, regardless of the opportunity that he or she had to raise the claim in state court, the litigant must appeal through the state court system and then seek review in the United States Supreme Court . . . .").

Thus, the question for a court considering the *Rooker-Feldman* doctrine's application is whether, regardless of the particular claims being asserted, boiled-down, the plaintiff in federal court is seeking redress for an injury allegedly caused by a state court decision.  *Davani*, 434

F.3d at 713.  If so, the federal court is improperly being "called upon to exercise appellate jurisdiction over a state court judgment."  *Thana v. Bd. of License Comm'rs for Charles County, Md.*, 827 F.3d 314, 321 (4th Cir. 2016).  "If the *Rooker-Feldman* doctrine bars review, a federal court can consider neither 'adjudications of the state's highest court' nor 'decisions of its lower courts.'"  *Lamar*, 681 F. App'x at 287 (quoting *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 199 (4th Cir. 1997)).[10]

Plaintiffs' lawsuit is a hornbook example of when the *Rooker-Feldman* doctrine applies. *First*, the Circuit Court issued the assailed decisions while exercising its equity jurisdiction in a private dispute between private parties (FOL and the Zolls) over application of a private restrictive covenant under Maryland law.  *Second*, the alleged harm about which Plaintiffs complain, and from which they now seek relief in this Court, ultimately derives from the Circuit Court's April 2017 decision ordering FOL to "remove the Structure and all other improvements that violate the Setback Covenant no later than March 1, 2018."  *See* Ex. B, Order, at 2.  FOL appealed the April 2017 decision to the Court of Special Appeals, which affirmed the decision, and FOL did not petition the Court of Appeals of Maryland for a writ of *certiorari*.  FOL failed to comply with the removal order and, consequently, on October 31, 2018, the Circuit Court ordered FOL to raze the Structure.  Ex. D, Order.  This lawsuit is simply FOL's latest attempt to avoid the effects of the Circuit Court's decisions.  To be sure, the gravamen of Plaintiffs' Complaint in this Court is that "a Maryland Circuit Court has ordered demolition of a building that was constructed at a cost of $800,000 following the issuance of a building permit."  Compl. at p. 2; *see also* Compl. at ¶¶ 62-63.  And Plaintiffs ask this Court to enjoin the "disruption,

---

[10] "The *Rooker-Feldman* doctrine . . . reinforces the important principle that review of state court decisions must be made to the state appellate courts, and eventually to the Supreme Court, not by federal district courts or courts of appeals."  *Jordahl*, 122 F.3d at 202.

destruction, 'razing,' and disturbance" of the Structure and "any and all interference by the

Defendants with Plaintiffs' use and occupancy" of the Structure. *Id.* at pp. 20-21. The fact that

**Plaintiffs have sued the Circuit Court** highlights that, indeed, in this Court they are seeking

redress for an injury caused by the decisions of the Circuit Court.[11] Thus, this Court cannot grant

Plaintiffs the relief they seek without reviewing the Circuit Court's April 2017 and October 31,

2018 decisions and, thereby, violating the *Rooker-Feldman* doctrine.

Repairing to federal court to forestall or undo the very effects of a state court decision is

precisely what the *Rooker-Feldman* doctrine prohibits.[12] Plaintiffs cannot avoid the doctrine's

jurisdictional bar by dressing up their attack on the Circuit Court's decisions in federal RLUIPA

and Section 1983 claims not raised in the Circuit Court. *Davani*, 434 F.3d at 718-719 ("A claim

seeking redress for an injury caused by the state court decision itself -- even if the basis of the

claim was not asserted to the state court -- asks the federal district court to conduct an appellate

review of the state-court decision."); *Jordahl*, 122 F.3d at 202 ("[T]he VLC may not escape the

jurisdictional bar of *Rooker-Feldman* by merely refashioning its attack on the state court

judgments as a § 1983 claim."); *O'Malley v. Litscher*, 465 F.3d 799, 802-803 (7th Cir. 2006)

(dismissing plaintiff prisoner's RLUIPA claim under *Rooker-Feldman* and observing that "[i]t

makes no difference that [his] disagreement with the state-court order [authorizing his force-

---

[11] Stated simply, it is plainly evident that this lawsuit would not have been filed but for the
Circuit Court's issuance of the April 2017 and October 2018 orders about which Plaintiffs
complain.

[12] *See Chien v. Grogan*, 710 F. App'x 600, 600 (4th Cir. 2018) ("Chien lost in state court and is
now seeking to attack a judgment that preceded the instant federal action. That he cannot do.");
*Lamar*, 681 F. App'x at 287 ("*Rooker-Feldman*'s jurisdictional bar 'extends not only to
constitutional claims presented to or adjudicated by the state courts but also to claims that are
inextricably intertwined with a state court judgment."); *Jordahl*, 122 F.3d at 203 ("If the state
courts did not issue the injunctions, the VLC would have no harm of which to complain. Thus, .
. . the VLC's claims are barred by the *Rooker-Feldman* doctrine." (citation omitted)); *see also
Thana*, 827 F.3d at 321 (recognizing that the presence of harm derived from the state court
judgment itself is "fundamental to the controlling indicia articulated . . . in *Exxon*").

feeding] is cast in the form of a civil rights action" or that his "RLUIPA argument was not made

in the state proceedings").  Nor can Plaintiffs avoid the doctrine's jurisdictional bar by suing

Baltimore County instead of the Zolls, in whose favor the Circuit Court entered the judgment

Plaintiffs now assail.  *See Jordahl*, 122 F.3d at 202 ("The controlling question in the *Rooker-*

*Feldman* analysis is whether a party seeks the federal district court to review a state court

decision . . . ."); *see also Newman v. Indiana*, 129 F.3d 937, 942 (7th Cir. 1997) ("*Rooker-*

*Feldman* . . . cannot be gotten around by changing the *dramatis personae*.").

