# EXHIBIT B

ROBIN ZOLL, *et al.*,                          IN THE

    Plaintiffs                              CIRCUIT COURT

v.                                             FOR

FRIENDS OF LUBAVITCH, INC.,                    BALTIMORE COUNTY

                                               CASE NO.  C-16-8420

    Defendant .

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER

    Having considered the Plaintiffs' Amended Verified Complaint for Declaratory and Injunctive Relief (Paper 21000), Defendant's Answer thereto, the evidence and arguments presented at a trial held March 30-31, 2017, and the record contained herein, it is, for the reasons stated in this Court's Memorandum Opinion, issued the same date as this Order, this ___7+h___ day of April, 2017 hereby

    **ORDERED**, Plaintiffs' request for a declaratory judgment is granted. It is further

    **ORDERED**, the restrictive covenant contained in the 1950 deed requiring that the dwelling erected on 14 Aigburth "…have a setback equal to one-half of the total setbacks of the two houses erected on the lots adjoining to the East and West thereof, measured to the centre of said houses, exclusive of porches (hereafter referred to as the "Setback Covenant") is valid and in full force and effect. It is further

    **ORDERED**, the building/addition erected by Defendant on 14 Aigburth Road (hereafter referred to as the "Structure") violates the Setback Covenant because the distance between the Structure and the front line of 14 Aigburth Road is significantly less than one-half the average of the front setbacks of the two houses adjoining to the East and West. It is further

    **ORDERED**, Plaintiffs' request for an injunction is granted. It is further

**ORDERED**, Defendant shall remove the Structure and all other improvements that violate the Setback Covenant no later than March 1, 2018. It is further

**ORDERED**, Defendant shall be and hereby is enjoined from constructing any structure or other improvement that violates the Setback Covenant. It is further

**ORDERED**, Defendant shall pay the open costs in this matter, if any are outstanding.

*Susan Souder*

Judge Susan Souder

Copies mailed to:

Michael R. McCann, Esq.
118 W. Pennsylvania Ave.
Towson, MD 21204

Kimberly A. Manuelides, Esq.
Sagal, Filpert, Quasney & Betten, PA
600 Washington Ave., #300
Towson, MD 21204

2

|  |  |
|---|---|
| ROBIN ZOLL, *et al.*, | IN THE |
| Plaintiffs | CIRCUIT COURT |
| v. | FOR |
| FRIENDS OF LUBAVITCH, INC., | BALTIMORE COUNTY |
|  | CASE NO.  C-16-8420 |
| Defendant |  |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The Court has considered the Plaintiffs' Amended Verified Complaint for Declaratory and Injunctive Relief (Paper 21000), Defendant's Answer thereto, the evidence and arguments presented at a bench trial held March 30-31, 2017, and the record contained herein. The Court renders the following opinion.

### I.    Procedural Background

This lawsuit commenced August 12, 2016, when Plaintiffs filed their Verified Complaint for Declaratory and Injunctive Relief. The Plaintiffs include Robin Taylor Zoll, individually and as Trustee of the Madge S. Taylor Revocable Trust and as Trustee of the James F. Taylor Revocable Trust, which own the property at 16 Aigburth Road (hereafter referred to as the "Zoll Plaintiffs"), as well as the Aigburth Manor Association of Towson (hereafter referred to as the "Association"), which is a community association representing persons residing in the Aigburth Manor neighborhood. The Defendant is a religious organization which owns the property located at 14 Aigburth Road, the subject of this litigation. Plaintiffs filed a Motion for Emergency Temporary Restraining Order and for Preliminary Injunction the same day as their Verified Complaint was filed. That Motion was denied by The Honorable Michael J. Finifter by order dated August 12, 2016.

II.    **Evidence Presented**

The restrictive covenant at issue in this case (hereafter referred to as the "Setback Covenant") requires that the dwelling erected on 14 Aigburth Road, in Towson, Maryland "…have a setback equal to one-half of the total set backs of the two houses erected on the lots adjoining to the East and West thereof, measured to the centre of said houses, exclusive of porches." Plaintiffs' Exhibit 1.

Michael Schleupner, Plaintiffs' first witness, testified as an expert in title searches, title examinations, and covenants and restrictions in land documents. Mr. Schleupner testified that in his opinion, the Setback Covenant is binding on 14 Aigburth Road today. Mr. Schleupner also testified briefly regarding the history of 14 Aigburth Road and 16 Aigburth Road, which were once owned by the same person, Mabel Collison. The Setback Covenant is contained in a 1950 deed, by which Mabel Colllison conveyed a portion of her property, 14 Aigburth Road, to James Velie and Zenith Velie.

