# EXHIBIT F

```
 1                    STATE OF MARYLAND

 2      IN THE CIRCUIT COURT FOR THE COUNTY OF BALTIMORE

 3    ROBIN ZOLL, et al.              )

 4                                    )

 5    Vs.                             ) Case No. 03-C-16-8420

 6                                    )

 7    FRIENDS OF LUBAVITCH, INC.     )

 8                                    ) January 10, 2019

 9                    TRANSCRIPT OF PROCEEDINGS

10

11    BEFORE:   THE HONORABLE KATHLEEN G. COX, JUDGE

12

13

14    APPEARANCES:

15              ON BEHALF OF THE PLAINTIFF:

16                   MICHAEL MCCANN, ESQ.

17

18              ON BEHALF OF THE DEFENDANT:

19                   BRIAN BOYLE, ESQ.

20

21    Transcribed by:

22    A. Greaver

23    Room 403

24    401 Bosley Ave.

25    Towson, Md. 21204
```

```
1                        PROCEEDINGS
2              THE COURT:  All right.  This is In the Matter
3     of Zoll versus Friends of Lubavitch, Case Number
4     C-16-8420.
5              If I can get counsel to identify themselves
6     and their clients on the record.
7              MR. MCCANN:  Good afternoon, Your Honor.
8     Michael McCann on behalf of the plaintiffs.
9              MR. BOYLE:  Good afternoon, Your Honor.
10    Brian Boyle, last name B-O-Y-L-E, on behalf of the
11    defendant, and next to me is Rabbi Rivkin on behalf
12    half of the corporate representative.
13             MR. MCCANN:  My clients are with me, as well,
14    Your Honor.
15             THE COURT:  Okay.  Good afternoon.
16             This was set in for a hearing on the -- I
17    mean, the only open motion at this court level, at this
18    point, is the motion to stay that is pending.  I set it
19    in for a hearing to hear argument on that.
20             Yesterday, though, I received a copy of what
21    was served in the clerk's office, which is a lawsuit
22    that apparently has been filed in Federal Court, which
23    names the Circuit Court as a defendant, the Circuit
24    Court for Baltimore County as a defendant in a Federal
25    lawsuit.
```

1          So before we get to the merits of the motion

2    to stay, that raises an odd issue on recusal, that I am

3    putting out there in case anybody wants to be heard on

4    whether this court can now hear something, having been

5    named as a party in a related lawsuit.

6          Anybody want to be heard?

7          MR. MCCANN:  I should consult with my

8    clients, but I would trust that they, along with

9    myself, have no problem with Your Honor proceeding as

10   you have in this matter.

11         So am I right about that?

12         UNIDENTIFIED SPEAKER:  Yes.

13         THE COURT:  Okay.

14         MR. BOYLE:  If Your Honor is comfortable

15   proceeding, then the defendant is happy to proceed

16   today on the motions today.

17         THE COURT:  I mean, I think one has

18   nothing -- it's not me personally.

19         MR. BOYLE:  Right.

20         THE COURT:  But it is, for whatever reason it

21   was named that way, it was, and I wanted to make the

22   issue -- put the issue on the table in case anybody

23   wanted to be heard on it.

24         MR. BOYLE:  Understood.

25         THE COURT:  All right.  With that being said,

1    I would be happy to hear all the motions today.

2              MR. BOYLE:   Thank you, Your Honor.

3              Since it's my motion, I will start.

4              This case is the prototypical case, where a

5    stay is required, because if there is no stay,

6    essentially, as a practical matter, there is no appeal,

7    because in this case, if a building is demolished,

8    obviously, you can't undo demolition.

9              The defendant's position was that, rather

10   than demolish the building, as Your Honor probably

11   recalls, was the building can be moved back from--  to

12   comply with the setback covenant.

13             Now, what's happened in this case, and I will

14   acknowledge in the beginning, I am in the unenviable

15   and somewhat uncomfortable position of suggesting to

16   Your Honor that defendant believes that the order was

17   not properly entered, and that is why we appealed.

18             So with that being said, I don't mean any

19   disrespect to the court.

20             THE COURT:   No disrespect taken.

21             Reasonable minds can differ on all sorts of

22   of things, and none of it's personal.

23             It's -- you know, I decided it as I saw it,

24   and people understandably disagree with that or agree

25   with it.  Whatever that is, I take no offense.

