# EXHIBIT G

2018 WL 2759305 (Md.App.) (Appellate Brief)
Maryland Court of Special Appeals.

FRIENDS OF LUBAVITCH, INC., Appellant,

v.

Robin ZOLL et al., Appellee.

No. 00372.
September Term, 2017.
April 23, 2018.

Appeal from the Circuit Court for Baltimore County, the Honorable Susan Souder presiding

**Appellant's Reply Brief**

Kimberly A. Manuelides, Sagal, Filbert, Quasney & Betten, P.A., 600 Washington Avenue, Suite 300, Towson, MD 21204, (410) 823-1881, kmanuelides @sagallaw.com, for appellant.

Michael McCann, Michael R. McCann, PA, 118 W. Pennsylvania Avenue, Towson, MD 21204, (410) 825-2150, michael@mmccannlaw.net, for appellee.

TABLE OF CONTENTS

| | |
|---|---:|
| I. INTRODUCTION | 1 |
| II. THE CIRCUIT COURT'S PROCEDURAL ERRORS WERE AN ABUSE OF THE COURT'S DISCRETION AND PREJUDICIAL TO FOL | 1 |
| III. THE CIRCUIT COURT SHOULD HAVE FOUND THE PLAINTIFFS' CLAIMS BARRED BY LATCHES | 3 |
| IV. THE CIRCUIT COURT SHOULD HAVE AWARDED DAMAGES IN LIEU OF GRANTING INJUNCTIVE RELIEF | 6 |
| V. THE CIRCUIT COURT'S ORDER DENYING APPELLEES AN AWARD OF ATTORNEY'S FEES SHOULD BE AFFIRMED | 8 |
| VI. CONCLUSION | 9 |
| VII. VERBATIM TEXT OF RULE 2-603 | 10 |
| VIII. CERTIFICATION OF WORD COUNT AND COMPLIANCE WITH RULE 8-112 | 10 |

TABLE OF AUTHORITIES

| | |
|---|---:|
| Cases | |
| *Accubid Excavation, Inc. v. Kennedy Contractors, Inc.,* 188 Md. App. 214 (2009) | 8 |
| *State Center, LLC v. Lexington Charles Ltd. P'ship,* 438 Md. 451 (2014) | 5 |
| *City of New Carrollton v. Belsinger Signs, Inc.,* 266 Md. 229 (1972) | 8 |
| Statutes | |
| Md. Code Ann., Cts. & Jud. Proc. § 3-410 | 8 |
| Rules | |
| Rule 2-603 | 8 |

**\*1 I. INTRODUCTION**

Contrary to the impression gained upon reading Appellees' brief, this case is not about whether Appellant, Friends of Lubavitch, Inc. ("FOL") was, is, or will in the future use the addition as a house of worship in contravention of local zoning law. It further is not about whether the addition looks pretty or its architecture is harmonious with the rest of the neighborhood.

Rather, this case solely concerns whether the addition was constructed in violation of a setback restriction within a deed and, if so, to what remedy, if any, are the Appellees entitled. The Complaint demanded that the addition either not be built or, to the extent the addition was constructed while the case was pending, that it be torn down. FOL, contended that the setback provision was ambiguous and, therefore, unenforceable, and the lawsuit was brought too late. As in any case, both parties to a dispute are entitled to present their case in a process that is fair. The court below failed in the exercise of its role in this process, abused its discretion, and should be reversed.

## II. THE CIRCUIT COURT'S PROCEDURAL ERRORS WERE AN ABUSE OF THE COURT'S DISCRETION AND PREJUDICIAL TO FOL

At the time the Complaint and summons were served, the building permit for construction of the addition at issue had been fought for and obtained. (E.4, 190). FOL was under contract for construction. (E.299). Materials had been delivered. Id. The foundation had been dug. *Id.* Appellees' motion for a temporary restraining order to cease further construction had been denied. (E.3).

