# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

---

**FRIENDS OF LUBAVITCH, INC.**, *et al.*

     *Plaintiffs,*

v.           CASE NO:  18-cv-03943-GLR

**BALTIMORE COUNTY, MARYLAND**, *et al.*

     *Defendants.*

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Nathan Lewin, Esq. (D. Md. 03312)
LEWIN & LEWIN, LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000
nat@lewinlewin.com

David Felsen, Esq.
FELSEN & SARGENT, LLC
600 Jefferson Plaza, Suite 201
Rockville, MD 20852
(301) 251-4010
dfelsen@mdlawyers.com

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................... 1

THE COMPLAINT'S ALLEGATIONS ............................................................................. 4

ARGUMENT ...................................................................................................................... 8

THE LEGAL STANDARD ................................................................................................ 8

I. THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFFS' PRAYER
FOR PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF AGAINST THE
CIRCUIT COURT'S ONGOING VIOLATION OF FEDERAL LAW ............................ 8

II. THE *ROOKER-FELDMAN* DOCTRINE IS INAPPLICABLE BECAUSE
THIS IS NOT A LAWSUIT THAT REPLACES OR "SIDETRACKS"
POSSIBLE SUPREME COURT REVIEW ........................................................................ 9

    A. Recent Supreme Court and Fourth Circuit Decisions Have Explained and Narrowed
    the *Rooker-Feldman* Doctrine .................................................................................. 10

    B. As Currently Understood, the *Rooker-Feldman* Doctrine Does Not Affect This
    Court's Jurisdiction .................................................................................................... 11

III. FEDERAL ABSTENTION WOULD DELAY RELIEF, WOULD INCREASE
PLAINTIFFS' HARM, AND IS NOT WARRANTED UNDER APPLICABLE
SUPREME COURT STANDARDS .................................................................................... 12

IV. PLAINTIFFS HAVE STANDING TO RECOVER DAMAGES AND TO USE THE
EXPANDED BUILDING FOR RELIGIOUS EXERCISE BECAUSE THEY CONTEST
THE CIRCUIT COURT DEMOLITION ORDER ............................................................ 13

V. THE INDIVIDUAL PLAINTIFFS HAVE CONSTITUTIONAL STANDING BECAUSE
THEY ARE "PERSONS" INJURED BY THE RLUIPA VIOLATIONS .......................... 15

VI. THE DEFENDANTS' RLUIPA VIOLATIONS GENERATED, AND WERE NOT
CANCELLED BY, THE COURT ORDERS ..................................................................... 16

VII. PLAINTIFFS' RLUIPA CLAIMS WILL BE PROVED FOLLOWING DISCOVERY ...... 17

    A. The Substantial Burden That the Defendants Imposed, Not a "Self-Imposed
    Hardship," Obstructed the Plaintiffs' Religious Observance ................................... 17

    B. Discovery Will Establish That Baltimore County Officials Treated FOL's Request
    To Expand Its Residence Differently Than Similar Applications by Nonreligious
    Entities and Individuals ............................................................................................. 18

**TABLE OF CONTENTS**

C. Notwithstanding "Everyone's Natural Inclination," Evidence Disclosed in Discovery Will Establish That Baltimore County Officials, Pressured by FOL's Neighbors, Did Discriminate Against the Plaintiffs Because of Their Religious Observance ...................19

D. Preventing Expansion of the Chabad House and Supporting the Demolition of the Expanded Structure Will Totally Exclude FOL's Religious Assembly and Its Religious Activity from the Towson Area ........................................................................................20

E. The Plaintiffs' Religious Activity Was Unreasonably Limited ....................................21

VIII. PLAINTIFFS' SECTION 1983 CLAIMS ARE VALID BECAUSE THE DEFENDANTS DEPRIVED THE PLAINTIFFS OF THEIR CONSTITUTIONAL RIGHTS.............................21

IX. THE STATE-LAW DEFAMATION CLAIM SHOULD NOT BE DISMISSED BEFORE DISCOVERY ...........................................................................................................22

CONCLUSION..................................................................................................................24

# TABLE OF AUTHORITIES

Page

## Cases

*Adebusoye v. Prince George's County*, 2019 WL 1125922 (D. Md. March 12, 2019)................10

*Adhi Parasakthi Charitable, Medical, Educational, and Cultural Society of North America v. Township of West Pikeland*, 721 F. Supp.2d 361 (E.D. Pa. 2010) ...................................14

*Andon, LLC v. City of Newport News*, 813 F.3d 510 (4th Cir. 2016).......................................3, 17

*Bethel World Outreach Ministries v. Montgomery County Council*, 706 F.3d 548 (4th Cir. 2013) ....................................................................................3, 19

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 138 F. Supp. 3d 352 (S.D.N.Y. 2015)..............................................................................20

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 280 F. Supp.3d 426 (S.D.N.Y. 2017)...............................................................................20

*CSX Transportation, Inc. v. Board of Public Works of West Virginia*, 40 Fed. Appx. 800 (4th Cir. 2002).....................................................................................9

*Edwards v. City of Goldsboro*, 178 F.3d 231 (4th Cir. 1999)........................................................8

*Employers Resource Management Co. v. Shannon*, 65 F.3d 1126 (4th Cir. 1995) .....................12

*Ex parte Young*, 209 U.S. 123 (1908)...........................................................................................9

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ......................................10

*Frederick Road Ltd. Partnership v. Brown & Sturm*, 360 Md. 76 (2000) ..................................22

*Green v. Mansour*, 474 U.S. 64 (1985)..........................................................................................9

*Hagans v. Lavine*, 415 U.S. 528 (1974).........................................................................................8

*Himmel v. Hendler*, 161 Md. 181, 155 A. 316 (1931).................................................................6