Accordingly, the Court should dismiss Plaintiffs' claims under the *Rooker-Feldman*

doctrine for lack of subject matter jurisdiction.[13]

**B.     The Court Should Dismiss Plaintiffs' Claims Because Plaintiffs Lack of Standing.**

"The standing doctrine is an indispensable expression of the Constitution's limitation on

Article III courts' power to adjudicate 'cases and controversies.'"  *Frank Krasner Enters. v.*

*Montgomery Cnty.*, 410 F.3d 230, 234 (4th Cir. 2005).  Article III standing includes three

essential elements: "injury, traceability, and redressability."  *Friends of Ferrell Pkwy. v. Stasko*,

282 F.3d 315, 320 (4th Cir. 2002).  Stated more fully:

> To have a claim heard in federal court, a plaintiff must establish:
> (1) an "injury in fact" to a "legally protected interest" that is both
> "(a) concrete and particularized, and (b) actual or imminent, not
> conjectural or hypothetical"; (2) a causal connection between the
> injury and the conduct complained of that is "fairly traceable," *and*
> *not "the result of the independent action of some third party not*
> *before the court"*; and (3) a non-speculative likelihood that the
> injury would be redressed by a favorable judicial decision.

---

[13] Based on the nature of Plaintiffs' allegations, only the defamation claim (Count IX) appears to be an "independent claim," *Exxon*, 544 U.S. at 293, as opposed to an attack on the Circuit Court's decisions.  However, as explained below, Plaintiffs' defamation claim fails as a matter of law for several reasons and, even if such claim was plausible on its face, the Court should decline to exercise supplemental jurisdiction over it in the absence of federal jurisdiction over the remaining claims.

*Frank Krasner Enters.*, 401 F.3d at 234 (italics in original) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).  At the motion to dismiss stage, the plaintiff bears the burden of establishing all elements of standing "because it is the party seeking to invoke federal jurisdiction." *Friends of Ferrell Pkwy.*, 282 F.3d at 320 (affirming dismissal of plaintiffs' lawsuit for lack of standing).  Whether a plaintiff has sufficiently established standing to sue is a question of law.  *Frank Krasner Enters.*, 401 F.3d at 234.

Here, Plaintiffs' claims against the County do not satisfy any elements of Article III standing.  *First*, Plaintiffs have not alleged (and cannot allege) a cognizable "injury in fact." They have no legally protected interest in maintaining a structure that the Circuit Court found violates a restrictive covenant or in continuing to violate the Circuit Court's April 2017 order to remove the Structure no later than March 1, 2018.  *Cf. Friends of Ferrell Pkwy.*, 282 F.3d at 321 (holding that plaintiff had not incurred an injury in fact from not getting the desired roadway, when plaintiff had no entitlement to the desired roadway).

*Second*, Plaintiffs' alleged injury is not "fairly traceable" to the County.  The Circuit Court litigation is solely a private dispute between neighboring property owners concerning enforcement of a private agreement—namely, a restrictive covenant—and the appropriate equitable relief available to the affected landowners, as determined by the Circuit Court.  The County was not involved in the case.  In ordering FOL to raze the Structure, the Circuit Court exercised *its* broad equitable discretion and awarded the Zolls the relief *they* requested.

*Third*, Plaintiffs have not shown (and cannot show) a "non-speculative likelihood" that a favorable verdict against Baltimore County in this lawsuit will redress their alleged injury.  "An injury sufficient to meet the causation and redressability elements of the standing inquiry must result from the actions of the respondent, not from the actions of a third party beyond the Court's

control." *Mirant Potomac River, LLC v. EPA*, 577 F.3d 223, 226 (4th Cir. 2009).  Where, as

here, "the actions of an independent third party, who [i]s not a party to the lawsuit, st[ands]

between the plaintiff and the challenged actions" of the defendant, the plaintiff does not have

standing.  *Frank Krasner Enters.*, 410 F.3d at 235.  The County has not ordered Plaintiffs to raze

the Structure or participated in the Circuit Court litigation that yielded the order.  Rather, the

Zolls sought, and ultimately obtained, the order, and they are not even parties to this case.

   *Adhi Parasakthi Charitable, Medical, Educational, and Cultural Society of North*

*America v. West Pikeland*, 721 F. Supp. 2d 361 (E.D. Pa. 2010) is instructive.  There, the

plaintiff organization filed suit against a local government under RLUIPA, after the local

government denied the plaintiff's conditional-use application for a temple.  In pertinent part, the

court held that the plaintiff lacked standing to pursue its RLUIPA claims against the local

government, as it was "not clear" to the court whether the plaintiff's harm resulted from the local

government's application of a zoning ordinance or whether a favorable outcome would redress

the plaintiff's harm.  *Adhi*, 721 F. Supp. 2d at 382-83.  Specifically, the court observed that the

plaintiff's property was subject to a restrictive covenant affecting the plaintiff's intended

development of the property.  *Id.* at 384.  Thus, the court reasoned:

> If this restrictive covenant is valid, applicable, and enforceable,
> Plaintiff will not be able to build on its property regardless of the
> limitations of Defendant's Zoning Ordinance or the conditional-use
> decision of Defendant's Zoning Board. In such circumstances, it
> would not be Defendant's Zoning Ordinance that caused the injury,
> and a finding that the Ordinance, either facially or as applied,
> violated RLUIPA would not redress Plaintiff's injury.

> *      *      *

> Plaintiff, therefore, is prohibited from constructing the desired
> temple due to the operation of the restrictive covenant, which was
> on the property when Plaintiff purchased the land, and of which
> Plaintiff had, at a bare minimum, constructive knowledge. **In these**

16

> **circumstances, it is not Defendant but the restrictive covenant**
> **that is responsible for any potential substantial burden.**

*Id.* at 383, 384 (emphasis added).