By deed dated September 29, 2008, 14 Aigburth Road was conveyed to the Defendant. That deed did not mention the Setback Covenant, nor any other restrictive covenants concerning the property. Mr. Schleupner testified that the deed need not mention the Setback Covenant for it to remain in effect, for a number of reasons. All of the deeds in Defendant's chain of title include a "being clause," commonly found in most deeds. That clause incorporates by reference everything in the previous deeds. Additionally, the 1950 deed states that the covenants are binding on the heirs and assigns of the parties; and, the Defendant is an assign of the Velies. Also, the covenants run with the land, by their terms.

Mr. Schleupner testified that a title search should go back at least sixty years; and, a title search of 14 Aigburth Road in 2008, the year Defendant purchased the property, should have revealed the Setback Covenant to Defendant.

Mr. Schleupner testified that a title search was conducted in 2008 when Defendant purchased 14 Aigburth Road. In reviewing the files of the attorney who conducted the closing for Defendant in 2008, Mr. Schleupner discovered a title report from an abstractor, Mr. Klein, who stated in his report that he had discovered restrictions in the 1950 deed. Mr. Schleupner also discovered a title insurance policy, which includes an exception to coverage for issues arising from the 1950 restrictive covenants. Defendant was, or should have been, on notice of these matters at that time.

Bruce Doak, Plaintiffs' second witness, testified as an expert in the fields of surveying and measuring setbacks. Mr. Doak visited Aigburth Road and measured the setbacks of number 12, number 14, and number 16. For numbers 12 and 14, Mr. Doak measured the distance from the front lot line to the face of the houses. For number 14, Mr. Doak measured from the sidewalk to the side of the house, as he did not have permission to be present on the property. The setback for 12 Aigburth Road is 86 feet and the setback for 16 Aigburth Road is 150 feet. The Setback Covenant requires that the dwelling on 14 Aigburth Road be 118 feet from the front lot line $((86 + 150) \div 2 = 118)$. The setback for 14 Aigburth Road is 56 feet to the front of the east side of the house and 57 feet to the front of the west side of the house.

Rabbi Samuel Kaplan testified that he is the President of Defendant Friends of Lubavitch, Inc. He testified that there are twenty-seven Chabad centers in Maryland, one of which is the Chabad Lubavitch of Towson, located at 14 Aigburth Road. Defendant purchased 14 Aigburth Road in 2008 to establish a Chabad, where Rabbi

Rivkin would reside and undertake the activities of Chabad, to serve the students of Towson University and Goucher College. 14 Aigburth Road received a charitable exemption from real property taxes in 2009. Rabbi Kaplan testified that Rabbi Rivkin resides at 14 Aigburth Road with his family; he does not receive a salary and he does not pay rent. The Chabad is operated to share home and religious life with college students. Rabbi Kaplan stated that Defendant did not take out a loan to finance the construction of the structure erected on 14 Aigburth Road (hereafter referred to as the "Structure"); Defendant paid cash for the construction.

Robin Taylor Zoll testified that she has resided at 16 Aigburth Road for thirty-three years. Ms. Zoll is the trustee of the Madge S. Taylor Revocable Trust and of the James F. Taylor Revocable Trust, which own 16 Aigburth Road, and for which Ms. Zoll is the trustee, as well as a beneficiary. Ms. Zoll's parents purchased 16 Aigburth Road for Ms. Zoll to reside in with her daughters; and, the property was placed in trust to protect the property for Ms. Zoll, her children, her grandchildren, and so forth. Ms. Zoll's husband, David Zoll, has resided in the property with her for twenty years. The house was constructed in 1908.

Ms. Zoll first learned about the restrictive covenants which apply to 14 Aigburth Road in July of 2016. Ms. Zoll immediately contacted David Thurston, an attorney specializing in title searches, requesting that he research the covenants. Later in the month of July, Ms. Zoll learned that the covenants run with the land. Ms. Zoll said she acted quickly, notifying the Association about the covenants. Excavation, which began approximately June 6, 2016, was already underway at 14 Aigburth Road.

Ms. Zoll said the Association had previously filed complaints for code violations regarding 14 Aigburth Road, for using the residential property as a place for religious

4

worship and religious community activities. By Opinion and Order dated June 26, 2015, Administrative Law Judge John E. Beverungen denied Defendant's Petition for Special Hearing to confirm continued use of 14 Aigburth Road as a residential parsonage with an accessory use for religious worship and education. *See* Plaintiffs' Exhibit 20.