1          MR. BOYLE:  Very good.

2          THE COURT:  But we are here on what are we

3   doing going forward.

4          MR. BOYLE:  Very good.  I appreciate that,

5   Your Honor.  Thank you.

6          What has happened here is there is two

7   issues.  There is the location of this addition that

8   was allegedly not in compliance with a covenant that

9   required a setback.  That issue was the only issue in

10  the complaint.  That's what went to trial.  That was

11  the basis of Judge Souder's order.

12          I don't think there is any dispute about

13  that.  There is no doubt about that.  That's what the

14  complaint alleged.

15          The other issue that has found its way into

16  this case by plaintiff after the fact is the use of the

17  property.  The two are separate, and they have become

18  intertwined here, and it's our position that that was

19  improper to consider the use in essentially an

20  enforcement proceeding, when the underlying case in

21  trial was about the location.

22          Judge Souder's order, as was pointed out in

23  our memorandum, Judge Souder's order actually

24  contemplated moving the addition, rather than

25  demolishing it.  It was in there, and I believe, Your

1  Honor, at the last hearing, recognized that these were

2  the two alternatives.

3         Judge Souder certainly never said it needs to

4  be demolished, never said it needs to be razed.   To the

5  contrary, it needed to be removed to comply with the

6  setback, which is what moving the building back would

7  do.

8         Now, in Your Honor's order, based on

9  plaintiff's assertion, the doctorate of unclean hands

10  was adopted, and that was the basis for ruling that, of

11  these two alternatives, demolition was what the court

12  would order.

13         The doctrine of unclean hands is a doctrine

14  that typically is applied against a plaintiff who is

15  seeking equitable relief, and of course, the doctrine

16  is a plaintiff can not come in and receive the benefit

17  if he has unclean hands.

18         In our memo, we pointed that out, and in the

19  opposition, there was no case law presented of unclean

20  hands being applied in an enforcement proceeding or any

21  other context.   The two cases cited by plaintiff on

22  unclean hands analyzed that doctrine as an equitable

23  defense.

24         The case actually quotes it as the unclean

25  hands equitable defense.   It came in here at

1   plaintiff's suggestion after the fact in an enforcement

2   proceeding, and perhaps more importantly, on an issue

3   that was not litigated in this case.

4          Now, there is other administrative cases out

5   there that were not part of this case.

6          At trial, plaintiff tried to bring in the

7   use, and Judge Souder sustained objections, saying

8   that's not before me, what's before me is the location

9   of this building.

10         And in fact, plaintiff, in their opposition,

11  admits that the use of the property was not an issue.

12  On page seven of their opposition, they misconstrue our

13  argument, which I will get to in a minute.

14         I quote, FOL's assertion that the appropriate

15  remedy for the court to impose was to enjoin the

16  illegal use of the property is misguided for, and again

17  I am quoting, for the simple reason that FOL's use was

18  not before the court.

19         They have admitted it wasn't before the

20  court, but that's what was used to determine that there

21  were unclean hands.

22         Our argument is not that this court should

23  have or could have enjoined the use.  I don't know

24  whether it was-- they misread our memo, but it makes no

25  sense for us to say, out of one side of our mouth, the

1   issue of use isn't before the court, but you should

2   enjoin the use.  It makes no sense.  And to be clear,

3   that's not what we argued.

4           We argued that, given these two alternatives,

5   both of which comply with Judge Souder's order, to

6   invoke the doctrine of unclean hands, based on use,

7   that was not litigated, not before the court.

8           THE COURT:  Here is one of the things-- I

9   mean, I spent a lot of time pondering this case.  It's

10  always hard to come into something when it's two-thirds

11  done or three-quarters or 80 percent or what whatever

12  it was done.

13          What troubled me and what got me to equitable

14  issues, and then the reason I am putting it out there

15  is I want you to be able to give, you know, I want both

16  sides to understand part of where my reasoning was.

17  This was not -- this was post judgement remedies,

18  because a party had failed to comply with a court

19  order.

20          It was ordered to be done.  It wasn't done.

21  Therefore, Judge Souder appointed a trustee to, you

22  know, give effect to the order that she had entered.

23  And then my role was to give guidance to that person as

24  to how to exercise their discretion, among a lot of

25  ways of going at it, how are we going to do it.  That's

1  what I think puts me in the equity camp.