**\*2** The original complaint named as parties plaintiff a trust that Appellees now say never existed, an individual as the trustee of that trust, and a neighborhood association with no enforcement powers or property rights. FOL could have waited until trial to litigate the improper parties defense. Instead, FOL raised the defense in its answer, took limited discovery on the issues, and then moved for summary judgment. There is nothing improper, there is no gamesmanship, in FOL's strategy. The plaintiff is the architect of his complaint, which serves as the blueprint of the litigation to the court and to the opposing party. FOL had no obligation to point out to Plaintiffs the error of their pleading. Instead of granting the motion, however, the court denied the motion and allowed Appellees to substitute parties plaintiff.

Appellees shrug off the significance of their amendment by referring to it as the mere correction of a misnomer. Appellees dismiss FOL's claim that litigation strategy would have been different by pointing out that FOL did not request an extension of discovery after the motion to amend was granted. Both arguments miss the mark entirely and disregard the fact that both parties are entitled to fundamental fairness throughout the process. Substituting two trusts for the named plaintiff trust was both an abuse of discretion and prejudicial, particularly given the timing of the substitution: By the time the Complaint was amended, construction was complete. Discovery was closed, and, although FOL could have requested additional time for discovery, with construction completed there was not much point in doing so at that time. Discovery plans and litigation strategy are made at the outset of litigation, not the month before trial.

**\*3** Moreover, the neighborhood association should not have been a party in the first instance. With no right of enforcement and no property of its own, it had no interest in the litigation. (E.227, 336). By permitting it to remain as a party, the Association was allowed to present entirely irrelevant evidence at trial. Evidence presented on behalf of the Association, for example, that the addition's architecture was not in keeping with the neighborhood, wholly conjectural testimony that the property would be difficult to sell given the length of time another large residence had been on the market prior to sale, and the Association's position with regard to the addition (E.233), none of which should have been considered by the court in determining whether the addition violated a private setback condition.

Had FOL's motion for summary judgment been granted as it should have been, the proper plaintiff could have filed a complaint, as indeed it could have at any time. The difference, as Appellees well know, is that with the passage of time, the addition was completed. Further costs were incurred and the balance of the equities may have changed. Another court on another day would have then had to weigh whether balancing the equities given the circumstances then before it justified tearing down the addition.

## III. THE CIRCUIT COURT SHOULD HAVE FOUND THE PLAINTIFFS' CLAIMS BARRED BY LATCHES

Although FOL did not share its architectural plans with Appellees prior to the spring of 2014, Appellees clearly had knowledge of FOL's expansion plans as early as 2012. Judge Souder's Memorandum Opinion so found: "The evidence is clear that Defendant was aware of opposition to constructing an addition when the idea was first **\*4** proposed in 2012. The evidence is also clear that the opposition intensified and became more organized beginning in 2014." (E.237). This finding was likely grounded in the following testimony of Robin Zoll (E.267-68):

> .... Mr. -- the Rabbi, Rabbi Rivkin had been involved for -- since 2012 in talking with, urn, my husband and various community people about this addition. Urn, they had been talking for years about this addition.

The finding could also have been derived from the following testimony of Rabbi Rivkin (E.289) :

> ...In January 2012 the County -- the neighborhood association put out in their -- in their weekly -- in their monthly notes that we had asked about an addition. I made sure to attend the next meeting to find out if they had heard any objections.

Immediately before the above-quoted testimony, Rabbi Rivkin also testified, without contradiction, that the concept of putting the addition in front of the existing house was known to Appellees from as early as 2012. (E.289).