*King v. Marriot International, Inc.*195 F. Supp.2d 720 (D. Md. 2002) .......................................22

*King v. Rubenstein*, 825 F.3d 206 (4th Cir. 2016) .......................................................................8

# TABLE OF AUTHORITIES

Page

*Lynn v. West*, 134 F.3d 582 (4th Cir. 1998) ...................................................................9

*McKenrick v. Savings Bank of Baltimore*, 174 Md. 118, 197 A. 580 (1938) ................6

*Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) ..................12

*Mitchum v. Foster*, 407 U.S. 225 (1972) .....................................................................22

*Oneida Indian Nation v. County of Oneida*, 414 U.S. 661 (1974) ................................8

*Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941) .....................................12

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44 (1996) ...........................................9

*Stogsdill v. Azar*, 2019 WL 1131949 (4th Cir. 2019) .................................................10

*TFWS, Inc. v. Schaefer*, 242 F.3d 198 (4th Cir.2001)...................................................9

*Thana v. Board of License Commissioners for Charles County*,
    827 F.3d 314 (4th Cir. 2016) ..............................................................................10, 11

*Tucker v. Specialized Loan Servicing*, 83 F. Supp.3d 635 (D. Md. 2015)....................23

*Vision Church v. Long Grove*, 468 F.3d 975 (7th Cir. 2006) ......................................20

*Weidman v. Exxon Mobil Corp.*, 776 F.3d 214 (4th Cir. 2015)....................................8

*Whitmarsh v. Richmond*, 179 Md. 523, 20 A.2d 161 (1941).........................................6

*Younger v. Harris*, 401 U.S. 37 (1971).......................................................................12

## Statutes

28 U.S.C. § 2283.............................................................................................................22

Religious Land Use and Institutionalized Persons Act ("RLUIPA")
42 U.S.C. §§ 2000cc, *et seq.* ............................................................................. *passim*

42 U.S.C. § 1983 .................................................................................................. *passim*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

FRIENDS OF LUBAVITCH, INC., *et al.*

           *Plaintiffs,*

v.                                          CASE NO:  18-cv-03943-GLR

BALTIMORE COUNTY, MARYLAND, *et al.*

              *Defendants.*

# PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

## INTRODUCTION

With two separate Memoranda of Law, the defendants in this case seek dismissal of the Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The defendants' motions assert various jurisdictional arguments that rest on a substantial misunderstanding and distortion of the legal theory of the Plaintiffs' claims and that ignore recent applicable decisions of the Court of Appeals for the Fourth Circuit.

At stake in this case is a freedom that is at the heart of the first 16 words of the Bill of Rights – the freedom to learn and follow the rituals of a religious creed. Chabad-Lubavitch is an internationally respected Orthodox Jewish organization that encourages and teaches observance of the Jewish faith. Individual Plaintiffs are Jewish students at universities in Baltimore who will be deprived of Jewish practice and instruction if Baltimore's zoning officials – who have been implementing the desires of FOL's neighbors to remove the Chabad House from their vicinity – have their way. The Congress that enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA") intended to provide a federal remedy to overcome precisely the kind of local opposition and misuse of local zoning laws to suppress religious exercise that Towson's Chabad House has encountered. The Defendants are now seeking to achieve an objective that federal law

1

unequivocally condemns by invoking a property-law ruling that would not have been made if Baltimore's zoning officials had not yielded to the wishes of Chabad House's neighbors and had fairly and non-discriminatorily applied local zoning regulations.

Our Complaint is straightforward and succinct. It alleges a course of conduct between 2011 and 2017 by Baltimore County officials that violated federal law and deprived the Plaintiffs of federally protected constitutional rights. This illegal course of conduct by Baltimore County culminated in recent decisions rendered by Circuit Court judges in a covenant-enforcement lawsuit. In their decisions, the Circuit Court explicitly relied on false assertions made by Baltimore County personnel between 2015 and 2017 in order to hinder and prevent rights protected by the Religious Land Use and Institutionalized Persons Act and by the First Amendment. The Defendants now invoke inapplicable jurisdictional rules of federalism such as the Eleventh Amendment, the *Rooker-Feldman* doctrine, and federal-court "abstention" in their effort to abort this lawsuit and thereby prevent the discovery that will reveal their misconduct. We demonstrate below that none of these jurisdictional contentions has any bearing on this case.

The lead Plaintiff, Friends of Lubavitch ("FOL"), has been engaged for almost half a century in extensive Jewish religious educational activity in Maryland. It purchased a residence in Towson adjacent to Towson University and very close to Goucher College for the purpose of teaching and furthering Jewish religious observance by Jewish students. The residence was immediately designated a "Chabad House" that would encourage and assist the observance of Jewish rituals by Jewish students at the nearby educational institutions. These include Sabbath and Jewish Holiday kosher meals, as well as education and training in Jewish religious practices. Following the model of "at least 45 locations in the United States" (Complaint ¶ 24), a rabbi of the Chabad-Lubavitch movement and his wife ("the Rivkin Plaintiffs") took up residence in the

home. The Towson "Chabad House" was not only the home of the Rivkin Plaintiffs but was openly and publicly a place where they hosted Towson and Goucher students in order to encourage and educate the students in Jewish religious observance.

From the moment that the property was purchased there was no doubt that FOL's "reasonable expectation [was] to use real property for religious purposes" – which the Court of Appeals for the Fourth Circuit identified in *Andon, LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016), citing *Bethel World Outreach Ministries v. Montgomery County Council*, 706 F.3d 548, 556-557 (4th Cir. 2013), as "a critical function of RLUIPA's substantial burden restriction." But FOL's neighbors opposed use and expansion of the Chabad House for these reasonably expected religious observances by college students, and the Baltimore County Defendants implemented a neighbor-inspired program designed to delay and defeat use of the Chabad House for religious observance.