Here too, the Property is subject to a restrictive covenant that has impeded Plaintiffs'

desired use of the Property, and a finding, however improbable, that some Baltimore County law

caused them injury will not redress such injury.  The Circuit Court presided over private

litigation not involving the County to enforce the covenant and, in so doing, exercised its broad

equitable power to award the Zolls the specific relief they requested: an order to raze the

Structure.  That order, and not any action by the County, is *secondarily* responsible for any

injury incurred by Plaintiffs.  Having bought the Property subject to a restrictive covenant and

then blatantly ignoring it, FOL, of course, is *primarily* responsible for such injury.

*Finally*, Plaintiffs also lack standing because Article III prohibits advisory opinions.  *See*

*Comite De Apoyo a Los Trabajadores Agricolas v. Dep't of Labor*, 995 F.2d 510, 514 (4th Cir.

1993).  The Zolls possess a clear and unambiguous judgment requiring FOL to raze the

Structure, which they can enforce as far as Maryland law permits.  But *the Zolls* are not parties to

Plaintiffs' suit in this Court to nullify *the Zolls'* judgment; thus, they will not be bound by this

Court's rulings.  *Id.*  As a consequence, the primary relief Plaintiffs seek here, declaratory and

injunctive relief prohibiting the razing of the Structure and interference with its use, "would be

purely advisory."  *See id.* (holding that plaintiff farmers lacked standing in action against

Department of Labor to recalculate wages, because the farmers' employer, who would have to

pay the wages, was not a party and would not be bound by any judgment, rendering the

requested judgment "purely advisory" and "precisely the kind of judgment Article III forbids").

Accordingly, the Court should dismiss Plaintiffs' claims against the County for lack of

standing.

**C.      The Court Should Dismiss Plaintiffs' RLUIPA Claims (Counts I-V) Because They Fail to State Plausible Claims for Relief.**

   1.      *Each of Plaintiffs' RLUIPA claims fail because the alleged harm does not result from the County's imposition or implementation of a land use regulation.*

To state a plausible claim for relief under each of RLUIPA's provisions, a plaintiff must show that the harm alleged is the result of the government's imposition or implementation of a land use regulation.  42 U.S.C. § 2000cc.  RLUIPA defines "land use regulation" as "a zoning or landmarking law, or the application of such a law, that limits or restricts a claimant's use or development of land (including a structure affixed to land), if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest."  *Id.* at § 2000cc-5(5).  "Under this definition, a government agency implements a 'land use regulation' only when it acts pursuant to a 'zoning or landmarking law' that limits the manner in which a claimant may develop or use property in which the claimant has an interest."  *Prater v. City of Burnside*, 289 F.3d 417, 434 (6th Cir. 2002).  For example, applying RLUIPA's substantial burden provision, the Fourth Circuit has recognized that RLUIPA requires the plaintiff to show that the government defendant's "imposition of a regulation regarding land use, or application of such a regulation, *caused*" the alleged harm—in other words, that the burden was "imposed *by* governmental action."  *Andon, LLC v. City of Newport News*, 813 F.3d 510, 514, 516 (4th Cir. 2016) (affirming dismissal of RLUIPA substantial burden claim) (italics added).

Here, Plaintiffs have not alleged (and cannot allege) that they sustained any injuries caused by "a land use regulation" imposed or implemented by Baltimore County.  The County did not order Plaintiffs to remove or raze the Structure; the Circuit Court did.  The claims asserted in the Circuit Court litigation were not based on Baltimore County laws or regulations,

18

but on a private restrictive covenant. The Circuit Court litigation is solely a private dispute, between private parties, over FOL's continued noncompliance with the restrictive covenant and the Circuit Court's April 2017 order; and the claims asserted in the Circuit Court litigation turned solely on principles of Maryland contract and equity law.  In ordering FOL to raze the Structure as an equitable remedy, the Circuit Court relied on findings of fact as to FOL's use of the Structure made both at trial and following the September 5, 2018 post-trial evidentiary hearing. Ex. D, October 2018 Circuit Court Memorandum, at 7-8.

In any event, a restrictive covenant is not a "land use regulation" within the meaning of RLUIPA; it is a private agreement between landowners.  *Mercantile-Safe Deposit & Trust Co. v. City of Balt.*, 521 A.2d 734, 736-737 (Md. 1987) (recognizing that a covenant running with the land is a contract that "touches and concerns" land and that courts interpret it by looking to the intent of the original contracting parties).  In fact, the Circuit Court's April 2017 opinion correctly noted that administrative agencies, such as the Board of Appeals, "do not have the authority to enforce restrictive covenants."  Ex. B at 20.  The Circuit Court's October 31, 2018 order to raze the Structure resulted from its application of Maryland contract law and the exercise of its equitable power to fashion appropriate relief.  Ex. D at 9.

Accordingly, all of Plaintiffs' RLUIPA claims (Counts I-V) fail as a matter of law.

2.    *Additional arguments for dismissing the individual RLUIPA counts.*

a.    Substantial burden (Count I)

RLUIPA prohibits a government from imposing or implementing a land use regulation "in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution," unless the government demonstrates that its actions were in furtherance of a compelling government interest and narrowly tailored to serve that interest.  42 U.S.C. § 2000cc(a)(1).  The purpose of RLUIPA's substantial burden provision "is to protect a

plaintiff's reasonable expectation to use real property for religious purposes." *Andon*, 813 F.3d at 515. Thus, "[a] self-imposed hardship generally will not support a substantial burden claim under RLUIPA, because the hardship was not imposed by governmental action altering a legitimate, pre-existing expectation that a property could be altered for a particular land use." *Id.* Instead, a plaintiff must show that "a government regulation puts substantial pressure on it to modify its behavior." *Bethel World Outreach Ministries v. Montgomery Cnty.*, 706 F.3d 548, 556 (4th Cir. 2013). A land use regulation imposes a substantial burden if it "necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise—including the use of real property for the purpose thereof within the regulated jurisdiction generally— effectively impracticable." *Civil Liberties for Urban Believers v. Chicago*, 342 F.3d 752, 761 (7th Cir. 2003) ("*CLUB*").[14]