By Opinion and Order dated April 6, 2016, Administrative Law Judge John E. Beverungen granted Defendant the opportunity to apply for the necessary permits to construct an addition to serve as additional living space for Rabbi Rivkin and his family. *See* Plaintiffs' Exhibit 24.   Ms. Zoll was aware that a building permit had issued for 14 Aigburth Road, permitting construction of a residential addition, in May 2016. *See* Plaintiffs' Exhibit 14. Ms. Zoll said that there has been a sign outside the property that reads, "Chabad 14 Aigburth," since 2008. Ms. Zoll stated that in her opinion the property has not been used solely as a residence for Rabbi Rivkin's family. Ms. Zoll said that after the building permits allowing construction of a residence only had issued, Rabbi Rivkin approached her to discuss the construction project. Ms. Zoll told Rabbi Rivkin, "You were dishonest" (referring to her belief that the Chabad is not used solely as a residence), to which Rabbi Rivkin responded, "I was as honest as I could be to get my permit."

Ms. Zoll testified that the Structure has caused her property value to decrease by five percent. She said this monetary consequence was the "least of it." Ms. Zoll felt violated by the Defendant operating a Chabad at 14 Aigburth, and violating the covenants and the zoning laws. Ms. Zoll said that she, her parents, and her husband invested a lot of time and money into their home at 16 Aigburth Road. She said the neighborhood was a quiet and peaceful enclave, with old houses set back from the road, and mature trees. Ms. Zoll said that the Chabad at 14 Aigburth Road is a campus

Chabad and she fears a "domino effect." Ms. Zoll fears that her peaceful neighborhood will become commercialized—an extension of the college campus.

Ms. Zoll said that her large front porch was always her favorite room of her house. However, her view from her porch is now a large, brick wall, rather than the breeze, the trees, and the sun. The Structure is three stories high. Ms. Zoll spent thousands of dollars planting trees as a barrier in front of the Structure. She said that the enjoyment of her property is priceless; and, the construction of the Structure has been devastating. She testified that lights are on in the Structure all night.

Rabbi Mendel Menachem Rivkin testified that he has resided at 14 Aigburth Road with his family since 2008. Rabbi Rivkin said that the Structure was originally proposed to be a synagogue; but, they decided that it would remain a residence. The Structure would provide more space for Rabbi Rivkin, his family, and guests. There are four bedrooms, seven bathrooms, several wet bars, a Passover kitchen, a regular kitchen, and a Mikvah in the Structure. Rabbi Rivkin said that the existing ranch house has three bathrooms, two bedrooms, a kitchen, and a dining room. Rabbi Rivkin said he oversaw the construction of the Structure; and, he made changes to please the neighbors, such as lowering the height of the Structure and making the front of the Structure look more palatable or "cottagey." At the request of David Zoll, he redirected traffic away from the front and side of the Zolls' house.

Rabbi Rivkin said that Defendant purchased 14 Aigburth Road with plans to build an addition to the property. Rabbi Rivkin also approached neighbors and asked to purchase their homes. Rabbi Rivkin personally purchased 12 Aigburth Road, on the east side of Defendant's property, which he rents to students. After Rabbi Rivkin conducted a ceremonial groundbreaking at 14 Aigburth Road in 2014, neighbors and

Councilman Marks met outside Rabbi Rivkin's house to discuss the construction of an addition.

Rabbi Rivkin said another meeting about the addition took place at the Zolls' house. Rabbi Rivkin said he was aware that neighbors were concerned that the proposed addition looked too commercial, too large, and too tall. Rabbi Rivkin said he modified the plans and showed them to Councilman Marks and Paul Hartman, of the Association. Rabbi Rivkin said he tried to work with the neighbors as much as he could.

Rabbi Rivkin testified that he did not have actual knowledge of the restrictive covenants until July 2016. If he had, he would have built the Structure behind the existing house or he would have "built differently." Rabbi Rivkin said that by the time he found out about the Setback Covenant, he could not stop construction because materials had already been delivered. Rabbi Rivkin said that the construction of the Structure cost $800,000; and, if they had stopped the construction when they learned of the Setback Covenant, they only would have saved $200,000. Rabbi Rivkin was evasive when asked how the construction was funded. No documents were submitted in support of Rabbi Rivkin's financial testimony. Rabbi Rivkin also testified that the kitchen is on the east side of the existing house; and, the existing house has an asphalt shingle roof. Other restrictive covenants require that the kitchen be located on the west side of the dwelling and that the dwelling have a slate roof. *See* Plaintiff's Exhibit 1.