2      Because if this were simply, pay a judgement,

3  or if it were for me, in the first instance, to decide

4  what the remedy is, that's different to me than at a

5  point where your client has failed to comply with the

6  court's order in a timely fashion, and we are well

7  beyond it, and the court has appointed somebody to

8  enforce, then within the range of ways to go about

9  enforcing, I think the court has to consider equitable

10  principles.

11      That's how I got into that line of cases.

12  So, you know--

13      MR. BOYLE:  Understood.

14      And if I may address that, Your Honor.

15      I agree that the receiver, of course, was

16  appointed.

17      THE COURT:  And I said trustee, and it is

18  receiver.  You are right.  Sorry.

19      MR. BOYLE:  A receiver was appointed.

20      And what's interesting here, and I can

21  certainly relate to Your Honor coming in when something

22  is two-thirds done in this particular case.

23      THE COURT:  Yes.

24      MR. BOYLE:  What appears to have happened

25  here is the receiver agreed that the movement or the

1   removal would be proper.  The plaintiff objected to

2   moving the building back.  The receiver, who was

3   appointed to decide and enforce the judgement, agreed

4   that both either/or would comply.  That's how we ended

5   up back before Your Honor.

6           THE COURT:  Right.

7           MR. BOYLE:  But what happened here is, when

8   we came back, we ended up with, instead of enforcing

9   the judgement, the judgement was essentially changed to

10  say, because of your conduct, and in the order, it

11  references conduct during the zoning process, conduct

12  during the permit process, and as Your Honor pointed

13  out today, failure to comply with the judgement.

14          But that conduct, after the fact or before

15  the fact, can't convert a judgement that was already

16  entered by the judge who tried the case.  It

17  essentially changed that judgement, rather than

18  enforcing.

19          And I think Your Honor recognized that,

20  because at the last hearing, you specifically said, it

21  doesn't say raze, demolish.

22          THE COURT:  Well, and it doesn't say it's an

23  either, and I think I was clear about that in the

24  opinion that I wrote.  It doesn't specify, in my

25  opinion, which, and you could have gone about it either

1   way, but when your client didn't, it is for then the

2   court to decide how to enforce.

3          And in that vein, I think I had to look at

4   the whole record of what is the fairer option.  I mean,

5   that's how I get there.  Right or wrong, that's how I

6   get there.

7          MR. BOYLE:  Okay.  And of course, our

8   position is that--

9          THE COURT:  Your position is that it's wrong,

10  and I get that.

11         And the only question that I think is before

12  me today is:  Do I stay it until the Court of Special

13  Appeals says yes or no.

14         MR. BOYLE:  And that's where I am going.  I

15  will move onto that.

16         And the reason why, as I opened with, it

17  needs to be stayed is because you can't undo a

18  demolition.  I don't need to say that.  We all know

19  that.

20         If this building is demolished, essentially,

21  Your Honor will be preventing the Court of Special

22  Appeals from reviewing what I think everyone in this

23  room agrees, including Your Honor, is a close call.  It

24  could have gone either way.

25         There is no case law presented by the

1   plaintiff, in any circumstance, anywhere close to this

2   bizarre scenario, where we are in an enforcement

3   proceeding with unclean hands.

4        We have done our preliminary research.   We

5   are unaware of any cases applying the doctrine in this

6   way.

7        The plaintiff takes us to task for not citing

8   any cases saying that it only applies to a plaintiff.

9   Yet, tellingly, the plaintiff didn't cite any cases

10  where it applies in any other conduct-- any other

11  context, other than a plaintiff whose claim is against

12  a defendant saying, no, plaintiff, you have unclean

13  hands.

14       And I think, even if it weren't this close,

15  and it is close, and I appreciate Your Honor's candor

16  saying this is a close call.  It's unusual.  Sort of an

17  unprecedented procedure, how we ended up where we are,

18  with Judge Souder retiring and how everything played

19  out, we are sort in an, I don't want to say strange,

20  but unusual procedural posture, and I think given that

21  posture, it's important to allow the defendant to

22  exercise their right of appeal, to have it go up to the

23  Court of Special Appeals.  They can look at it and

24  decide, was it right, was it wrong.

25       If it was right, then obviously they will

1  affirm, and the building will be demolished pursuant to

2  the order.   If they reverse, then obviously the

3  building can be moved.