> And they [various community members] suggested we should build in the rear of the house. I -- it didn't make a lot of sense because the rear of the house -- the house is pretty far set -- is pretty -- setback pretty far. It really didn't make sense, and the -- and there were some other comments made by this -- by this member of the neighborhood association which I felt extremely put off as a Jew. I, therefore, spoke to directly -- it also would have put out the -- the Zolls in a big way because had we built -- their house is setback further than ours. Their house is behind ours, even the old house. So if we would have built in the rear it would have been right in their nose. I therefore spoke the David Zoll at the time and I told him that I had -- that it had been recommended to me to build in the rear of the house, how would he feel about that. And he made it clear to me that he would want - he said to me, if you build it, I want it to be further away from us. So not behind, build - build forward. Preferably build forward. At that point we started pursuing - we started -- spoke to the County. The County actually informed the neighborhood association **\*5** that we had spoken to them and I went to the next neighborhood association meeting.

Laches applies where there is an unreasonable delay in the assertion of one party's rights resulting in prejudice to the other: *State Center, LLC v. Lexington Charles Ltd. P'ship,* 438 Md. 451, 586 (2014). Although, typically, suits that are brought within the applicable or analogous limitations period are not found to be barred by laches, the defense may be applied to bar an action, even though the limitations period has not lapsed, when the defendant has been prejudiced by the unreasonable delay in the assertion of the plaintiff's rights. *Id.* Such is the case here. Appellees knew of FOL's plans to construct the addition in front of the existing structure since 2012. Their publicly stated objections to the addition had consistently been that the addition was a ruse for constructing a house of worship and that it was too big for the neighborhood. Countless hours and effort had been expended fighting the battle on those two, stated, fronts. The

restrictive covenant is of record and in the chains of title of both FOL and the Trusts. If Appellees truly opposed any construction forward of the existing house, they could and should have raised the issue regarding the restrictive covenant from the outset. For the Appellees to use the chain of title reflecting the covenants now at this late hour as both a sword and a shield, to the effect that that Appellees should be able to use the chain of title affirmatively but FOL may not use that same chain defensively, is the height of inequity.

### *6 IV. THE CIRCUIT COURT SHOULD HAVE AWARDED DAMAGES IN LIEU OF GRANTING INJUNCTIVE RELIEF

Appellees castigate FOL for referring to the relief sought by their complaint as being in the nature of specific performance. Br. at 30, n. 26. Again, Appellees are the architects of their complaint. Count II of their Amended Complaint asks that the Court "specifically enforce the Restrictive Covenants..." (E. 172). FOL's "confusion," in this regard is attributable to the wording of the Complaint itself. Nevertheless, as the cases cited by FOL in its opening brief make plain, restrictive covenants are frequently, even routinely, enforced. FOL does not deny this proposition of law. The question, however, is whether the circuit court's order was clearly erroneous under the unique facts of this case, those unique facts being the procedural failures, Appellees' delay in raising the covenant as an issue, and the measurable damages for the breach.

Further, underlying the basis of Appellees' insistence that the addition be demolished is their conviction that the addition is or will be used as a house of worship in violation of county zoning law and that the permit for its construction was obtained by Rabbi Rivkin's misrepresentation of its intended use. Again, the present or future use of the addition is not before the court. To the extent that use questions tainted the court's ruling, evidence pertaining to use was not properly considered by the court below.

*7 With regard to Rabbi Rivkin's testimony, the court held: "...where his testimony differed from that of Robin Zoll, whom the Court found credible, the Court credited Ms. Zoll's testimony." E.226. The court made no findings of credibility with regard to other evidence submitted on behalf of FOL. [1] Thus, in considering the appropriate remedy for violation of the setback covenant, the court had before it the unrefuted testimony that

- Appellees were aware of the planned construction and general foot print since 2012 and failed to raise the setback covenant as a bar to construction until 2016;
- FOL acquired the property to be used as a home for Rabbi Rivkin and his family (E.255).

- Rabbi Rivkin and his family live in the addition (E.299).

- the addition cost $600,000 to build (E.299); the building permit estimated the cost to be $500,000 (E.190). [2]

- building plans that showed the addition as being a multi-story, brick, 6,000 square foot building (E.193).