Baltimore County officials fabricated zoning violations and insisted that adversary hearings be conducted before an Administrative Law Judge in order to hinder the planned religious use of the property, to delay any possible expansion of the Chabad House, and to burden FOL with additional costs. After these delaying efforts ran their course, FOL was granted the building permit it should have received promptly, and construction began. At that juncture, FOL's immediate neighbors ("the Zolls") discovered a 1950 setback covenant. That covenant has now been enforced literally by Circuit Court judges who explicitly based their draconian decisions directing demolition of the expansion on the false allegations of the Baltimore County officials and on false contested findings of a Baltimore County Zoning Board of Appeals that were published five (5) months ***after*** the initial Circuit Court ruling.

This RLUIPA lawsuit seeks to remedy an illegal course of action by Baltimore County officials. In addition to violating federal law with delaying and obstructive tactics when FOL sought to expand the Chabad House residence to accommodate students who were seeking religious guidance in Jewish rituals, the Defendants' conduct culminated in a Circuit Court order directing destruction of the entire religious-mission building. We are in federal court because federal law has assigned to this judicial forum the responsibility of shielding the observances of a minority faith from the pressure of neighbors who invoke local land-use authority to banish a religious institution.

## THE COMPLAINT'S ALLEGATIONS

Because the original building was too small to accommodate the increasing number of students who were benefiting from the Chabad House's religious service, FOL sought in 2011 to enlarge the residence to educate Jewish students in Jewish rituals and to accommodate more guests for Sabbath and Holiday meals. It continued to be the residence of the Rivkin Plaintiffs. Rabbi Rivkin consulted with Baltimore County officials about his planned enlargement of the Chabad House. Rather than processing a proposed residence expansion, they told him to "meet with neighbors." Rabbi Rivkin attempted to satisfy the neighbors' demands, but the neighbors opposed the expansion and continue to oppose it to this day. When funding for this expansion of the residence became available in 2014, FOL submitted a request for a building permit with a plan to enlarge the Rivkins' residence from 2200 to 6614 square feet. (Complaint, ¶¶ 29, 31).

The Baltimore County Defendants did not process the request for a building permit so as to allow the construction to proceed promptly (as, on information and belief, they customarily process applications to enlarge residences). Instead, Baltimore County zoning officials violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). They initially said (Complaint, ¶ 36) that they would grant a building permit only if the residence qualified as a

"synagogue," although neither FOL nor the Rivkins had any interest in using it as a house of worship and it was not actually used as a synagogue.

In January 2015, with the intention of impeding, hindering, and delaying the construction of the expansion that was needed for the Plaintiffs' religious exercise (Complaint, ¶¶ 39-41), Baltimore County officials alleged falsely that the hospitality that had been afforded by FOL and the Rivkin Plaintiffs to Towson and Goucher students in the residence violated local zoning regulations. With the same unlawful intent, Baltimore County officials obstructed construction of the expansion by (a) asserting that it had been operated as a "community building" and (b) denying a building permit unless the expansion was approved after an adversary hearing before an Administrative Law Judge. At two such hearings, the Baltimore County officials opposed the application to expand the residence with the "intent and necessary effect" of delaying and preventing the exercise of the Plaintiffs' religious observance (Complaint, ¶¶ 43-44, 49-50). Discovery will, we believe, demonstrate that these proceedings implemented, furthered, and encouraged the opposition of the neighbors to the religious activity at the Chabad House. Manipulation of the zoning regulations by the Baltimore County Defendants delayed issuance of the building permit from January 2015 to April 2016 and imposed substantial costs on FOL for attorneys' fees and other expenses.

The Administrative Law Judge approved FOL's application after the second hearing. The neighbors appealed, but a building permit was issued and FOL began construction. In July 2016 – 40 days after construction began – Rabbi Rivkin was informed that the Zolls had discovered that a 1950 deed on the FOL property contained a covenant that a dwelling on the property "shall have a setback equal to one-half of the total setbacks of the two houses erected on the lots adjoining to the East and West thereof, measured to the centre of said houses, exclusive of

porches." FOL would have incurred very substantial expense of approximately $600,000 had it stopped the construction and conformed with the Zolls' construction of a setback covenant written 66 years earlier and first discovered after construction began. (Complaint, ¶¶ 51-54).

The Zolls and the neighborhood association opposing expansion of the Chabad House initiated a lawsuit on August 12, 2016, in the Circuit Court of Baltimore County to enforce the 1950 covenant. The terms of the covenant are ambiguous, and there is ample judicial authority in the Maryland courts for construing restrictive covenants strictly in favor of "freedom of the land" and "unrestricted use of property." See, *e.g.*, *Whitmarsh v. Richmond*, 179 Md. 523, 527, 20 A.2d 161, 163 (1941); *McKenrick v. Savings Bank of Baltimore*, 174 Md. 118, 128, 197 A. 580, 585 (1938); *Himmel v. Hendler*, 161 Md. 181, 155 A. 316, 319 (1931). Nor, to our knowledge, has any Maryland court ever enforced a setback covenant to prevent or burden religious exercise.

At a trial held on March 30-31, 2017, the Circuit Court went beyond construction of the covenant and permitted the plaintiffs to introduce evidence of "widespread opposition from the community regarding construction of the Structure." In a decision of April 7, 2017, enforcing the covenant, the Circuit Court noted that community opposition "intensified and became more organized beginning in 2014." The Court ruled that the opposing neighbors lacked standing, but enforced the setback covenant literally and directed that the setback violation be "removed." (Complaint, ¶¶ 56-58).