Here, FOL had actual knowledge of the restrictive covenant running with the land when it purchased the Property in 2008. Ex. B, April 2017 Circuit Court Memorandum, at 10-11; Ex. C, Court of Special Appeals Opinion, at 40. It had actual knowledge again in 2016 when, while only excavation for the Structure was ongoing, its neighbors informed it that the Structure would violate the restrictive covenant. Ex. B at 18-20; Ex. C at 2. But FOL "chose to proceed with construction," completing the Structure before trial even commenced in the Circuit Court. Ex. C at 19, 20, 40. As a result, the Circuit Court found, FOL made "no innocent mistakes" and, thus, "assumed the risk of harm" for violating the covenant. Ex. B at 16, 19; Ex. C at 19, 20, 21, 40. In April 2017, the Circuit Court enjoined FOL from continuing to violate the covenant and ordered FOL to remove the Structure by March 1, 2018 (giving FOL nearly a year to comply). Ex. B, Order, at 2. But FOL failed to comply with the Circuit Court's order, knowing all the

---

[14] In *Bethel*, the Fourth Circuit quoted, with approval, the above language from *CLUB*. 706 F.3d at 556. It also relied on *CLUB* in *Andon*. 813 F.3d at 516.

while that the specific relief sought by its litigation adversaries, the Zolls, was that the Structure "be torn down." Ex. G at 1. Thus, FOL's current predicament is entirely self-imposed and its RLUIPA substantial burden claim must, therefore, be dismissed.

In *Andon*, the Fourth Circuit affirmed the dismissal of a RLUIPA substantial burden claim where a religious organization never had a reasonable expectation of using the property as it intended due to a setback requirement existing when it signed a lease for the subject property. 813 F.3d at 515-16. The religious organization's burden was not imposed by the setback requirement but was self-imposed when it leased a property knowing that it required a variance to use the property as a church. *Id.* Likewise, here, FOL's harm was self-imposed when it bought the Property knowing it was subject to a restrictive covenant and, notwithstanding, built the Structure in violation of the restrictive covenant. FOL never had a reasonable expectation of being able to build the Structure in violation of the restrictive covenant. *See also Petra Presbyterian Church v. Village of Northbrook*, 489 F.3d 846, 851 (7th Cir. 2007) (holding that plaintiff was not substantially burdened when it imposed a burden on itself by buying property in an industrial zone after being informed that a special use application as a church would be denied because churches were banned in the zone). Accordingly, Plaintiffs' RLUIPA substantial burden claim fails as a matter of law.

b.      Equal terms (Count II)

RLUIPA also prohibits a government from imposing or implementing a land use regulation "in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). Congress, however, did not intend RLUIPA's equal terms provision "to extend preferential treatment to religious entities." *Tree of Life Christian Sch. v. Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018). Here, Plaintiffs have not alleged (and cannot allege) facts suggesting that Baltimore County has

treated FOL any differently than it has treated a "nonreligious assembly or institution."[15]  FOL

has not even identified a nonreligious entity that it alleges has been treated more favorably.  *See*

*Hodge v. College of S. Md.*, 121 F. Supp. 3d 486, 493 (D. Md. 2015) (noting that "conclusory

factual allegations devoid of any reference to actual events" cannot defeat a motion to dismiss).[16]

Moreover, FOL has not alleged a plausible reason to assume that a nonreligious entity

would not have been ordered to tear down an offending building, after violating a restrictive

covenant and refusing to comply with the court order requiring it to remove the building.  In fact,

such an assumption is unlikely.  In its October 2018 opinion, the Circuit Court, quoting the

Board of Appeals, noted "'everyone's natural inclination to *defer* to religious organizations'" and

that FOL's neighbors, "'[l]ike most people of goodwill, . . . tolerated [FOL's] activities until it

was announced that [FOL] was going to expand the size of the structure with the corresponding

natural expansion of its activities.'"  Ex. D at 6-7 (italics added).  In any event, FOL cannot

prevail on an equal terms claim where, like here, the claimed harm is self-imposed; otherwise,

FOL would be the beneficiary of "preferential treatment," not equal treatment.  *See Tree of Life*,

905 F.3d at 368.  Accordingly, FOL's RLUIPA equal terms claim fails as a matter of law.

c.    Nondiscrimination (Count III)

RLUIPA also prohibits a government from imposing or implementing a land use

regulation "that discriminates against any assembly or institution on the basis of religion or

---

[15] It is, of course, the Circuit Court (a part of the judicial branch of the State of Maryland), and not Baltimore County, that has subjected Plaintiffs to the treatment about which they complain herein.

[16] It is not surprising that Plaintiffs have not identified a nonreligious institution for purposes of their RLUIPA equal terms claim or a similarly situated entity for purposes of their Section 1983 equal protection claim.  To be comparable or similar for purposes of such claims, the entity would have to be a property owner subject to a restrictive covenant like the one in question.  *See Tree of Life*, 905 F.3d at 368 ("[A] comparator for an equal terms claim must be similarly situated *with regard to the regulation at issue.*" (italics in original)).

religious denomination." 42 U.S.C. § 2000cc(b)(2). To proceed under RLUIPA's

nondiscrimination provision, FOL must allege facts showing that Baltimore County acted against

it based on religious animus—*i.e.*, *because* it is a religious organization. *See Bethel*, 706 F.3d at

560 ("Bethel [] has failed to put forth any evidence that the County took those measures because

Bethel and Dearwood are religious organizations"). It has not done so. In fact, as explained

above, the Circuit Court, in its October 2018 opinion, noted "'everyone's natural inclination to

*defer* to religious organizations'" and that FOL's neighbors, "'[l]ike most people of goodwill, . . .

tolerated [FOL's] activities until it was announced that [FOL] was going to expand the size of

the structure . . . .'" Ex. D at 6-7 (italics added).