Rabbi Rivkin testified that the Structure is residential in nature only. He lives there with his family; and, college students, who Rabbi Rivkin considers to be friends of the family, visit the home. Rabbit Rivkin said sometimes thirty to fifty, and sometimes more, friends come to 14 Aigburth Road for dinners. Rabbi Rivkin said that he sends out Facebook notifications telling people what time dinner will occur at his home. He hosts

people for dinner every Friday night, for the High Holidays, and for all the other Jewish holidays. Rabbi Rivkin said he has invited as many as 251 people to 14 Aigburth Road; however, that many people have never come to the home at once. Rabbi Rivkin said that sometimes, although rarely, people spend the night at his home. Rabbi Rivkin also testified that Chabad Lubavitch of Towson is recognized by Towson University as a campus ministry; and, Rabbi Rivkin has an office on Towson's campus. Rabbi Rivkin said that he has been using the property the same way for the same activities for more than eight years. "Chabad" means wisdom, understanding, and knowledge, according to Rabbi Rivkin. Rabbi Rivkin's demeanor was evasive and aggressive during questioning. Thus, where his testimony differed from that of Robin Zoll, whom the Court found credible, the Court credited Ms. Zoll's testimony.

Jonathan Scott Dallas testified as an expert in surveying for Defendant. He said that he had advised Rabbi Rivkin that he thought the Setback Covenant was unclear and he was not sure what the Setback Covenant meant. Mr. Dallas interpreted the Setback Covenant literally, meaning that the setback should be measured to the exact center of the houses, measured from front to back and left to right, rather than to the center of the front of the houses. In his testimony, Mr. Dallas demonstrated various interpretations of the Setback Covenant. *See* Defendant's Exhibit 14. He acknowledged that if the setbacks were measured from the rear property line to the back of the houses, it would not be possible to have any house on 14 Aigburth Road without violating the covenant. The Court found Mr. Dallas credible; but, the Court does not agree that the Setback Covenant is ambiguous. The Setback Covenant is only subject to one reasonable interpretation: the setbacks must be measured to the center of the front planes of the houses. Mr. Dallas's measurements differed slightly from Mr. Doak's

measurements. According to Mr. Dallas's measurements, the distance from the front lot line to the center of 12 Aigburth Road is 83 feet; and, the distance from the front lot line to the center of 16 Aigburth Road is 146 feet. *See* Defendant's Exhibit 14. The Setback Covenant requires that the dwelling on 14 Aigburth Road be at least 114.5 feet from the front lot line ((83 + 146) ÷ 2 = 114.5). The front center of the existing house on 14 Aigburth Road is setback 115 feet from the front lot line.

David Forsyth Zoll, Robin Zoll's husband, testified in Plaintiffs' rebuttal case. Mr. Zoll testified that Rabbi Rivkin approached him and inquired whether he would object to Rabbi Rivkin constructing an addition. Mr. Zoll recommended that Rabbi Rivkin bring his plans to the Association. Mr. Zoll next spoke with Rabbi Rivkin in 2014, after the Towson Times announced the groundbreaking of the Structure at 14 Aigburth Road. *See* Plaintiffs' Exhibit 39. Mr. Zoll said that the Structure looks very similar to the building depicted in the 2014 Towson Times article; and, the Structure does not look residential, nor does it look like the other homes in the neighborhood. Mr. Zoll testified that Rabbi Rivkin said that the neighborhood was on "borrowed time," since it will all become student housing.

Paul Hartman, a current vice-president and former president of the Association, testified that the Association does not have the authority to enforce restrictive covenants. He also testified that no Board member of the Association has authority to approve or reject actions until the Board conducts a vote after reasonable discussion. Therefore, after the 2014 Towson Times article announced the addition, the Board neither supported nor opposed the construction, as the Board had not had an opportunity to gather for reasonable discussion. After the meeting outside 14 Aigburth Road with Councilman Marks, Mr. Hartman understood that the proposed project was

9

not truly an "addition," as the existing home on the property was approximately 2,000 square feet, while the Structure would be more than 6,000 square feet. At that point, the community objected to the size, bulk, and architecture of the Structure. Community members also objected to the events that were taking place at 14 Aigburth Road. Mr. Hartman said that the neighborhood experiences parking challenges. Residents must purchase residential parking permits to park on the streets outside their homes; and, they sometimes call the police to enforce the parking regulations on the weekends. Baltimore County enforces parking restrictions on weekdays.