4          But I think, given how close it is and given

5  the extreme prejudice to the defendant if it's not

6  stayed, versus almost no prejudice to the plaintiff,

7  other than the building is still there, pending an

8  appellate court reviewing an order that presents, quite

9  frankly, novel issues of law, I think in this context,

10 the only reasonable course is to stay this for

11 everybody's benefit.

12         Because what happens if the building is

13 demolished, if the Court of Special Appeals somehow

14 does hear it, I don't know they would, because it seems

15 like it would be moot, and it turns out Your Honor was

16 not correct, then what happens?  Because if the order

17 was wrong, if the building is already demolished,

18 nothing can be done.

19         So all of that being said,  it's the

20 defendant's position that the only way to proceed is to

21 stay, allow the appellate court to reasonably consider

22 both sides' arguments, consider Your Honor's reasoning,

23 and make a decision as to whether it was proper.

24         So we think, based on these facts and these

25 circumstances, a stay is more than warranted and should

1   be granted.

2           THE COURT:  Do you want to address the issue

3   of what, if any, bond should be set in the event that I

4   agree with you on the issue of stay?

5           MR. BOYLE:  Absolutely, Your Honor.

6           It is our position that a bond is not

7   required, because a bond is typically required to

8   protect potential damages to the defendant.

9           In this case, there is a piece of property

10  over which a receiver has already been appointed.

11  There is no mortgage on the property.  The property,

12  itself, gives security that this judgement will be

13  performed, if the defendant ultimately loses the

14  appeal.

15          And to play that out, hypothetically, if the

16  defendant loses the appeal, it will come back down for

17  the building to be demolished.  The receiver has

18  already been appointed, who then will have authority to

19  enforce that judgement, and if for whatever reason the

20  funding of the demolition can't happen, the property is

21  there to secure it.

22          This property is worth far more than the cost

23  to demolish this addition.  So in this particular case,

24  no bond is required to protect any potential harm to

25  the defendants, because quite frankly, there is no

1   harm, and performance under the order is more than

2   secured by this piece of property that is unincumbered

3   by a mortgage.

4        So it is the defendant's position that no

5   bond should be required and a stay should be entered,

6   pending an appeal.

7        Thank you, Your Honor.

8        THE COURT:   Okay.

9        Mr. McCann?

10       MR. MCCANN:   Thank you, Your Honor.   Good

11  afternoon.

12       THE COURT:   Good afternoon.

13       MR. MCCANN:   As I said in the first line of

14  our memorandum, Your Honor, this is now the sixth

15  request for a stay in this case, three requests of the

16  Court of Special Appeals and two of this court.

17       We don't have the benefit, in each of those

18  instances, Your Honor, of a written opinion, explaining

19  why the stay was denied, but I think it's a fair, if

20  not obvious, assumption that this court and the Court

21  of Special Appeals found no merit in the arguments that

22  were advanced by the defendant in the initial request.

23  And that--

24       THE COURT:   Can I ask you a question about

25  that?   It was my understanding, and clearly, I wasn't

1   there, but it was my understanding that, at oral

2   argument on the other appeal in this case, that at

3   least one, if not other members of the panel, expressed

4   some consternation that the stay had been denied.

5           MR. MCCANN:  I would say that's a -- -- that,

6   as you put it, Your Honor, consternation is probably an

7   overstatement.  They just asked a question of why we

8   are here, when the proceeding is proceeding below.

9   That was just a question.

10          I don't think they came out either --  in

11  fact, as we know, shortly thereafter, they issued a

12  decision, affirming Judge Souder's opinion.  So I think

13  consternation is not what was expressed by the court,

14  but just a query of, why are we here.

15          And I think the court rather easily got

16  around that, frankly.

17          But getting back to my point, Your Honor,

18  those prior denials of the stay, we don't know why they

19  were denied, but I think it's fair to say that they

20  were denied, because the arguments that were made

21  lacked merit.

22          And the argument that was made in each of

23  those instances was the very same argument that we are

24  hearing this afternoon.  And that is that, if we

25  proceed, then we are going to -- with the removal of

1  the addition, then we are going to end up with an

2  appeal that is moot, and the defendant will be denied

3  its opportunity to pursue that appeal and denied its

4  due process rights.  That's the exact same argument

5  that we are hearing today.

6          I think what is addded in this case, Your

7  Honor, is a criticism of Your Honor's decision to

8  show-- I guess to establish that there is some merit to

9  the appeal, I guess is where all that's headed.