Against the foregoing evidence was Mrs. Zoll's testimony that her property had been devalued by five percent ($50,000) as a direct result of the addition. E.266. No *8 evidence of the view shed ostensibly obscured by the addition was presented. (E.345). Specifically, the court observed,
So if the structure wasn't there she'd see more of Aigburth Road? I mean, what is it that - what did she have a view of? I mean, it's not as though she's described some scenic mountain vista?

... Right? I mean, it's traffic on Aigburth Road. It's kind of a busy road. I'm familiar with the neighborhood. I travel on Aigburth Road.

*Id.* Under these circumstances and given the clear evidence of the monetary value of the damage to Appellees attributable to the addition as compared with the quantifiable and relatively nominal loss to Appellees, the circuit court should have entered an award of damages in lieu of granting the injunctive relief sought.

### V. THE CIRCUIT COURT'S ORDER DENYING APPELLEES AN AWARD OF ATTORNEY'S FEES SHOULD BE AFFIRMED

In their cross appeal, Cross Appellants seek review of the circuit court's order denying their request for attorney's fees. The request was made pursuant to the Maryland Declaratory Judgment Act, specifically, that provision which authorizes the court to "make such award of costs as may seem equitable and just." [Md. Code Ann., Cts. & Jud. Proc. § 3-410](#) [emphasis added]. The Maryland Declaratory Judgment Act, however, does not authorize the award of attorneys' fees. [*City of New Carrollton v. Belsinger Signs, Inc.,* 266 Md. 229, 238 (1972)](#) (in a declaratory judgment, remanding the case for reconsideration of proper determination of costs on the basis that "[t]here is a claim that counsel fees were included and we see no reason why they should be included"). Rather, it authorizes recovery of "costs" by the successful party. **\*9** [Md. Code Ann., Cts. & Jud. Proc. § 3-410](#). Costs are defined in Rule 2-603 as all fees of the clerk, fees of the sheriff, and other costs, not here relevant. Rule 2-603(b)(1).

Accordingly, there is no basis, legal or factual, for Plaintiffs' claim for attorneys' fees and the court's order denying the award of fees should be affirmed. *See, e.g.,* [*Accubid Excavation, Inc. v. Kennedy Contractors, Inc.,* 188 Md. App. 214, 230 (2009)](#) ("...Maryland follows the "American rule" on attorney's fees, according to which a party in a compensatory damages action may recover attorney's fees only if (1) permitted by statute or (2) provided for in a contract between the parties").

### VI. CONCLUSION

For each of the foregoing reasons, and for those set forth in FOL's opening brief, FOL requests that the circuit court's order commanding demolition of the addition be reversed and that the circuit court's order denying the request for attorney's fees be affirmed.

Footnotes

1   With regard to FOL's use of the property, including the addition, the court had before it the unrefuted testimony that: consistent with FOL's website, Rabbi Rivkin on behalf of FOL provides adult education, "funerals, weddings, circumcisions, whatever people need we find a way to provide. It doesn't mean we provide it all at the house. But we provide whatever - as a Rabbi, it's my obligation and duty to administer the Jewish population in Towson, not just the students, but anybody who's there however they need." (E.308). No evidence was introduced of gatherings of 250 or more at the property. Rather, Rabbi Rivkin testified that in response loan invitation that went out on Facebook to 251 people, 20-22 showed up for Passover Seder on April 22, 2017. A maximum of seven showed up in response to an invitation issued to 205 on Facebook for one of the last nights of Passover. E.309. No evidence was introduced of "funerals, weddings, circumcisions" being performed on the property. Three photographs of a backyard barbeque taken in September 2016 were introduced. E.503.

2   Judge Souder criticized FOL for not producing more evidence of its construction costs, including the source of income to cover those costs. However, no evidence was presented to rebut Rabbi Rivkin's testimony and it was admitted without objection. Having no other evidence before her regarding the cost, there was no reason for Her Honor to disregard Rabbi Rivkin's testimony altogether, as she apparently did.