Five months later the Board of Zoning Appeals of Baltimore County issued a 2-to-1 decision in which it reversed the Administrative Law Judge's April 2016 decision authorizing construction with erroneous and false declarations regarding the use of the property by FOL and the Rivkin Plaintiffs. The intent and effect of this action by Baltimore County officials was to hinder, obstruct, and prevent religious exercise by FOL, the Rivkin Plaintiffs, and the named

Jewish Student Plaintiffs who had participated in, and benefited from, the hospitality and religious education provided by the Chabad House. (Complaint, ¶¶ 59-60).

The findings of the Baltimore County Board of Appeals which were generated by the RLUIPA violations of the Baltimore County zoning officials were relied on and quoted by the Circuit Court in its ruling of October 31, 2018. The Court recounted the "History of Administrative Proceedings" and quoted the false finding that "FOL has been using the property without obtaining necessary approvals or complying with regulations." It enforced the setback covenant with a draconian order because it did not want to "tacitly endorse that which has been repeatedly found to be a violation of existing restrictions in the residential community." Because of the false Baltimore County assertions that Rabbi Rivkin had acted unlawfully, the Court ruled that FOL and Rabbi Rivkin had "unclean hands." Although the Circuit Court could have (a) refused, under applicable Maryland precedent, to enforce the setback covenant, (b) ordered no relief beyond the payment of $17,500 in money damages to the Zolls, or (c) ordered, as a court-appointed receiver recommended, that the expanded structure be moved to comply with the 1950 setback covenant, the Circuit Court issued an injunction that directed that the entire structure be "razed." (Complaint ¶ 63).

# ARGUMENT

## THE LEGAL STANDARD

The Supreme Court and the Court of Appeals for the Fourth Circuit have set high hurdles for the relief requested at this juncture by the Defendants. Dismissal for lack of jurisdiction is permissible only if the claim on which federal jurisdiction hinges is "insubstantial on [its] face." *Hagans v. Lavine*, 415 U.S. 528, 542 n.10 (1974). Only if the right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy" may it be dismissed for lack of jurisdiction. *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 666 (1974). Courts do not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses" on motions under Rule 12(b)(6) or 12(b)(1). *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 219 (4th Cir. 2015).

## I.

## THE ELEVENTH AMENDMENT DOES NOT BAR PLAINTIFFS' PRAYER FOR PROSPECTIVE DECLARATORY AND INJUNCTIVE RELIEF AGAINST THE CIRCUIT COURT'S ONGOING VIOLATION OF FEDERAL LAW

Paragraph (c) of the Prayer for Relief in the Complaint seeks monetary damages ***only*** against the Baltimore County Defendants. It does ***not*** seek monetary damages from the Circuit Court. The only relief that the Plaintiffs are seeking against the Circuit Court appears in Paragraphs (a) and (b) of the Prayer for Relief – declaratory and injunctive relief.

Nonetheless, the Memorandum of Law submitted in support of the Circuit Court's Motion To Dismiss devotes pages 7-12 – its first legal argument – to the contention that the Complaint's claims against the Circuit Court must be dismissed under the Eleventh Amendment.

But the Eleventh Amendment protects States and their agencies ***only*** against liability for monetary damages. It does not require or justify dismissal of a claim against a State requesting an injunction and prospective relief. More than a century ago, in *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court held that there is "federal jurisdiction over a suit against a state official when that suit seeks only prospective injunctive relief in order to 'end a continuing violation of federal law.'" *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996). See also *Green v. Mansour*, 474 U.S. 64, 68 (1985).

The Court of Appeals for the Fourth Circuit reaffirmed this well-established principle in *Lynn v. West*, 134 F.3d 582, 587-588 (4th Cir. 1998), and in its more recent decisions in *CSX Transportation, Inc. v. Board of Public Works of West Virginia*, 40 Fed. Appx. 800 (4th Cir. 2002); and *TFWS, Inc. v. Schaefer*, 242 F.3d 198, 204-205 (4th Cir.2001).

The Circuit Court's contention that the Eleventh Amendment bars Plaintiffs' claims against the Circuit Court for declaratory and injunctive relief is squarely refuted by well-established Supreme Court and Fourth Circuit precedents.

## II.

### THE *ROOKER-FELDMAN* DOCTRINE IS INAPPLICABLE BECAUSE THIS IS NOT A LAWSUIT THAT REPLACES OR "SIDETRACKS" POSSIBLE SUPREME COURT REVIEW

Both Defendants' motions contend that the Complaint should be dismissed under the oft-cited (but only occasionally applied) *Rooker-Feldman* federalism doctrine. The Defendants' argument (a) misstates and misunderstands the *Rooker-Feldman* doctrine as it has been recently applied in the Supreme Court and the Court of Appeals for the Fourth Circuit and (b) ignores the obvious differences between cases that are controlled by the *Rooker-Feldman* doctrine and those that are not.

Moreover, the Baltimore County Defendants are liable for the harm they inflicted on the Plaintiffs during the time before the Zolls filed their lawsuit. They obstructed and delayed issuance of the building permit for expanding the Chabad House. The validity of the Circuit Court's demolition order does not affect the Baltimore County Defendants' liability under RLUIPA and Section 1983 for their own unlawful conduct .

**A.** **Recent Supreme Court and Fourth Circuit Decisions Have Explained and Narrowed the *Rooker-Feldman* Doctrine.**

The Defendants' Memoranda rely overwhelmingly on legal precedents issued ***before*** the June 2016 decision of the Fourth Circuit in *Thana v. Board of License Commissioners for Charles County*, 827 F.3d 314 (4th Cir. 2016), in which a unanimous Court of Appeals announced a "narrow articulation" of the *Rooker-Feldman* doctrine based on the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). The Fourth Circuit held in 2016 that *Rooker-Feldman* does not apply to "an independent concurrent action that does not undermine the Supreme Court's appellate jurisdiction over state court judgments." 827 F.3d at 323. That limiting understanding of *Rooker-Feldman* was applied by the Fourth Circuit as recently as March 12, 2019, in *Stogsdill v. Azar*, 2019 WL 1131949 (4th Cir. 2019), and by Judge Grimm of this Court in *Adebusoye v. Prince George's County*, 2019 WL 1125922 (D. Md. March 12, 2019).