Furthermore, FOL has not alleged facts showing that Baltimore County "discriminated

*between* religious denominations." *See Bethel*, 706 F.3d at 560 n. 5 (italics in original).

Specifically, it has not alleged the existence of any "similarly situated [religious] entity" that

received preferential treatment from Baltimore County. *See id.*

Accordingly, FOL's RLUIPA nondiscrimination claim fails as a matter of law.

d.     Total exclusion (Count IV)

RLUIPA also prohibits a government from imposing or implementing a land use

regulation "that totally excludes religious assemblies from a jurisdiction." 42 U.S.C. §

2000cc(b)(3)(A). FOL, however, has not alleged (and cannot allege) facts showing that

Baltimore County "totally excludes religious assemblies." *Vision Church v. Long Grove*, 468

F.3d 975, 990 (7th Cir. 2006) ("In the present case, the Village, by permitting churches in all

residential districts as a special use, has not completely or totally excluded religious assemblies

from its jurisdiction.").[17]  Accordingly, FOL's RLUIPA total exclusion claim fails as a matter of law.

e.    Unreasonable limits (Count V)

RLUIPA also prohibits a government from imposing or implementing a land use regulation "that unreasonably limits religious assemblies, institutions, or structures within a jurisdiction."  42 U.S.C. § 2000cc(b)(3)(B).  To proceed under RLUIPA's unreasonable limits provision, FOL must allege facts showing that "religious organizations are left without a reasonable opportunity to build elsewhere" in Baltimore County.  *See Bethel*, 706 F.3d at 560.  It has not done so.[18]

Additionally, FOL's alleged injury here emanates from its own failures to comply with the Property's restrictive covenant and the Circuit Court's April 2017 order enjoining it to remove the Structure.  As one court observed, "we do not think that it can be an unreasonable limitation to require a property owner to comply with a restrictive covenant on the land. . . . From the plain language of [RLUIPA's unreasonable limits provision] it is clear that the purpose of this subsection is not to examine the restrictions placed on individual landowners, but to prevent municipalities from broadly limiting where religious entities can locate."  *Adhi*, 721 F. Supp. 2d at 387.

Accordingly, FOL's unreasonable limits claim fails as a matter of law.

---

[17] Here, "buildings for religious worship or other religious institutions" and "community buildings" are actually permitted uses in the Property's zone (D.R.5.5.)—the former "as of right," the latter with a "special exception."  BCZR § 1B01.1.A.3, C.4.  Notably, the County has not made any determination that that the Property itself cannot be used for religious assembly, and Plaintiffs make no such allegation.

[18] *See supra* note 17.

f.      Standing of individual Plaintiffs under RLUIPA

RLIUPA's provisions apply only to "land use regulations." 42 U.S.C. § 2000cc.

RLUIPA defines "land use regulation" as "a zoning or landmarking law, or the application of

such a law, that limits or restricts a claimant's use or development of land (including a structure

affixed to land), **if the claimant has an ownership, leasehold, easement, servitude, or other**

**property interest** in the regulated land or a contract or option to acquire such an interest." *Id.* at

§ 2000cc-5(5) (emphasis added).  Thus, only persons with property interests can sue under

RLUIPA.  Here, however, only FOL and the Rivkin Plaintiffs allege a cognizable property

interest in the Property.  Accordingly, all RLUIPA counts (Counts I through V) should be

dismissed as to Plaintiffs Avigail London, Uri London, Margaret Kay, Danielle Gold, Jessica

Teich, Ilan Pluznik, Abby Adelman, and Jessica Rudin.

Additionally, by their plain terms, RLUIPA's equal terms, nondiscrimination, total

exclusion, and unreasonable limits provisions apply only to religious assemblies.  *Id.* at §

2000cc(b).  Here, only FOL qualifies.  Accordingly, the equal terms, nondiscrimination, total

exclusion, and unreasonable limits counts (Counts II through V) must be dismissed as to all of

the individual Plaintiffs: Rabbi Menachem Rivkin, Sheina Rivkin, Avigail London, Uri London,

Margaret Kay, Danielle Gold, Jessica Teich, Ilan Pluznik, Abby Adelman, and Jessica Rudin.

**D.      The Court Should Dismiss Plaintiffs' Section 1983 Claims (Counts VI-VIII)**
**        Because They Fail to State Plausible Claims for Relief.**

1.      *Plaintiffs' Section 1983 claims fail because the County did not cause the*
        *alleged harm.*

Liability under Section 1983 attaches "only where the municipality *itself* causes the

constitutional violation at issue." *Canton v. Harris*, 489 U.S. 378, 385 (1989) (italics in

original).  Here, however, as explained above, the County did not cause the harm about which

Plaintiffs now complain.  The Circuit Court litigation is a private dispute concerning

enforcement of a restrictive covenant, and the Circuit Court's orders as to liability and remedy turned on principles of Maryland state law. In ordering FOL to raze the Structure, the Circuit Court exercised *its* broad equitable discretion and awarded the Zolls the relief *they* requested. The County was not involved in the case. Accordingly, Plaintiffs' Section 1983 claims (Counts VI-VIII) fail as a matter of law.

    2.    *Additional arguments for dismissing the individual Section 1983 counts.*

    a.    <u>Free exercise (Count VI)</u>

"Under the Free Exercise Clause, 'a law that is neutral and of general applicability need not be justified by a compelling government interest even if the law has the incidental effect of burdening a particular religious practice." *Bethel*, 706 F.3d at 561. "[N]o Free Exercise Clause violation results where a burden on religious exercise is the incidental effect of a neutral, generally applicable, and otherwise valid regulation, in which case such regulation need not be justified by a compelling governmental interest." *Vision Church*, 468 F.3d at 998 (internal quotation omitted); *see also Jesus Christ Is the Answer Ministries v. Balt. Cnty.*, No. 18-1450, 2019 WL 469715, *7 (4th Cir. Feb. 7, 2019) (observing that "a neutral government decision of general applicability is subject to rational basis review, even when it has the incidental effect of burdening religious exercise"). Here, Plaintiffs have not alleged (and cannot allege) facts showing that Baltimore County imposed on them a discriminatory law. Furthermore, they have not alleged (and cannot allege) facts showing that the County applied a neutral law to them in a discriminatory manner.[19]

Additionally, Plaintiffs' Section 1983 free exercise claim fails for much the same reason as their RLUIPA substantial burden claim. Baltimore County did not direct Plaintiffs to raze the

---

[19] The neutral law actually imposed on FOL was Maryland contract law, as applied by the Circuit Court.