## III.    Discussion

The evidence was undisputed that the 1950 deed imposed the restrictive covenants, including the Setback Covenant, on 14 Aigburth Road. The Zoll Plaintiffs are in the direct chain of title; and, based on the language used in the deed, the restrictive covenants run with the land. The restrictive covenants included in the 1950 deed, including the Setback Covenant, are binding on 14 Aigburth Road today. The Zoll Plaintiffs have standing to enforce the Setback Covenant as the resident and owner of 16 Aigburth Road.

Actual notice of restrictive covenants is not required for the covenants to be enforceable. Recordation of a deed which subjects the property to restrictions provides all persons dealing with the property with constructive notice of the restrictions and is sufficient to make such persons liable with respect to the restrictions. *See Steuart Transp. Co. v. Ashe*, 269 Md. 74, 88-89 (1973). Therefore, although Rabbi Rivkin testified that he did not have actual notice of the Setback Covenant until July 2016, Defendant is charged with constructive notice of the Setback Covenant and is liable thereto. *See id*. Also, even though Rabbi Rivkin and Rabbi Kaplan said they did not

have actual notice of the Setback Covenant, Defendant is charged with actual notice. Michael Schleupner's testified that a title search conducted in 2008 when Defendant purchased 14 Aigburth Road revealed the restrictive covenants. Also, the title insurance policy included an exception to coverage for the 1950 restrictive covenants. Thus, Defendant had actual notice of the Setback Covenant in 2008.

Defendant argues that the Setback Covenant is ambiguous and unenforceable. Defendant presented the testimony of Jonathan Scott Dallas, who testified that he interpreted the Setback Covenant to mean that the setback should be measured to the center point of the house measured from east to west and from north to south, rather than to the center of the front plane of the house. Mr. Dallas also testified that, in his many years in the business, he has never measured a setback to the center point, from east to west and from north to south, of a structure. Rather, setbacks are always measured to the front of the structure for front setbacks, the back of the structure for rear setbacks, etc. Defendant asserts that the Setback Covenant could also refer to a rear setback, rather than a front setback.

In response, Plaintiffs assert that ambiguity is not created simply because one can come up with alternate interpretations. A covenant is ambiguous "if its language is susceptible to multiple interpretations by a reasonable person." *Dumbarton Imp. Ass'n, Inc. v. Druid Ridge Cemetary Co.*, 434 Md. 37, 53 (2013). "An ambiguity does not exist simply because a strained or conjectural construction can be given to a word." *Belleview Const. Co., Inc. v. Rugby Hall Community Ass'n, Inc.*, 321 Md. 152, 159 (1990).

Bruce Doak testified that setbacks are never measured to the center of buildings, measured from front to back and side to side. Mr. Doak opined that the language of the Setback Covenant is not ambiguous. Michael Schleupner testified that he has seen

11

setback covenants in thousands of deeds; and, he has seen similar language in other deeds. Mr. Schleupner said that the lack of a reference to a street in the Setback covenant means that the Setback should be measured to the front lot line.

The language of the Setback Covenant refers to only one setback. The plain meaning of the Setback Covenant refers to a front setback measured from the front property line to the center of the front plane of the house on the property, exclusive of the porch. This meaning is the only reasonable interpretation of the Setback Covenant. *See Dumbarton*, 434 Md. at 53. This interpretation is confirmed in that the evidence presented demonstrates that the original house (referred to as the "existing house" on the record) at 14 Aigburth Road, which was constructed after the houses on 16 Aigburth Road (150 foot setback) and 12 Aigburth Road (86 foot setback) were built, has a setback of 115 feet, which is exactly the setback required under the plain language of the Setback Covenant. Because the language of the Setback Covenant is unambiguous, the Court must "give effect to that language...." *City of Bowie v. Mie Properties, Inc.*, 398 Md. 657, 682 (2007).

A.    **Declaratory Judgment (Count I)**

Pursuant to the Courts and Judicial Proceedings Article of the Maryland Code Annotated, § 3-406:

> Any person interested under a deed...or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it.

The Court may grant a declaratory judgment or decree (1) if it will serve to terminate the uncertainty or controversy giving rise to the proceeding; (2) an actual

12

controversy exists between the parties; and (3) antagonistic claims are present between the parties involved which indicate immediate and inevitable litigation; or, (4) a party asserts a legal relation, status, right, or privilege and this is challenged or denied by an adversary party, who has or asserts a concrete interest in it. Md. Code Ann., Cts. & Jud. Proc. § 3-409(a).