10          So again, the appeals were denied, and

11  nothing has changed since those appeals have been

12  denied, beginning back in February- I am sorry. --

13  March of 2018, when Judge Souder first denied the

14  request.

15          I will touch briefly upon the arguments in

16  defendant's motion, and then I will turn to the unclean

17  hands, specifically.

18          But this notion, Your Honor, that Your Honor

19  based her decision on the use of the structure is a

20  complete and absolute falsehood, complete falsehood.

21          What Your Honor did, and I know you know

22  this, but you looked to the history of the violations

23  regarding the use.  You looked to the Board of Appeals'

24  decision.  You looked to the administrative proceedings

25  and the result of that process and found, because that

1  was an adjudicated fact, that the use was illegal.

2  You, based on that history, you used that as the basis

3  for your determination that this defendant has unclean

4  hands, because if I were you, speaking about you, if I

5  were to allow this building to remain, it would only

6  countenance further violations regarding the use.

7          But you, Your Honor, did not render any

8  opinion or finding regarding whether the use is legal

9  or not, so that's a complete falsehood, and frankly, a

10  misunderstanding of what you said.

11          And I think, in all honesty, it's just an

12  attempt to muddy the waters.  It is an attempt to

13  convince Your Honor that the Board of Appeals' decision

14  was wrong, that this use is okay.

15          There is even reference to new evidence.  You

16  saw in their motion, Your Honor, about how there is

17  other uses in the neighborhood that are compatible with

18  this 6600 square foot community center.

19          I can-- believe me, I have the evidence here

20  today to show how those particular properties have

21  nothing to do with this case and why, in each instance,

22  how those buildings got there, but that is completely

23  irrelevant to what we are here for today.

24          And what we are here for today apparently is

25  a criticism of Your Honor's ruling on unclean hands.

1   That's the heart of the matter.

2           And on that issue, I know you have heard

3   about what my clients say about unclean hands ad

4   nauseum, so I am not going to repeat it.   I put it in

5   nearly every paper we filed in this case.

6           But I would say this, Your Honor:   It kind of

7   took a different view of the unclean hands doctrine as

8   applied here, and I would like to maybe focus the court

9   on maybe two continuums.

10          You can look at all this conduct, all this

11  history in two different ways.   You can look at what

12  happened at the administrative level.   Certainly, I can

13  repeat it quickly, but we have code violations, where

14  the county agencies and the Board of Appeals found that

15  this defendant was --

16          THE COURT:   I am very familiar with the--

17          MR. MCCANN:   You are familiar with it all.

18          THE COURT:   Yes.   There was a long recitation

19  of it.

20          MR. MCCANN:   There was.

21          The building permit, how the defendant lied

22  to get the building permit.

23          The end result of that continuum or that

24  process, Your Honor, was a Board of Appeals finding

25  that this defendant's conduct was dishonest, deceitful,

1   in bad faith, and manipulative of the administrative

2   process, and they did not appeal that decision.

3          So that set of facts, that decision of the

4   Board of Appeals, that conduct that has been

5   adjudicated and ruled upon is where we are today.   It's

6   set in stone, and continues, frankly, to permeate

7   everything about this case.

8          Because as I said ad nauseam, as well, Your

9   Honor, we would not be here today if Rabbi Rivkin had

10  not lied to get the building permit to construct this

11  building.   That's pure and simple.   That's as simple as

12  it gets.

13         And if that, in and of itself, is not unclean

14  hands, then I have difficulty understanding what might

15  be.

16         Second, as sort of a second continuum, but

17  related on a different track, is of course everything

18  that happened in the context of the setback covenant

19  and the proceedings in this court.

20         As you know, as I have repeated often, Your

21  Honor, the defendant was warned about this setback

22  before construction began.   Before construction began,

23  there was a hole in the ground, yes, but construction

24  in any appreciable way had not begun.

25         The court, in fact, found actual and

1    constructive notice of that setback covenant by virtue

2    of our warning from my clients, as well as by virtue of

3    the fact that there was a title insurance policy issued

4    to the defendant, excepting from coverage this

5    restriction in the defendant's deed.

6            So along that time line, just to continue on

7    continuum, Your Honor, we have an order of Judge

8    Souder.  The defendant waited eleven months, eleven

9    months until the day before Judge Souder's order was --

10   order of removal was to be effectuated, filed a motion

11   to stay, waited that long.

12           Stay of course was denied, as were the

13   subsequent requests.