As currently understood by the Supreme Court and by the Fourth Circuit, *Rooker-Feldman* bars a federal court action only when "the process for appealing a state court judgment to the Supreme Court under 28 U.S.C. § 1257(a) has been sidetracked by an action filed in a district court *specifically* to review that state court judgment." *Thana*, 827 F.3d at 320 (emphasis

original). This lawsuit neither "sidetracks" appeal to the Supreme Court nor seeks **specific** review of the Circuit Court's judgment on the validity of the setback covenant.

In its *Thana* opinion the Fourth Circuit squarely rejected the rationale for invoking *Rooker-Feldman* that is argued in both Motions To Dismiss in this case. The Defendants assert that *Rooker-Feldman* requires dismissal of this Complaint because the issues presented for decision are "inextricably intertwined" with the rulings of the Circuit Court (Circuit Court Memorandum, pp. 13-15; Baltimore County Memorandum, pp. 10-13), or because success in this lawsuit will "undo" the state-court judgment (Circuit Court Memorandum, pp. 12-13; Baltimore County Memorandum, pp. 13-14). The Fourth Circuit rejected those contentions when it said in its *Thana* opinion that, notwithstanding *Rooker-Feldman*, a federal court may proceed with "a concurrent, independent action supported by original jurisdiction conferred by Congress on federal district courts, even though the complaint in the action includes claims and legal arguments similar to or the same as those made in the state proceedings . . . ." 827 F.3d at 321.

**B. <u>As Currently Understood, the *Rooker-Feldman* Doctrine Does Not Affect This Court's Jurisdiction.</u>**

The **only** instance when *Rooker-Feldman* may properly be invoked after the recent clarification of the *Rooker-Feldman* doctrine by the Supreme Court and the Fourth Circuit is if the federal lawsuit is an attempt to "sidetrack" review by the United States Supreme Court of the decision of the state court. If the federal-court action presents an issue or issues that could not be raised in a petition for review filed with the Supreme Court, those issues may be presented to a federal court in a "concurrent, independent action."

The RLUIPA issues presented in this case – including the validity of the Circuit Court orders that rested on findings that were part and parcel of RLUIPA violations – were not

presented to the Circuit Court judges or decided by them because FOL had no reason to expect either Circuit Court judge to invoke and rely on the tainted findings. (In fact, one critical set of those findings was not issued by the Baltimore County Court of Zoning Appeals until five months after the first Circuit Court decision.) This lawsuit is, therefore, not an attempt to "sidetrack" Supreme Court review and have a federal court decide legal or factual issues that could have been presented to the United States Supreme Court. The Motions To Dismiss are simply wrong in arguing that the *Rooker-Feldman* doctrine requires dismissal of the Complaint.

### III.

### FEDERAL ABSTENTION WOULD DELAY RELIEF, WOULD INCREASE PLAINTIFFS' HARM, AND IS NOT WARRANTED UNDER APPLICABLE SUPREME COURT STANDARDS

Both Defendants ask this Court to abstain from proceeding with this litigation under *Younger v. Harris*, 401 U.S. 37 (1971), and *Railroad Comm'n of Texas v. Pullman*, 312 U.S. 496 (1941), because the Circuit Court order that the building be demolished is currently on appeal to Maryland's Court of Special Appeals (Circuit Court Memorandum, pp. 15-19; Baltimore County Memorandum, pp. 33-34). This is not, however, an appropriate case to delay resolution of the Plaintiffs' RLUIPA and Section 1983 claims until the Maryland courts issue their final ruling.

The Supreme Court and the Court of Appeals for the Fourth Circuit have held that abstention under *Younger* or *Pullman* is appropriate only if an ongoing judicial proceeding "implicates important state interests" and "there is an adequate opportunity to present the federal claims in the state proceeding." *Middlesex County Ethics Comm'n v. Garden State Bar Ass'n*, 457 U.S. 423, 431-432 (1982); *Employers Resource Management Co. v. Shannon*, 65 F.3d 1126, 1134 (4th Cir. 1995). Neither of these necessary preconditions exists in this case.

The pending appeal in Maryland's Court of Special Appeals concerns the narrow legal issue of the Circuit Court's exercise of discretion in the particular facts of a setback-covenant dispute. Vindication of the Plaintiffs' rights under RLUIPA and the First Amendment should not await that fact-intensive ruling which is limited to this particular case and does not "implicate important state interests." Moreover, as we have previously noted, reversal of the Circuit Court's drastic injunction will not resolve the Plaintiffs' federal claims for monetary damages.

The only legal issue before the Maryland courts is whether the alleged violation of the setback covenant justifies a court order that the Chabad House be totally demolished. The Maryland courts will not determine whether federal rights have been violated and whether monetary damages should be awarded for violation of those rights. Hence there is no basis for abstention by the federal court.

## IV.

### PLAINTIFFS HAVE STANDING TO RECOVER DAMAGES AND TO USE THE EXPANDED BUILDING FOR RELIGIOUS EXERCISE BECAUSE THEY CONTEST THE CIRCUIT COURT DEMOLITION ORDER

The Baltimore County Defendants assert that the Plaintiffs lack Article III standing to pursue RLUIPA and Section 1983 relief because the alleged RLUIPA and Section 1983 violations have not caused them "injury in fact." This follows, they assert, from the assumption that the setback covenant in the 1950 deed would prevent use of the expanded building. (Baltimore County Memorandum, pp. 14-17).