Structure; the Circuit Court did, and it did so at the request of FOL's litigation adversaries, as a result of FOL's recalcitrance.  As explained above, FOL had actual knowledge of the restrictive covenant running with the land when it purchased the Property in 2008 and again in 2016 before it commenced construction.  The Circuit Court found that FOL made "no innocent mistakes" and, thus, "assumed the risk of harm" for violating the covenant.  Ex. B, 2017 Circuit Court Memorandum, at 16, 19; Ex. C, Court of Special Appeals Opinion, at 19, 20, 21, 40.  In April 2017, the Circuit Court enjoined FOL from continuing to violate the covenant and ordered FOL to remove the Structure by March 1, 2018 (giving FOL nearly a year to comply).  Ex. B, Order, at 2.  But FOL failed to comply, even though it knew the Zolls specifically sought to have the Structure "torn down."  Ex. G at 1.

Accordingly, Plaintiffs' Section 1983 Free Exercise claim fails as a matter of law.

b.      Equal protection (Count VII)

Plaintiffs' equal protection claim fails for the same reasons as their RLUIPA nondiscrimination claim (Count III) and their Section 1983 free exercise claim (Count VI). Plaintiffs have not shown (and cannot show) that the County imposed on them a discriminatory law, or a neutral law in a discriminatory manner, or even that the County treated them differently than a similarly situated person.  Nor have Plaintiffs identified a similarly situated party—*i.e.*, a party subject to a private restrictive covenant who has received different treatment from the County.  Accordingly, Plaintiffs' Section 1983 equal protection claim fails as a matter of law.

c.      Due process (Count VIII)

"To succeed on [a substantive due process] claim, [Plaintiffs] must establish (1) that [they] possessed a cognizable property interest rooted in state law, and (2) that [Baltimore County] deprived it of this property interest in a manner so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency." *Siena Corp. v.*

27

*Rockville*, 873 F.3d 456, 461 (4th Cir. 2017) (internal citations and quotations omitted). "[Government] deprivation of a protected property interest violates substantive due process only if it is so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies.  The state action must be conscience shocking, in a constitutional sense." *Id.* at 463-64 (internal quotations omitted). Here, Plaintiffs have not alleged (and cannot allege) any conduct by Baltimore County that "shocks the conscience"—their Complaint does not even mention the relevant standard.

Additionally, "one can only be deprived of a constitutionally protected property interest if one had such an interest to begin with." *Id.* at 461.  Here, Plaintiffs have not alleged (and cannot allege) a protected property interest—let alone a protected property interest of which Baltimore County deprived them.  As the Circuit Court's decisions make clear, Plaintiffs do not have a protected property interest in violating the restrictive covenant or the April 2017 order requiring the Structure's removal.  The due process claim must be dismissed because FOL lacked a protected property interest in constructing the Structure in violation of the restrictive covenant. *See*, *e.g.*, *id.* at 463 (affirming dismissal of due process claim for lack of protected property interest); *Pulte Home Corp. v. Montgomery Cnty.*, 909 F.3d 685, 691-93 (4th Cir. 2018) (same); *Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir. 1993) (same).  Moreover, for all the reasons already explained, Plaintiffs' predicament is one of their own making.

Accordingly, Plaintiffs' Section 1983 due process claim fails as a matter of law.

### E.   The Court Should Dismiss Plaintiffs' State Law Defamation Count (Count IX) Because It Fails to State a Plausible Claim for Relief.

Plaintiffs'[20] demand for compensatory damages from the County rests on a state law defamation claim, over which they request this Court to exercise supplemental jurisdiction. Compl. ¶¶ 68, 85.  The defamation claim should be dismissed for at least five reasons.

*First*, Plaintiffs' defamation claim is barred by Maryland's one-year statute of limitations. The Court should dismiss a claim under the statute of limitations where, as here, "it is clear from the face of the complaint that the claim is time-barred."  *Hodge*, 121 F. Supp. 3d at 497.  In pertinent part, Maryland's statute of limitations provides: "An action for [] libel[] or slander shall be filed within one year from the date it accrues."[21]  MD. CODE ANN., CTS. & JUD. PROCS., § 5-105.  Plaintiffs identify four statements, allegedly attributable to the County, that they allege were defamatory.  Compl. ¶ 87 (identifying defamatory statements as the statements identified in paragraphs 39, 43, 49, and 59[22] of the Complaint).  The *latest* of the alleged statements occurred on September 5, 2017.  *Id.* at ¶ 59.  Plaintiffs, however, filed their Complaint more than a year later, on December 20, 2018.  Thus, their defamation claim against the County is time-barred.

*Second*, Plaintiffs' defamation claim is barred by Maryland's Local Government Tort Claims Act (the "LGTCA").  Under the LGTCA, "an action for unliquidated damages may not be brought against a local government or its employees unless the notice of the claim required by this section is given within 1 year after the injury."  MD. CODE ANN., CTS. & JUD. PROCS., § 5-304(b)(1).  "The notice shall be in writing and shall state the time, place, and cause of the injury.

---

[20] Only FOL and Rabbi Rivkin assert the defamation claim.  *See supra* note 1.

[21] Under Maryland law, "[l]ibel and slander are two branches' of the tort of defamation." *Publish Am., LLP v. Stern*, 84 A.3d 237, 247 n. 16 (Md. App. 2014) (internal quotation omitted).