The Zoll Plaintiffs have an interest under a deed, the 1950 deed containing the Setback Covenant. Robin Zoll, individually and as trustee of the trusts that own 16 Aigburth Road, has an interest in the Setback Covenant, because her enjoyment of her property, the property next door to the restricted property, has been impaired by violation of the Setback Covenant. The Association has an interest in the Setback Covenant because they own properties near the restricted property; and, the enjoyment of their properties has been impaired by Defendant's violation of the setback covenant. Ms. Zoll testified, and the photographs in evidence show, that the neighborhood is characterized by old homes set back from the road. Enforcement of the Setback Covenant is necessary to maintain the integrity of the neighborhood. *See Namleb Corp. v. Garrett*, 149 Md. App. 163, 174-75 (2002).

A declaratory judgment would serve to terminate the controversy giving rise to this proceeding because the parties would have their rights determined under the Setback Covenant. The declaratory judgment sought by Plaintiffs would terminate the uncertainty about whether the Structure violates the Setback Covenant. Md. Code Ann., Cts. & Jud. Proc. § 3-409(a). Even Rabbi Rivkin testified that he wished the temporary restraining order sought by Plaintiffs in August 2016 had been granted so that the parties would have had more certainty.

An actual controversy exists between Plaintiffs and Defendant because Plaintiffs assert that the Structure violates the Setback Covenant, while Defendant asserts that the Setback Covenant is ambiguous and unenforceable, that Plaintiffs are improperly selectively enforcing the restrictive covenants, and that Plaintiffs waited too long to attempt to enforce the Setback Covenant. *Id.* at § 3-409(a)(1). These positions represent antagonistic claims; and, the parties are presently engaged in litigation. *Id.* at § 3-409(a)(2).

For the reasons set forth above, Plaintiffs shall be granted a declaratory judgment that the Structure violates the Setback Covenant.

**B.      Breach of Contract (Count II)**

Covenants affecting property are generally contractual in nature, even when running with the land. *Colandrea v. Wilde Lake Community Ass'n, Inc.*, 361 Md. 371, 395-96 (2000). A lawsuit to enforce restrictive covenants "is in the nature of specific performance." *Id.* at 396. When specific performance is proper, enforcement of the covenants may by accomplished through a permanent or temporary injunction. *Id.* "Maryland courts have held that injunctive relief is entirely appropriate for violations of private covenants." *Id.*

As was discussed above, the Setback Covenant was imposed by the 1950 deed, which is in the Zoll Plaintiffs' direct chain of title. The Setback Covenant runs with the land and is binding on Defendant, as owner of 14 Aigburth Road, today. Based on the plain meaning of the Setback Covenant, the evidence demonstrates that the Structure, which has a front setback of 56 feet to the west and 57 feet to the east, violates the Setback Covenant (which requires a setback of 114.5 feet according to Mr. Dallas's

14

measurements and 118 feet according to Mr. Doak's measurements). Therefore, Defendant breached the Setback Covenant, to which the Zoll Plaintiffs are beneficiaries.

### C.      Injunctive Relief (Count III)

Generally, the factors required to obtain injunctive relief are (1) the likelihood that Plaintiffs will succeed on the merits; (2) the "balance of convenience," or whether greater injury would be done to Defendant by granting the injunction than would result from its refusal; (3) whether Plaintiffs will suffer irreparable injury unless the injunction is granted; and, (4) the public interest. *State Com'n on Human Relations v. Talbot County Detention Center*, 370 Md. 115, 136 (2002). A permanent injunction is an injunction granted after a determination is made on the merits of the action. *Id.* at 135. However, "a permanent injunction is not 'permanent' in the sense that it must invariably last indefinitely." *Id.* at 135-36. It is an injunction granted after a determination on the merits of the claim. *Id.* at 136.

**(1)      The likelihood that Plaintiffs will succeed on the merits.**

This Court has found that Defendant violated the Setback Covenant by constructing the Structure on 14 Aigburth Road too close to the front lot line.

**(2)      The "balance of convenience," or whether greater injury would be done to Defendant by granting the injunction than would result from its refusal.**

The doctrine of comparative hardship, in the context of injunctive relief, means that a court may decline to issue an injunction when the hardship and inconvenience would be greatly disproportionate to the harm remedied. *Id.* at 174-75. The court considers innocent mistake on the part of the party against whom injunctive relief is

15

sought when applying the doctrine of comparative hardship. *Colandrea*, 361 Md. at 397. This Court finds no innocent mistakes by Defendant.

The harm caused to the Zoll Plaintiffs is that the view from the front porch of 16 Aigburth Road is now a large brick wall, rather than the breeze, trees, and sun Robin Zoll used to enjoy. Ms. Zoll testified that the enjoyment of her property is priceless; and, Defendant's construction of the Structure, in violation of the Setback Covenant, has been devastating. Paul Hartman testified that the Structure does not fit in with the neighborhood. Enforcing the Setback Covenant would assist with maintaining the integrity of the neighborhood. *See Namleb Corp.,* 149 Md. App. at 174-75.