14           Then the defendant waited another four months

15   until June 2018 to file this motion for clarification,

16   asking, for the first time, for permission to move the

17   building elsewhere on the property.

18           I have always argued, and I will say it

19   again, Your Honor, I think that motion for

20   clarification, despite its--  what it is entitled, was

21   essentially no more than a motion to alter or amend

22   Judge Souder's judgement from 16 months earlier and

23   should have been denied on that basis.

24           But all of the filings, if you look at the

25   history of the filings, I know we have repeated them

1  often, are like this.  They take advantage of the

2  opportunity in the rules to file the motion.  They wait

3  until the last minute to file whatever that may be, and

4  there is nothing, per se, wrong with that, Your Honor.

5       As counsel, vigorously defending our clients,

6  we have every right to do that.

7       But this is not that case.  This is not a

8  case where, you know, the defendant is filing

9  everything in order to take an opportunity of all of

10  its rights within the rules.

11       And the main reason I say that is because, at

12  the end of the day, after that waiting eleven months,

13  and after that stay was denied, as of March 1st, 2018,

14  this defendant has been in constructive contempt of

15  court.  From that moment, on March 1st to this very

16  day, they remain in constructive contempt of court.

17       So my point about these two continuums, I

18  think the first one, what the first one tells us is we

19  are here today because of their own conduct.  They put

20  themselves in this position by virtue of obtaining a

21  permit by false pretenses and everything else that

22  followed.

23       And we are also here today under the second

24  continuum, as I have characterized it, because the

25  defendant is in constructive contempt of court, as we

1    sit here today.

2          So given that, I think you would be hard

3    pressed to find a better example of unclean hands.   The

4    defendant put itself in this position, and it is in

5    constructive contempt of court.   It would be hard to

6    find a better example of unclean hands.

7          And respectfully, Your Honor, you have been

8    very deliberative in everything you have done in these

9    post judgement proceedings.   I think if the court were

10   to grant a stay at this point, after the court has

11   already denied it, after the Court of Special Appeals

12   has already denied it, you would be promoting this type

13   of conduct.   You would be promoting parties getting

14   away with contempt of court, parties disobeying court

15   orders.

16         And I think you would also be ignoring the

17   fact-- the simple fact that these prior requests for

18   stay were denied, and that this particular request

19   offers nothing new, other than the fact that Your Honor

20   may be wrong, which is what it comes down to.

21         Couple of points mentioned by counsel I just

22   want to address.   This issue of whether or not unclean

23   hands is appropriately applied, I know Your Honor has

24   addressed that and expressed your feelings as to that

25   issue.

1        I would just say this:  If this pl-- if this

2   defendant isn't seeking affirmative relief, then I

3   don't know.  You know, it's their motion for

4   clarification.  That's what we are here for.  We are

5   here on their motion.  We are here in post judgement

6   proceedings, based on their own contempt, failure to

7   comply with the order, Judge Souder's order.

8        Everything about this case right now is

9   happening, because they are seeking relief from this

10  court, and I think that is just a different way of

11  saying what you said, Your Honor.

12       And lastly, the issue of bond, counsel told

13  us that there would be no potential harm or damages if

14  the stay were granted, and I simply-- I do not agree

15  with that at all.

16       I think a fair reading of Judge Souder's

17  order, a fair reading was that the setback should be

18  enforced to protect the community, in particular the

19  Zolls, who have to live and have lived next door to

20  this monstrosity for months, and now going on more than

21  a year.

22       So to suggest that, if we wait another year

23  and a half or a year, even nine months for a Court of

24  Special Appeals order, there would be no additional

25  harm to the Zolls, I think is simply not true.

1           And also, Your Honor, there has been no

2   dispute in anything filed in these proceedings,

3   regarding that-- the continued illegal use of this

4   structure.

5           There is no denial.  They are unabashedly

6   admitting that we are still doing the same thing we

7   have done since day one.  So to allow, to issue a stay

8   on the basis that no harm is being done is just simply

9   not the case.

10          THE COURT:  I mean, I get that, but that

11  strikes me as a different cause of action.

12          You are not here on an action for monetary

13  damages, based on the harm caused by the inappropriate

14  use of the property.  And if you were, we would be

15  talking about a money judgement.

16          We are talking about here, in the event, if

17  my order is affirmed on appeal, the next step is that

18  the building is removed, and it's the cost of the

19  removal which, and I didn't go back and look at the

20  numbers.  It's my recollection to remove it was in the

21  $200,000 range.