This argument is a model of circuitous reasoning. Only if one presumes that the 1950 setback covenant and the court order that the building be demolished will ultimately be found valid and enforceable would the covenant prevent Plaintiffs' use of the building. The Plaintiffs' Complaint alleges that the Circuit Court decisions literally enforcing the covenant and

prescribing removal of the building are the product and culmination of a multi-year course of illegal conduct. The Plaintiffs contend that at the conclusion of this litigation, the court orders will be found illegal and invalid. Rather than being the result of legitimate "broad equitable discretion" (as the Baltimore County Defendants characterize it on page 15 of their Memorandum), the Circuit Court orders rested on baseless allegations and false "findings." The Plaintiffs surely have Article III standing to present proof of the unlawful conduct that has damaged them and to challenge in this Court the Circuit Court orders that resulted from the Defendants' violations of RLUIPA and of their federally protected civil rights.

At the heart of this lawsuit is not "the actions of an independent third party, who [i]s not a party to the lawsuit," as the Defendants declare. (Baltimore County Memorandum, p. 16). Both the Baltimore County Defendants and the Baltimore County Circuit Court *are* parties to this lawsuit. Even if the Baltimore County Defendants did not "order Plaintiffs to raze the Structure or participate in the Circuit Court litigation," they laid the foundation for the erroneous and improper court orders with their fabricated allegations and unjustified conclusions.

The principal precedent on which the Defendants rely for their unusual "standing" claim actually proves the contrary. District Judge Joyner noted in his opinion in *Adhi Parasakthi Charitable, Medical, Educational, and Cultural Society of North America v. Township of West Pikeland*, 721 F. Supp.2d 361, 384 (E.D. Pa. 2010), that the plaintiff asserting a RLUIPA claim *had not appealed* the conclusion that a covenant in the deed barred the requested construction. Only on this account did the court declare that standing was lacking and dismiss the claim because of the judgment enforcing a covenant.

In this case, by contrast, the Circuit Court decision is being appealed and is vigorously contested, both in the Maryland state-court system and in this federal court. Plaintiffs surely have standing to make these challenges.

V.

### THE INDIVIDUAL PLAINTIFFS HAVE CONSTITUTIONAL STANDING BECAUSE THEY ARE "PERSONS" INJURED BY THE RLUIPA VIOLATIONS

The Baltimore County Defendants argue that the Student Plaintiffs lack standing to claim rights under RLUIPA because they are not "claimants" who have "an ownership, leasehold, easement, servitude, or other property interest" in the Chabad House property that has been subjected to "land use regulation." (Baltimore County Memorandum, p. 25). Standing under RLUIPA is not limited, however, to "claimants." 42 U.S.C. § 2000cc-5(1) defines the word "claimant," but 42 U.S.C. § 2000cc-2(a) does not limit standing to institute a RLUIPA lawsuit to "claimants." It authorizes any "person" to "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." By permitting any "person" and not just a "claimant" to obtain a remedy for a RLUIPA violation, Section 2000cc-2(a) permits lawsuits by individuals or institutions that do not qualify as "claimants" but that are harmed by unlawful action taken against those who have a property interest harmed by a violation of RLUIPA.

42 U.S.C. § 2000cc-2(a) goes on to provide the standard that governs RLUIPA standing: "Standing to assert a claim or defense under this section shall be governed by the general rules of standing under Article III of the Constitution." This language provides ample basis to sustain the RLUIPA claims of the Student Plaintiffs. By the same token, "persons" other than "religious assemblies" have standing to enforce RLUIPA's equal terms, nondiscrimination, total exclusion,

15

and unreasonable limits provisions. The Baltimore County Defendants' contention that various Plaintiffs' claims should be dismissed for lack of standing is demonstrably wrong and should be denied.

## VI.

### THE DEFENDANTS' RLUIPA VIOLATIONS GENERATED, AND WERE NOT CANCELLED BY, THE COURT ORDERS

The Baltimore County Defendants try to whitewash their unlawful 2011-2017 manipulation of the County's land use regulations by placing all the blame for the Plaintiffs' harm on the Circuit Court's covenant-enforcement rulings. The Defendants contend that the harm suffered by Plaintiffs whose religious exercise was burdened is attributable exclusively to enforcement of a "private restrictive covenant" in litigation "between private parties." (Baltimore County Memorandum, pp. 18-19). On this basis the Defendants claim that all RLUIPA claims must be dismissed because the Plaintiffs were not harmed by Defendants' enforcement of any "land use regulation."

This argument ignores two central components of the Plaintiffs' Complaint. *First*, as we explain in the Introduction to this Reply (pp. 6-7, *supra*), the Complaint explicitly alleges that the Circuit Court orders were the result and culmination of the Baltimore County Defendants' multiple violations of RLUIPA. Had the Defendants not violated RLUIPA by (a) issuing false violation notices, (b) making warrantless claims of zoning infractions, (c) demanding adversary administrative hearings, and (d) falsely declaring that zoning laws had been violated, thereby imposing illegal burdens on the provision by FOL and the Rivkin Plaintiffs of religious service to Towson and Goucher students, the Circuit Court might well have (a) construed the covenant differently, (b) found it to be unenforceable,  (c) granted only damages for breach of the covenant, or (d) ordered that the building be moved. See p. 6, *supra,* for applicable Maryland

precedents. Hence there was a causal relationship between the RLUIPA violations and the Circuit Court orders.

*Second,* the Baltimore County RLUIPA violations between 2011 and 2017 caused substantial financial harm to the Plaintiffs, entirely apart from the Zolls' private litigation over the meaning and effect of the 1950 covenant. FOL and the Rivkin Plaintiffs are entitled to recover money damages against Baltimore County because of the unlawful conduct of the County's officials during that period. Those damages are owing to the Plaintiffs whether or not the setback covenant is ultimately sustained.