[22] Paragraph 87 identifies paragraph 58 as one of the allegedly defamatory statements; however, it appears from a fair reading of the Complaint that the reference to paragraph 58 is a typographical error and that Plaintiffs meant to reference paragraph 59.

. . . [and] shall be given to the county solicitor or county attorney." *Id.* at § 5-304(b)(2), (3)(iii).

"Courts in this district have recognized that under the LGTCA, notice is a condition precedent to the right to maintain an action for damages, and compliance with the notice provision should be alleged in the complaint as a substantive element of the cause of action." *Hodge*, 121 F. Supp. 3d at 498 (internal quotations omitted).  Here, Plaintiffs have not pleaded compliance with the LGTCA (nor can they at this point).  As explained above, the *latest* of the alleged statements occurred on September 5, 2017.[23]  Compl. ¶ 59.  Thus, their defamation claim is barred for failure to satisfy a condition precedent.

*Third*, the allegedly defamatory statements are privileged.  Three of the statements occurred in the context of ongoing quasi-judicial administrative proceedings.  Compl. at ¶¶ 43, 49, 59.  "In the context of ongoing judicial or quasi-judicial administrative proceedings," Maryland courts "have recognized the socially important interest that it is of the greatest importance to the administration of justice" that statements made in those proceedings be protected by an absolute privilege and, thus, not subject the speaker to potential liability for defamation.  *Offen v. Brenner*, 935 A.2d 719, 729 (Md. 2007) (internal quotation omitted).  "Absolute privilege applies also to statements contained in pleadings, affidavits or other documents directly related to the case."  *Id.* (internal quotation omitted).  Plaintiffs have not alleged (and cannot allege) that the administrative zoning proceedings in which the allegedly defamatory statements occurred lacked procedural protections "functionally comparable to

---

[23] Furthermore, two of the allegedly defamatory statements—the "Code Enforcement Correction Notice" and Department of Planning's statement that FOL "was operating a 'community building,' which would require a special exception"—occurred in 2015.  Compl. ¶¶ 39, 43.  Thus, they were subject to the earlier version of the LGTCA, which required the necessary notice to be given within 180 days of the alleged injury.  *See* MD. CODE ANN., CTS. & JUD. PROCS., § 5-304, Historical and Statutory Notes, 2015 Legislation (noting that "Acts 2015, c. 131, § 1, in para. (b)(1), substituted 'within 1 year after the injury' for 'within 180 days after the injury'").

judicial processes," such as the rights to cross-examine witnesses or obtain appellate review.  *See id.* at 725; *see also Reichardt v. Flynn*, 823 A.2d 566, 575 (Md. 2005) (noting sufficient procedural safeguards existed for absolute privilege to attach in board of education proceedings, because the employee "was entitled to hearings, two levels of administrative appeals, and judicial review").  Thus, Plaintiffs' defamation claim, as it relates to any statements made in the context of FOL's quasi-judicial administrative proceedings, necessarily fails.[24]

The other allegedly defamatory statement, the January 2015 "Code Enforcement Correction Notice," Compl. ¶ 39, is, at a minimum,[25] subject to the "conditional privilege" for statements "published in good faith," without malice, and in the general public interest.  *See Offen*, 935 A.2d at 724 n. 2.  Plaintiffs have not alleged (and cannot allege) that the code enforcement officer who issued the Notice acted in bad faith or with malice.  Furthermore, Plaintiffs have not alleged (and cannot allege) that the issuance of a code violation notice serves any interest other than the "interest to the public in general."  *See id.*  Thus, Plaintiffs' defamation claim, as it relates to the "Code Enforcement Correction Notice," also fails.

*Fourth*, the statements about which Plaintiffs complain are, on their face, not defamatory.  "A defamatory statement is one 'which tends to expose a person to public scorn, hatred, contempt or ridicule, thereby discouraging others from having a good opinion of, or associating

---

[24] To the extent Plaintiffs contend that the Board of Appeals' administrative adjudication regarding their use of the Property is itself grounds for liability, their position is without merit.  Judges and courts are immune against suits for damages based on their judicial acts.  *Parker v. State*, 653 A.2d 436, 443 (Md. 1995) (recognizing that judicial acts cannot be a basis for compensatory damages under state law or federal civil rights claims asserted against the judge or the state).  In *Butz v. Economou*, 438 U.S. 478, 512-513 (1978), the Supreme Court recognized that the policy underlying judicial immunity for judges applies with equal force to the judicial acts of quasi-judicial officials in administrative proceedings.

[25] Further, under *Offen*, statements made to *initiate* a quasi-judicial administrative proceeding (as opposed to made in the context of ongoing proceedings) may can be subject to absolute immunity.  935 A.2d at 729.

31

with, that person." *Id.* at 724 (quoting *Gohari v. Darvish*, 767 A.2d 321, 327 (Md. 2001)). Here, statements by County officials that the Chabad House is a "community building" or statements to similar effect, Compl. ¶¶ 39, 43, 49, 59, are not defamatory. Indeed, in the Property's zone (D.R.5.5.), "buildings for religious worship or other religious institutions" and "community buildings" are permitted uses—the former "as of right," the latter with a "special exception." BCZR § 1B01.1.A.3, C.4. Thus, it is puzzling how Plaintiffs can assert that referring to a building as a "community building" is defamatory.