The financial harm to the Zoll Plaintiffs is that their property value has decreased by five percent due solely to the Structure constructed on 14 Aigburth Road. *See* Plaintiffs' Exhibit 35. This represents a loss of value of $17,075. *See id.* Paul Hartman testified that he is concerned that it would be difficult to sell the property at 14 Aigburth Road in the future, due to its appearance and because the Structure does not fit in with the neighborhood. Mr. Hartman testified that a similar, large structure in the area sat vacant on the market for approximately two years before it was sold. Mr. Hartman said that properties not selling quickly is harmful to the property values in the neighborhood.

Defendant argued that removing the Structure would be financially devastating. However, Defendant did not present any specific evidence about the monetary loss Defendant would suffer from moving the Structure or tearing it down. Also, Rabbi Rivkin's testimony about the funding of the construction of the Structure was evasive and not credible. Thus, the Court does not give weight to the alleged monetary harm to Defendant.

**(3)** **Whether Plaintiffs will suffer irreparable injury unless the injunction is granted.**

Generally, a party must demonstrate irreparable harm to be entitled to injunctive relief. *Namleb Corp.,* 149 Md. App. at 173. However, the harm "need not be great...and it is irreparable when it cannot be measured by any known pecuniary standard. *Id.* Additionally, "a permanent injunction is a proper means of enforcing a restrictive covenant...." *Id.* Because an action to enforce restrictive covenants is akin to specific performance, a finding of irreparable harm is not required. *Chestnut Real Estate Partnership v. Huber,* 148 Md. App. 190, 205-8 (2002).

Robin Zoll testified credibly that her enjoyment of her property at 16 Aigburth Road is priceless; and, the construction of the Structure was devastating. Ms. Zoll said that instead of sitting on her front porch—her favorite room in her house—to enjoy the breeze, the sun, and the trees, Ms. Zoll's view is a brick wall. Ms. Zoll testified that her neighborhood is characterized by old homes which are set back long distances from the road.

Paul Hartman testified that the size and architecture of the Structure does not fit in with the rest of the neighborhood. He said that he saw another similar looking property in the area—a large, newly constructed home—sit vacant for approximately two years before it was sold. The concerns expressed by the Association appear to be tied more to the aesthetics and size of the Structure, rather than its setback from Aigburth Road. However, Ms. Zoll testified that the surrounding homes are located longer distances from the road than the Structure; and, the Association members' enjoyment of their properties is tied to maintaining the integrity of the neighborhood. *See Namleb Corp.,* 149 Md. App. at 174-75. *See also Liu v. Dunnigan,* 25 Md. App.

17

178, 193-94 (1975). Thus, the Association is also harmed by Defendant's violation of the Setback Covenant; and, the harm to Plaintiffs is not merely pecuniary in nature.

**(4)    The public interest.**

Because injunctive relief to enforce restrictive covenants is akin to specific performance of the covenant and injunctive relief is appropriate for violations of private covenants, courts do not consider whether injunctive relief would serve the public interest. *See Colandrea*, 361 Md. at 395-401. *See also Namleb*, 149 Md. App. at 173-75. A trial court has wide latitude to enforce restrictive covenants by permanent injunctions if the restrictions are reasonable and made in good faith. *Id.* at 174. This Court has already determined that the Setback Covenant is reasonable and enforceable.

**D.    Defendants' Arguments/Defenses**

Defendant asserts that Plaintiffs' claims are barred by laches. Before invoking the defense of laches, Defendant must demonstrate (1) an undue lapse of time; and, (2) some disadvantage or prejudice to the party asserting the defense. *Weidner v. Weidner*, 78 Md. App. 367, 375 (1989). Plaintiffs learned of the restrictive covenants in July 2016. Plaintiffs promptly contacted an attorney to perform a title search of the property. Plaintiffs notified Rabbi Rivkin, Defendant's representative, of the Setback Covenant that same month, on July 27, 2016. Rabbi Rivkin testified that at the time he learned of the Setback Covenant, it was too late to stop construction, which began on June 6, 2016. But, only excavation had begun. The structure itself had not been started in the Court's view. Plaintiffs filed this lawsuit approximately one month after learning about the restrictive covenants. The evidence demonstrates that Plaintiffs acted quickly once they discovered the existence of the Setback Covenant and learned that the covenant

18

runs with the land. There was no undue delay on the part of Plaintiffs. *Weidner*, 78 Md. App. at 375.