22          Miss Dopkin is here, but that was in my mind

23  ballpark round number, and to move it was in the six to

24  $700,000 range, and I may be off on that.

25          But so to me the question is not continued

1  harm, because I get that there is continued harm from a

2  stay in terms of use and enjoyment of the property and

3  all of that.  But none of that were the damages in this

4  case.  None of that is the relief that's granted in

5  this case.

6          It is certainly a collateral and significant,

7  you know, impact from however this winds up, but it's

8  not the issue that's up there, if you get my

9  distinction.

10         MR. MCCANN:  I do.

11         And I would readily admit, this is not a case

12 about damages, compensating my clients for the harm to

13 them, but clearly, the --

14         THE COURT:  I mean, the monetary issue that

15 is up there is their cross-appeal.

16         MR. MCCANN:  Correct.

17         THE COURT:  I mean, they have got a cross

18 appeal on the issue of attorney's fees.

19         MR. MCCANN:  Correct.

20         But there still is harm to every day that

21 they have to --

22         THE COURT:  I get that.  I just don't think

23 that that, when you look at what the bond requirement,

24 what I am supposed to look at for the bond is to secure

25 the judgement, itself, not to, in some effect, penalize

1   for the collateral consequences that the judgement and

2   the relief is delayed.

3          MR. MCCANN:  I don't disagree with that, Your

4   Honor.

5          What I would add to that though, however, is

6   we are in the same position we were with all the other

7   stays.

8          Counsel may try to argue that, now, all of a

9   sudden, the building is going to be removed.  The

10  building was going to be removed a long time ago.

11         And in every single one of those appeals, the

12  argument was made, this building is going to be

13  removed, and we need a stay, it is going to be removed,

14  we need a stay, and the court has denied it.  This

15  court denied it, and the Court of Special Appeals.

16         So to suggest that we are in some different

17  posture now, because we really are at the eleventh

18  hour.  I thought we were at the eleventh hour a year

19  ago, frankly.

20         THE COURT:  I know.

21         MR. MCCANN:  And nothing has changed.

22  Nothing has changed.

23         THE COURT:  Okay.

24         MR. MCCANN:  Thank you, Your Honor.

25         THE COURT:  Anything further?

1           MR. BOYLE:   If I may briefly.

2           This case is-- something has changed.

3    Something has changed a lot, since the last request for

4    stay.

5           What has changed is Your Honor issued an

6    order.  That's the order that we are now appealing.  So

7    now the new appeal is:  Will the building be demolished

8    or will whether the building be moved.  That's the

9    appeal.

10          Very different than what it was before, which

11   presents different legal arguments, regarding unclean

12   hands and bringing in the use.

13          And it's very interesting, plaintiff's

14   counsel stands up and says, it's not about use, and

15   then proceeds to talk about the use for ten or fifteen

16   minutes.

17          Clearly, they are using the use to try to

18   force the demolition, and that's what happened here.

19          And for whatever reason -- I am new to this

20   case.  There is a lot of hyperbole and falsehoods and

21   lies and monstrosities.  I wasn't involved in that.  I

22   don't practice that way, but that is how they are

23   choosing to proceed.

24          THE COURT:   There are some quotes that are

25   pretty harsh.

1          MR. BOYLE:  Yes.

2          But there is one quote in there, in their

3    brief, that essentially is targeted at who wrote the

4    memo, which was me.

5          Footnote four says, remarkably, FOL asserts

6    that its conduct was indisputably equitable, because it

7    was unaware of the setback when it broke ground on

8    construction.  Broke ground on construction.  And the

9    response to that in the brief was, this is absolutely

10   false, of course.

11         Counsel just stood up here today and said,

12   there was a hole in the ground.  That's what breaking

13   ground means.  But we are splitting hairs.  That's in

14   the merits.

15         My point is, absent the hyperbole of the lies

16   and the falsehoods, we have before the court now

17   distinct issues of law, that plaintiff had an

18   opportunity to come in here and say, in opposition to

19   the memo, oh, they are crazy, look at all this law that

20   says, oh, unclean hands is applied like this all the

21   time.

22         They didn't do that, because it doesn't

23   exist.  These are, at a minimum, very close issues of

24   law, that if Your Honor doesn't stay will never be

25   heard by the Court of Special Appeals, and that's just,

1   quite frankly, contrary to the interests of justice and

2   fairness to my client.