## VII.

## PLAINTIFFS' RLUIPA CLAIMS WILL BE PROVED FOLLOWING DISCOVERY

The Baltimore County Defendants seek dismissal of all the Plaintiffs' RLUIPA claims at this early juncture on the basis of factual assertions that will be disproved at a trial following discovery.

### A. The Substantial Burden That the Defendants Imposed, Not a "Self-Imposed Hardship," Obstructed the Plaintiffs' Religious Observance.

The Baltimore County Defendants claim that FOL and the Rivkin Plaintiffs "had actual knowledge" of the 1950 setback covenant when the property was first purchased in 2008. On this basis, they seek dismissal of the First Claim in the Complaint, alleging that the Plaintiffs do not meet the Fourth Circuit's standard articulated in *Andon, LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016), because they had no "reasonable expectation," when the property was purchased, of using the property for a Chabad House serving university campuses. (Baltimore County Memorandum, pp. 19-21). FOL and the Rivkin Plaintiffs deny any such actual knowledge. They would not have purchased the property if it could not be used by the Chabad

rabbi residing in the building to accommodate Towson and Goucher students in Jewish religious rituals. This expectation was frustrated and burdened by the Baltimore County Defendants' manipulation of zoning and landmarking regulations. This is a classic factual RLUIPA dispute that will be resolved at trial by a fact-finder. It is not a basis for dismissing the claim under Rule 12(b)(6).

**B.** **Discovery Will Establish That Baltimore County Officials Treated FOL's Request To Expand Its Residence Differently Than Similar Applications by Nonreligious Entities and Individuals.**

The Baltimore County Defendants also quarrel with the Second Claim in the Complaint because, they say, the Complaint does not specify any nonreligious entity that has been treated more favorably than FOL and the Rivkin Plaintiffs. Paragraph 70 of the Complaint alleges, on information and belief, that secular organizations and institutions were not subjected to the same conditions and burdens that the Baltimore County officials imposed on the Plaintiffs. It beggars belief that every family or every secular organization and institution in Baltimore County was subjected to repeated demands by the Baltimore County zoning officials that they proceed to hearings before Administrative Law Judges in order to receive building permits to enlarge their structures. Were nonreligious individuals and secular organizations and institutions charged with zoning violations because many guests attended meals in their buildings? Were their applications to expand their buildings contested and opposed during adversary hearings by Baltimore County zoning officials?

These are questions that will be answered in the discovery phase of this litigation. Suffice it to say, at this juncture, that it is reasonable to assume that most applications to enlarge

buildings are not burdened and opposed the way that enlargement of the Chabad House serving Jewish students at Towson and Goucher was burdened and opposed.

Nor, at this stage of the litigation, is there substance to the Defendants' claim that a nonreligious entity "would . . . have been ordered to tear down an offending building, after violating a restrictive covenant and refusing to comply with the court order requiring it to remove the building." (Baltimore County Memorandum, p. 22). Having made this assertion, the Baltimore County officials will be asked in discovery to identify a nonreligious entity whose "offending building" was "torn down" in comparable circumstances. The Defendant's assertion will have to be supported by facts revealed in discovery. It cannot be accepted on the Defendants' bare say-so in a Rule 12(b)(6) Motion To Dismiss.

C. **Notwithstanding "Everyone's Natural Inclination," Evidence Disclosed in Discovery Will Establish That Baltimore County Officials, Pressured by FOL's Neighbors, Did Discriminate Against the Plaintiffs Because of Their Religious Observance.**

Invoking the naïve proverb that everyone defers to religion, the Defendants assert that the Complaint fails to present any evidence that their conduct was based on religious animus. Without acknowledging that deliberate religious animus is, in fact, an essential element of a RLUIPA violation, we note again that the Complaint alleges, on information and belief, that the conditions imposed on FOL and the Rivkin Plaintiffs discriminated on the basis of religion and religious denomination. The Plaintiffs are entitled to pursue discovery on this allegation.

The only precedent cited by the Defendants in support of their Motion To Dismiss the Third Claim is *Bethel World Outreach Ministries v. Montgomery County Council*, 706 F.3d 548 (4th Cir. 2013). The Fourth Circuit's opinion notes, however, that that the Court's decision was rendered "[a]fter completion of discovery." 706 F.3d at 554. The record presented to the District

Court in *Bethel **after discovery*** may have inadequately established religious discrimination. That conclusion does not, however, support dismissal of a religious discrimination claim at the inception of litigation.

D. **Preventing Expansion of the Chabad House and Supporting the Demolition of the Expanded Structure Will Totally Exclude FOL's Religious Assembly and Its Religious Activity from the Towson Area.**

The Baltimore County Defendants contend that the Complaint's Fourth Claim must be dismissed because there are churches – *i.e.*, non-Jewish "religious assemblies" – in the Towson area. The evidence will show, however, that not only are there no comparable Chabad Houses in the Towson area serving Jewish students at Towson University and Goucher College, but that there is no Orthodox Jewish assembly or synagogue there. In *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 138 F. Supp. 3d 352, 442 (S.D.N.Y. 2015), District Judge Karas initially said that a claim under Subsection (3)(b)(A) of the land use provision of RLUIPA was valid if the effect of the defendants' conduct was "to completely exclude the rabbinical college from the Village." By the same token, excluding the Chabad House from the Towson area would violate the "total exclusion" prohibition of RLUIPA.