*Fifth*, the statements are true. In its October 31, 2018 opinion, the Circuit Court expressly found: "[I]t is clear that the use of the [Property] as a Chabad House has expanded far beyond what can fairly be characterized as residential use." Ex. D at 8. Any argument by Plaintiffs to the contrary is barred by collateral estoppel, which prohibits relitigation of issues where, as here: (1) there was "a final judgment on the merits" in the prior case; (2) "the party against whom the plea is asserted" was "a party or in privity with a party" in the prior case; (3) the issue is "identical" to an issue resolved in the prior case; and (4) the issue was "essential" to the judgment in the prior case. *See Mostofi v. Midland Funding, LLC*, 117 A.3d 639, 649 (Md. App. 2015) (reciting elements of collateral estoppel). The Circuit Court found that Mrs. Zoll "testified credibly" at the September 5, 2018 hearing "that Rabbi Rivkin openly used the property as the Chabad House for both Towson University and Goucher College [and] that the students come and go, the house is lit up throughout the night, and open invitations are posted for students to attend events and celebrate religious holidays at the Chabad House." Ex. D at 8. The Circuit Court also found that Plaintiff Sheina Rivkin, in her September 5, 2018 testimony, "acknowledged that [the Rivkin Plaintiffs] advertise and host dinners, and open their home to area students." *Id.* Collateral estoppel precludes a plaintiff from pursuing claims "predicated on

32

allegations decided against him" in a different proceeding.  *Mostofi*, 117 A.3d at 649.  Thus,

Plaintiffs are bound by the Circuit Court's finding that the Property's use "as a Chabad House

has expanded far beyond what can fairly be characterized as residential use."  Ex. D at 8; *see*

*also id.* at 7 (noting that prior Circuit Court Judge had made a similar finding).[26]

> *Finally*, even if Plaintiffs stated a plausible defamation claim against the County or its

agents, the Court nevertheless should decline to exercise its supplemental jurisdiction over the

claim.  For the myriad reasons set forth above, Plaintiffs' federal claims fail as a matter of law.

### F.    The Court Should Abstain the Under *Younger* Doctrine.

Even if this Court were to find that it has jurisdiction over Plaintiffs' claims and that

Plaintiffs have sufficiently pleaded entitlement to relief, the Court nevertheless should abstain.

*Younger* abstention, *inter alia*, precludes federal courts from interfering with state court

proceedings that are "'uniquely in furtherance of the state courts' ability to perform their judicial

functions.'"  *Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 73, 78 (2013) (quoting *New Orleans*

*Public Service, Inc. v. New Orleans*, 491 U.S. 350, 367-368 (1989)).

> *First*, *Younger* abstention prevents federal judicial interference with "a State's interest in

enforcing the orders of its courts."  *Id.* at 72-73.  Here, FOL failed to comply with the Circuit

Court's April 2017 order to remove the Structure by March 1, 2018.  As a result, the Circuit

Court issued its October 31, 2018 order to raze the Structure for the very purpose of enforcing its

April 2017 order.  As the Fourth Circuit has observed, "enforcing state court judgments cuts to

the state's ability to operate its own judicial system, a vital interest for *Younger* purposes."

*Harper v. PSC*, 396 F.3d 348, 352 (4th Cir. 2005).  Plaintiffs' request that this Court enjoin

---

[26] A "state court judgment [is given] the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."  *Migra v. Warren City Sch. Dist.*, 465 U.S. 75, 81 (1984).

enforcement of the Circuit Court's orders in litigation between FOL and the Zolls is exactly the kind of circumstance that the Supreme Court in *Sprint* contemplated should be avoided by federal courts.

*Second*, the Circuit Court assumed *in rem* jurisdiction over the Property when it appointed a receiver to "oversee compliance" with its April 2017 order to remove the Structure.[27] *See* Ex D, October 2018 Circuit Court Memorandum, at 3.  Under long-standing principles of federal jurisdiction, "'where the jurisdiction of the state court has first attached, the federal court is precluded from exercising its jurisdiction over the same *res* to defeat or impair the state court's jurisdiction.'"  *State Eng'r v. S. Fork Band of the Te-Moak Tribe of the W. Shoshone Indians of Nev.*, 339 F.3d 804, 810 (9th Cir. 2003) (quoting *Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922)).  This principle applies in suits, like this one, in which "property has been actually seized under judicial process before a second suit is instituted."  *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 466 (1939).  Under Maryland law, "property in the hands of a receiver is *in custodia legis*."  *Kluckhuhn v. Ivy Hill Ass'n.*, 461 A.2d 16, 19 (Md. App. 1983); *see also Voge v. Olin*, 518 A.2d 474, 479 (Md. App. 1986) (noting that under Maryland law *custodia legis* refers to "the court's domination over property").  Thus, the Circuit Court has jurisdiction over the Property by virtue of its receivership, and this Court should not interfere with the state court proceedings.

Accordingly, even if Plaintiffs' collateral attack on the Circuit Court's judgment were otherwise allowed (and it should not be), the Court should abstain while FOL appeals the Circuit Court's October 31, 2018 decision in Maryland's appellate courts.

---

[27] Maryland Rule 2-648(a) specifically allows a circuit court to "order the seizure or sequestration of property of the noncomplying person," where the person has failed "to comply with a judgment prohibiting or mandating action."

## V.       CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' Complaint.  The

Court lacks jurisdiction under the *Rooker-Feldman* doctrine; Plaintiffs' lack standing to sue

Baltimore County; Plaintiffs' fail to state a plausible claim for relief under RLUIPA or Section

1983; Plaintiffs' defamation claim against the County fails as a matter of law; and, in any event,

the *Younger* doctrine warrants abstention.

Respectfully submitted,

MICHAEL E. FIELD
COUNTY ATTORNEY

_____/s/_____
James J. Nolan, Jr. (#1875)
Assistant County Attorney
BALTIMORE COUNTY OFFICE OF LAW
400 Washington Avenue, Room 219
Baltimore, MD 21204
(410) 887-4420
mefield@baltimorecounty.gov
jnolan@baltimorecounty.gov

- and –

_____/s/_____
Harry S. Johnson (#00618)
Howard R. Feldman (#05991)
Peter W. Sheehan, Jr. (#29310)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202-1626
(410) 347-8700
hjohnson@wtplaw.com
hfeldman@wtplaw.com
psheehan@wtplaw.com

*Counsel for Defendants,*
*Baltimore County, Maryland,*
*Baltimore County Department of Planning,*
*and Baltimore County Board of Appeals*

35