There was also no disadvantage to Defendant. *Id.* The evidence demonstrates that Defendant was aware of widespread opposition from the community regarding construction of the Structure. Defendant chose to proceed with construction in the face of that opposition. The evidence is clear that Defendant was aware of opposition to constructing an addition when the idea was first proposed in 2012. The evidence is also clear that the opposition intensified and became more organized beginning in 2014. Additionally, once Defendant received actual notice of the Setback Covenant (according to Rabbi Rivkin) in July 2016, Defendant chose to proceed with the construction. Thus, Defendant assumed the risk of the harm Defendant now faces for violating the Setback Covenant.

Defendant also asserts that the 1950 deed at issue includes four restrictive covenants; and, Plaintiffs seek enforcement of only one of those covenants. Defendant argues that Plaintiffs are not permitted to enforce the restrictive covenants selectively. Defendant did not cite law in support of this argument. Enforcement of one restrictive covenant does not affect enforcement of others. *See Shader v. Hampton Imp. Ass'n, Inc.*, 217 Md. App. 581, 600 (2014). Abandonment of a restrictive covenant must be shown by clear and unequivocal acts of a decisive nature. *Linder v. Woytowitz*, 37 Md. App. 652, 658 (1977). There has been no clear, unequivocal, or decisive abandonment of the Setback Covenant on the part of Plaintiffs.

Finally, Defendant asserts that Plaintiffs should be estopped from enforcing the covenants years after Defendant first gave Plaintiffs notice that it intended to construct an addition on 14 Aigburth Road. Defendant asserts that Plaintiffs were on notice that

Defendant was considering constructing an addition in 2012 and that Defendant intended to construct a large addition in 2014. Defendant argues that Plaintiffs should have brought forth all of their arguments in opposition to the Structure at one time.

Defendant did not cite law to support this argument. Also, Defendant did not prove that it was harmed by Plaintiffs failing to raise the issue of the Setback Covenant until July 2016. The evidence is clear that Defendant intended to construct the Structure despite the widespread opposition from the neighbors. Defendant also continued construction after Rabbi Rivkin said he received actual notice of the Setback Covenant. Rabbi Rivkin argued that he relied on the Opinion of Dallas that the Setback Covenant was ambiguous and not enforceable, which is not the same as an "innocent mistake." The evidence demonstrates that Defendant was going to build the Structure on 14 Aigburth Road regardless of Plaintiffs' actions and objections. Additionally, the prior judicial actions regarding the property were actions before the Baltimore County Board of Appeals; and, administrative agencies do not have the authority to enforce restrictive covenants. Furthermore, as was discussed above, Plaintiffs have not waived their interest in enforcing the Setback Covenant. There is no requirement under the law that Plaintiffs raise all objections to Defendant's Structure at one time.

**E.    The Association**

The standing of all Plaintiffs was the basis for Defendant's Motion for Summary Judgment, which was denied. For the reasons discussed above, the Zoll Plaintiffs have standing to enforce the Setback Covenant and are entitled to relief.

Plaintiffs did not present evidence that the Association has standing to enforce the Setback Covenant. Although Robin Zoll and Paul Hartman testified that the neighborhood and community is harmed by the violation of the Setback Covenant, Mr.

20

Hartman also testified that the Association does not have the authority to enforce restrictive covenants. Plaintiffs did not present evidence or argument to support the Association's standing. Although, because the Zoll Plaintiffs are entitled to the relief requested by all Plaintiffs, the issue is moot. Also, because the Zoll Plaintiffs have standing and they asserted the same claims and sought the same relief as the Association, this Court need not consider the standing of the Association. *See, e.g.,* *People's Counsel v. Crown Dev. Corp.*, 328 Md. 303, 317 (1992) ("Where there exists a party having standing to bring an action or take an appeal, we shall not ordinarily inquire as to whether another party on the same side also has standing.")

## IV.    Conclusion

Based upon the foregoing, the Court finds that the Setback Covenant is reasonable, valid, and in full force and effect. The Court further finds that the Structure violates the Setback Covenant because it is significantly closer to Aigburth Road than permitted. Accordingly, the Zoll Plaintiffs' requests for a declaratory judgment and for injunctive relief shall be granted.


*Susan Souder*
Judge Susan Souder

Copies mailed to:

Michael R. McCann, Esq.
118 W. Pennsylvania Ave.
Towson, MD 21204

Kimberly A. Manuelides, Esq.
Sagal, Filpert, Quasney & Betten, PA
600 Washington Ave., #300
Towson, MD 21204