3          All we are asking for is a fair opportunity

4   to be heard by the Court of Special Appeals.

5          Plaintiff says that the use of the structure

6   was not the basis for the unclean hands, went so far a

7   few minutes ago to say that was a complete falsehood,

8   but then again points to a lie, quote, unquote, that he

9   alleges that Mr. Rivkin lied.

10          What was that lie about?  The use.  Nothing

11   to do with the 150 foot setback.  The two issues have

12   been intertwined.  They should be separate.  We should

13   be given the opportunity to go to the Court of Special

14   Appeals and make these arguments.

15          I understand we are not arguing the merits

16   here today, but I think this back and forth has sort of

17   highlighted the fact that those are debatable close

18   issues of law.

19          And under the rules and under the Maryland

20   Constitution, quite frankly, the defendant has a right

21   to have these issues of law heard by the Court of

22   Special Appeals.

23          THE COURT:  Okay.

24          MR. BOYLE:  Thank you, Your Honor.

25          THE COURT:  Let me start by saying, I have

1   great sympathy with the fact that this case was filed

2   in August of 2016 and we are in January of 2019, and it

3   is still not resolved.

4         It has been tried.  There was a ruling, and

5   we are still here a significant period of time later,

6   and the same issues remain, unresolved, and for both

7   parties, you know, a resolution and finality is

8   better.

9         Having said that, in looking at the law on

10  when you should grant a stay pending appeal, I mean, to

11  me, one of the sort of underlying cardinal principles

12  is that you don't act in a way that the appeal will be

13  mooted before the appellate court has an opportunity to

14  hear it.

15        It was, when I stepped into this, and I think

16  if you look back at the transcript for the first time

17  we were in this courtroom, it was one of the things

18  that was concerning to me then.

19        It was surprising to me that it hadn't been

20  stayed, and I mean no disrespect for anybody who

21  decided it, for whatever reason they decided it.

22        But had that issue been before me at the time

23  it was first raised, I would have stayed it, and so it

24  feels wrong for me to do something different now,

25  simply because I sympathize with the fact that the

1    neighbors have been thwarted in having Judge Souder's

2    judgement put into effect for a lengthy period of

3    time.  It doesn't change the analysis for me as to

4    whether the stay should be granted.

5            I believe the matter should be stayed, so

6    that the appellate court can determine what the proper

7    ruling is, and for that reason, I am granting the

8    stay.

9            I disagree on the issue of, you know, the

10   judgement is protected and there is no need to require

11   the posting of some sort of bond, because the property

12   is valued at more than what the potential judgement

13   would be.  I have no assurance that that continues to

14   be true or that somebody doesn't somehow mortgage or

15   otherwise encumber the property.

16           My recollection is that the cost of the

17   relief that I believe is appropriate at this juncture

18   will cost in the range of $200,000.  I am requiring

19   that a bond in that amount be posted.

20           Thank you all for the arguments here today.

21   I appreciate it.

22           MR. MCCCAN:  Thank you.

23           MR. BOYLE: Your Honor, the timing of the

24   bond, can we have a week to post bond?

25           THE COURT:  Yes.  That's fine.

1               THE CLERK:  All rise.

2               MR. BOYLE:  And Your Honor, if I could, the

3     actual cost is not 200.  It's about about 114, 115.

4     The receiver is here.  The cost of the demolition.

5               UNIDENTIFIED SPEAKER:  The estimate was

6     114,000 based on last month, so it might be higher as

7     time elapses.

8               THE COURT:  I am rounding it.  Make it 125.

9               MR. BOYLE:  Thank you, Your Honor.

10              UNIDENTIFIED SPEAKER: Thank you, Your Honor.

11              MR. MCCANN:  Thank you, Your Honor.

12              (Proceedings concluded)

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    TRANSCRIBER'S CERTIFICATE

3

4        I hereby certify that the foregoing proceedings in

5   the matter of Zoll, et al., vs. Friends of Lubavitch,

6   Case Number 03-C-16-8420, heard in the Circuit Court

7   for Baltimore County, Maryland on January 10, 2019,

8   were digitally recorded.

9        I further certify that, to the best of my

10  knowledge and belief, page numbers one through 33

11  constitutes a true and correct transcript of the

12  proceedings.

13

14

15   _____

16                    Transcriber

17

18

19

20

21

22

23

24

25