When he ruled in the Rabbinical College's favor after a 10-day bench trial, Judge Karas reconsidered his earlier holding and construed Subsection (3)(b)(A) (as the Seventh Circuit had construed it in *Vision Church v. Long Grove*, 468 F.3d 975, 990 (7th Cir. 2006)) as requiring proof that ***all*** religious assemblies are excluded. *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 280 F. Supp.3d 426, 486 (S.D.N.Y. 2017). We do not contend that the Defendants' conduct has excluded ***all*** religious assemblies – both Jewish and non-Jewish – from the Towson area, but the Fourth Claim rests on the premise that total exclusion from the Towson

area of the Jewish religious activities provided by and to the Plaintiffs violates Subsection (3)(b)(A) of the Land Use provision of RLUIPA. That claim should not be foreclosed at this early stage of the lawsuit.

### E. The Plaintiffs' Religious Activity Was Unreasonably Limited.

The Complaint's Fifth Claim is that the Defendants violated Subsection (b)(3)(B) by unreasonably limiting the religious activity of FOL, the Rivkin Plaintiffs, and the Student Plaintiffs. This was accomplished not merely by the threat – now challenged in Maryland's Court of Special Appeals – to demolish the existing structure, but also by the tactics employed between 2011 and 2017 to hinder and delay the building permit. These allegations will be proved at trial after full discovery.

**VIII.**

**PLAINTIFFS' SECTION 1983 CLAIMS ARE VALID BECAUSE THE DEFENDANTS DEPRIVED THE PLAINTIFFS OF THEIR CONSTITUTIONAL RIGHTS**

The Baltimore County Defendants seek dismissal of the Sixth, Seventh, and Eighth Claims on the grounds that "the County did not cause the harm about which Plaintiff now complains." (Baltimore County Memorandum, pp. 25-26). In fact, the harm alleged in Paragraphs 32-55 of the Complaint – the period before the Zolls' instituted their lawsuit – was caused by officials of Baltimore County. Moreover, the Circuit Court orders directing that the Chabad House be demolished (alleged in Paragraphs 56-67) were the culmination of the earlier misconduct of Baltimore County zoning officials. Consequently, a Baltimore County agency – the Circuit Court for Baltimore County – is also a Defendant in this case, even though it is immune from any monetary-damage award.

Paragraph 17 of the Complaint alleges that the Circuit Court is an agency of the State of Maryland under the definition of "government" provided by RLUIPA. It is also a government

agency that can be sued in federal court under Section 1983. The anti-injunction act, 28 U.S.C. § 2283, is not an impediment to this Section 1983 lawsuit. *Mitchum v. Foster*, 407 U.S. 225, 242-243 (1972).

The other grounds for dismissal of the Section 1983 claims asserted by the Baltimore County Defendants at pages 26-28 of their Memorandum are unsound because they proceed on the same circuitous reasoning as their general challenge to the RLUIPA claims. See pp. 11-13, *supra.* The validity of the Circuit Court demolition order is being challenged by FOL in the Maryland courts and will be challenged in this lawsuit. Nor can the Baltimore County Defendants escape liability for the conduct in which they engaged before the Zolls instituted a lawsuit to enforce the 1950 covenant. The demolition order in that lawsuit – currently on appeal – does not shield the Defendants from liability for their violation of the Plaintiffs' constitutional rights.

## IX.

### THE STATE-LAW DEFAMATION CLAIM SHOULD NOT BE DISMISSED BEFORE DISCOVERY

The Baltimore County Defendants request that the Complaint's Ninth Claim be dismissed under Rule 12(b)(6) and argue that there are multiple grounds for such dismissal. (Baltimore County Memorandum, pp. 29-33). The first two grounds they cite relate to the one-year limitations period prescribed for defamation claims and for claims against government employees. In denying a similar motion for a dismissal under Rule 12(b)(6) of a defamation claim made more than one year after the alleged slander, District Judge Williams of this Court said in *King v. Marriot International, Inc.* 195 F. Supp.2d 720, 728 (D. Md. 2002), that "[t]he question of accrual . . . is left to judicial determination." Judge Williams quoted the observation of the Maryland Court of Appeals in *Frederick Road Ltd. Partnership v. Brown & Sturm*, 360

Md. 76, 95, 756 A.2d 963, 973 (2000), that such determination "may be based solely on law, solely on fact, or on a combination of law and fact, and is reached after careful consideration of the purpose of the statute and the facts to which it is applied." See also the decision of Judge Grimm in *Tucker v. Specialized Loan Servicing*, 83 F. Supp.3d 635, 651-652 (D. Md. 2015).

When this Court makes its "judicial determination" of the "accrual" of Plaintiff Rivkin's defamation claim based on "a combination of law and fact," it will, we submit, uphold the timeliness of his defamation claim. Rabbi Rivkin could not have been expected to institute a defamation claim within one year of the defamatory statements of the Baltimore County officials. They were, during that one-year period, actively engaged in obstructing the religious observance he was conducting at Chabad House. They had seemingly discretionary governmental authority over Rabbi Rivkin's ability to carry out his religious duties. There was a real likelihood of retaliation by them against him and against the Chabad House if he had initiated a defamation lawsuit. Consequently, a "judicial determination" concerning the date of accrual of such a claim should await discovery and development of a factual record.

Similarly, a defense of privilege or alleged truth of what was said should be resolved only after the facts are discovered and the Court is able to resolve conflicts based on testimony and documents. These are not defenses that can be established before an answer has even been filed.

## CONCLUSION

The Motions To Dismiss should be denied.

Respectfully submitted,

Dated:  April 15, 2019

s/Nathan Lewin
Nathan Lewin, Esq. (D. Md. 03312)
LEWIN & LEWIN, LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000
nat@lewinlewin.com

David Felsen, Esq.
FELSEN & SARGENT, LLC
600 Jefferson Plaza, Suite 201
Rockville, MD 20852
(301) 251-4010
dfelsen@mdlawyers.com

*Attorneys for Plaintiffs*