**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **FRIENDS OF LUBAVITCH, INC.,** | ) | |
| *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Case No.: 1:18-cv-03943-GLR |
| | ) | |
| v. | ) | |
| | ) | |
| **BALTIMORE COUNTY,** | ) | |
| **MARYLAND**, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

<u>**REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO DISMISS**</u>

MICHAEL E. FIELD
COUNTY ATTORNEY

_____*/s/*_____
James J. Nolan, Jr. (Bar No. 01875)
Paul M. Mayhew (Bar No. 22210)
R. Brady Locher (Bar No. 29990)
Assistant County Attorneys
BALTIMORE COUNTY OFFICE OF LAW
400 Washington Avenue, Room 219
Baltimore, Maryland 21204
 (410) 887-4420
mefield@baltimorecounty.gov
jnolan@baltimorecounty.gov
pmayhew@baltimorecountymd.gov
blocher@baltimorecountymd.gov

- and –

_____/s/_____
Harry S. Johnson (Bar No. 00618)
Howard R. Feldman (Bar No. 05991)
Jennifer Ryan Lazenby (Bar No. 25886)
Aaron Casagrande (Bar No. 28518)
Ioana Kastellorizios (Bar No. 07213)
WHITEFORD, TAYLOR & PRESTON L.L.P.
Seven Saint Paul Street, Suite 1500
Baltimore, Maryland 21202
(410) 347-8700
hjohnson@wtplaw.com
hfeldman@wtplaw.com
jlazenby@wtplaw.com
acasagrande@wtplaw.com
ikastellorizios@wtplaw.com
*Attorneys for Defendants*
*Baltimore County, Maryland,*
*Baltimore County Department of Planning and*
*Baltimore County Board of Appeals*

*10075541.6/final*

TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  REPLY ARGUMENT .......................................................................................... 2

A.  The Court Should Dismiss Plaintiffs' Claims Under the *Rooker-Feldman* Doctrine............................................................................................................. 2

B.  The Court Should Dismiss Plaintiffs' Claims Because Plaintiffs Lack Standing. .................................................................................................... 7

C.  The Court Should Dismiss Plaintiffs' RLUIPA Claims (Counts I–V) Because They Fail to State Plausible Claims for Relief........................................................ 9

1.  Plaintiffs' RLUIPA claims fail because the alleged harm does not result from the County's imposition or implementation of a land use regulation. 9

2.  Additional arguments for dismissing the individual RLUIPA counts. ....12

a.  Substantial burden (Count I)…………………………………………12

b.  Equal terms (Count II)……………………………………………….13

c.  Nondiscrimination (Count III)……………………………………….15

d.  Total exclusion (Count IV)…………………………………………..16

e.  Unreasonable limits (Count V)………………………………………16

f.  Standing of individual Plaintiffs under RLUIPA……………………17

D.  The Court Should Dismiss Plaintiffs' Section 1983 Claims (Counts VI–VIII) Because They Fail to State Plausible Claims for Relief. ...................................... 17

E.  The Court Should Dismiss Plaintiffs' State Law Defamation Count (Count IX) Because It Fails to State a Plausible Claim for Relief. .......................................... 18

F.  The Court Should Abstain Under the *Younger* Doctrine. ..................................... 19

III.  CONCLUSION…………………………………………………………………..20

**CASES**                                                                **PAGES**

*Adebusoye v. Prince George's County*,
2019 U.S. Dist. LEXIS 39440 (D. Md. March 12, 2019) ……………………………………5–7

*Adhi Parasakthi Charitable, Medical, Educational & Cultural Society of N. Am.*
*v. West Pikeland*, 721 F. Supp. 2d 361 (E.D. Pa. 2010) ……………………………………8, 17

*Allstate Ins. Co. v. W. Va. State Bar*,
233 F.3d 813 (4th Cir. 2000) …………………………………………………………..7

*Andon, LLC v. City of Newport News*,
813 F.3d 510 (4th Cir. 2016) ………………………………………….……………10, 12–13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) …………………………………………….……………………14, 18

*Baiza v. City of College Park*,
994 A.2d 495 (Md. App. 2010) ………………………………………………..………..4

*Bethel v. Montgomery County*,
706 F.3d 548 (4th Cir. 2013) …………………………………………………....…..15–16

*Comite De Apoyo a Los Trabajadores v. Department of Labor*,
995 F.2d 510 (4th Cir. 1993) …………………………………………………………..7

*Couch v. Jabe*,
479 F. Supp. 2d 569 (W.D. Va. 2006) ……………………………….……………10

*Davani v. Va. DOT*,
434 F.3d 712 (4th Cir. 2006). ……………………………………………………….4

*Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*,
73 A.3d 224 (Md. 2013) …………………………………………………………..14

*Eisenstadt v. Barron*,
250 A.2d 85 (1969) ……………………………………………………………….4

*Exxon Mobil Corp. v. Saudi Basic Indus.*,
544 U.S. 280 (2005)…………………………………………….……………………4

*Ferdinand-Davenport v. Children's Guild*,
742 F. Supp. 2d 772 (D. Md. 2010) ……………………………………………………8

*Francis v. Giacomelli*,
    588 F.3d 186 (4th Cir. 2009) …………………………………………..…………..….....13–14

*Friends for Ferrell Parkway v. Stasko*,
    282 F.3d 315 (4th Cir. 2002) …………………………………………..…….…………….8

*Friends of Lubavitch, Inc. v. Zoll*,
    2018 Md. App. LEXIS 972 (October 23, 2018)…..……………………….…….…..….13

*Greiner v. Md. Dep't of Pub. Safety & Corr. Servs.*,
    2010 U.S. Dist. LEXIS 123442, (D. Md. Nov. 22, 2010) ………………………………14

*Harper v. PSC*,
    396 F.3d 348 (4th Cir. 2005)…………………………………………………..………20

*Hickey v. St. Martin's Press, Inc.*,
    978 F. Supp. 230 (D. Md. 1997)………………………………………………………18

*Incumaa v. Stirling*,
    791 F.3d 517 (4th Cir. 2015) ……………………………………………………………11

*Johnson v. United States*,
    861 F. Supp. 2d 629 (D. Md. 2012) …………………………………………………8

*Lamar v. Ebert*,
    681 F. App'x 279 (4th Cir. 2017) …………………………………………...……………...5

*Lane v. Anderson*,
    660 F. App'x 185 (4th Cir. 2016) ……………………………………………………...6

*Prince George's Cnty. v. Sunrise Dev. Ltd. P'ship*,
    623 A.2d 1296 (Md. 1993) ……………………………………………………….………4

*Rockville Cars, LLC v. City of Rockville, Maryland*,
    891 F.3d 141 (4th Cir. 2018) ……………………………………………………………....4

*Sprint Communications, Inc. v. Jacobs*,
    571 U.S. 69 (2013) ………………………………………………………………………20

*Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*,
    829 A.2d 540 (Md. 2003) …………………………………………………..………….3

*Stogsdill v. Azar*,
    2019 U.S. App. LEXIS 7233 (4th Cir. March 12, 2019) …………..…………………...……….5–6

*Tani v. Washington Post*,
    2009 U.S. Dist. LEXIS 132132 (D. Md. June 18, 2009) …………..………………………...18

*Thana v. Board of License Commissioners for Charles County*,
    827 F.3d 314 (4th Cir. 2016) …………………………………….…………………………....4

*Vision Church v. Long Grove*,
    468 F.3d 975 (7th Cir. 2006) ……………………………………….…………………...16

**STATUTES**

28 U.S.C. § 1658(a) ………………………………………………………………….....10

42 U.S.C. § 2000cc……………………………………………………………..……...9

Mᴅ. Cᴏᴅᴇ, Cts. & Jud. Proc. § 5-105…………….…………………………….……….18

Mᴅ. Cᴏᴅᴇ, Cᴛs. & Jᴜᴅ. Pʀᴏᴄ., § 5-304…….. …………………………………………18

BCZR § 1B01.1………………………………………………………….…………….1, 16

Defendants Baltimore County, Maryland, Baltimore County Department of Planning, and Baltimore County Board of Appeals (collectively, "Baltimore County" or the "County") submit this Reply Memorandum in further support of their Motion to Dismiss.

## I.    INTRODUCTION

Plaintiffs' Opposition (ECF 24) acknowledges that this lawsuit is a collateral attack on two decisions of the Circuit Court for Baltimore County.  In April 2017, the Circuit Court enjoined Plaintiff Friends of Lubavitch, Inc. ("FOL") from continuing to violate a restrictive setback covenant and ordered FOL to remove a structure (the "Structure") that FOL erected on its property on Aigburth Avenue in Towson (the "Property").  The Circuit Court gave FOL until March 2018 to comply.  The Circuit Court's April 2017 decision was affirmed by the Court of Special Appeals.  FOL did not comply and, in October 2018, the Circuit Court, as an equitable remedy to FOL's aggrieved neighbors, the Zolls, ordered FOL to raze the Structure.[1]

In this federal civil rights action, Plaintiffs challenge the Circuit Court decisions as "draconian," "erroneous and improper," and based on "false findings" by the Baltimore County Board of Appeals (the "Board") concerning FOL's use of the Property.[2]  Simply put, they ask this Court to "pass upon the merits" of the Circuit Court decisions in violation of the *Rooker-Feldman* doctrine.  Also, despite the fact that its April 2017 decision mirrors that of the Board,[3]

---

[1]  At page 6 of the Opposition, Plaintiffs misstate that the Circuit Court held that all of the FOL's neighbors lacked standing to enforce the restrictive setback covenant.   The actual holding was that the Zolls had standing but the neighborhood association did not.  ECF No. 15-4, at 20–21.

[2]  The Plaintiffs dismissed with prejudice their zoning petition pending before the Board of Appeals after just one day of testimony.

[3]  Although the Rabbi testified that the Structure was for the residential use of his family and not as a community center, the Board declared that the Structure (which was built after FOL's receipt of a building permit for a residential addition) had, through its use, "assumed the dual status of a residence and a community center." **Exhibit H**, September 5, 2017 Board of Appeals Opinion, at 17.  This was the Board's only involvement.  Moreover, FOL has never sought a special exception for a community building in its petition before the Board.  *See* BCZR § 1B01.1.A3, C.4 (permitting "buildings for religious worship or other religious institutions" as of right but permitting use as "community buildings" by special exception in the Property's zone).

the Circuit Court conducted its own fact-finding after a two day trial. Plaintiffs' attempt to relitigate the issue here is barred by collateral estoppel.

Regardless, Plaintiffs do not dispute that the Structure's placement on the Property violates the private setback covenant running with the land, as construed by the Circuit Court and affirmed by the Court of Special Appeals applying principles of Maryland (and not Baltimore County) law. Nor do Plaintiffs dispute that they failed to comply with the Circuit Court's October 31, 2018 Order, requiring the removal of the Structure no later than March 2018. To date, the Plaintiffs still have not complied with that Order and the Structure remains.

The Plaintiff's alleged harm is not the result of the County's imposition or implementation of a land use regulation. The Structure is unlawful pursuant to Maryland law. The Plaintiffs, therefore, have no legally protected interest in maintaining or receiving compensation for any loss of the unlawful Structure. In the same light, the County has not imposed a substantial burden on Plaintiffs' right of religious exercise, discriminated against them on the basis of their religion, treated religious assemblies less favorably than secular ones, totally excluded religious assemblies from the jurisdiction, unreasonably limited religious assemblies, violated Plaintiffs' constitutional rights, or defamed them. Thus, all of Plaintiffs' claims fail as a matter of law.

## II.    REPLY ARGUMENT

### A.    The Court Should Dismiss Plaintiffs' Claims Under the *Rooker-Feldman* Doctrine.

The *Rooker-Feldman* doctrine precludes federal jurisdiction here because Plaintiffs' Complaint makes plain that the purpose of their federal lawsuit is to undo the effects of two state court decisions that were rendered before the commencement of this lawsuit. *See* Mem. Supp. Mot. Dismiss (ECF 15-1), at 11–14. Plaintiffs' Opposition only emphasizes the propriety of

applying *Rooker-Feldman* to Plaintiffs' claims.  For example, Plaintiffs complain that the Circuit Court's decisions "literally" enforcing the setback covenant in the Property's deed and chain of title were "draconian" and "erroneous and improper."  Opposition, at 3, 14.[4]  They continue to argue—despite having fully litigated and lost on these very points in state court—that the "terms of the covenant are ambiguous" and that the state court should have: "(a) construed the covenant differently, (b) found it to be unenforceable, (c) granted only damages for breach of the covenant, or (d) ordered that the building be moved."  *Id.* at 6, 16.[5]  Plaintiffs have even opposed the Circuit Court's motion to dismiss it from this case.

Lest there be any doubt about the purpose of Plaintiffs' federal lawsuit, Plaintiffs, in their Opposition, candidly admit that they seek to challenge and overturn the Circuit Court's orders.  Opposition, at 14 ("The Plaintiffs contend that at the conclusion of this litigation, the [circuit] court orders will be found illegal and invalid."); 14 ("The Plaintiffs surely have Article III standing to . . . challenge in this Court the Circuit Court orders. . . ."); 22 ("The validity of the Circuit Court demolition order . . . will be challenged in this lawsuit.").  Thus, Plaintiffs'

---

[4]  Plaintiffs' repeated acknowledgements that the Circuit Court's decisions construed and specifically enforced the restrictive covenant "literally" (*see* Opposition, at 3, 6, 13) are concessions that the Circuit Court, indeed, construed and enforced it correctly.  *See Sy-Lene of Wash., Inc. v. Starwood Urban Retail II, LLC*, 829 A.2d 540, 546 (Md. 2003) (Maryland follows the law of objective contract interpretation and, when interpreting contracts, "the court will give effect to its plain, ordinary, and usual meaning, taking into account the context in which it is used").  Notwithstanding their repeated concession that the Circuit Court correctly, literally construed the restrictive covenant, without citation to authority, Plaintiffs seem to imply that contracts involving religious institutions should be subject to different rules of construction, preferential to such institutions.  *See* Opposition, at 6.  Besides inserting a level of undesired uncertainty into contracting parties' private agreements, such a rule would, of course, plainly violate the Establishment Clause.

[5]  Items (a) through (c) were conclusively resolved against Plaintiffs by the Circuit Court in its April 2017 Memorandum Opinion and Order, which the Court of Special Appeals affirmed.  *See* April 2017 Memorandum Opinion (ECF 15-4), at 11–12 (holding that the restrictive covenant is unambiguous and enforceable), 15–18 (finding that the Zolls' harm "is not merely pecuniary in nature"); Court of Special Appeals Opinion (ECF 15-5), at 35–42 (affirming Circuit Court's remedy).  Item (d) was conclusively resolved against Plaintiffs by the Circuit Court in its October 31, 2018 Memorandum Opinion and Order.  *See* October 2018 Circuit Court Memorandum (ECF 15-6), at 9–10 (rejecting FOL's request to move the Structure, instead of raze it).

assertion that their federal lawsuit does not seek "specific review" of a state court judgment (Opposition, at 11) rings hollow.[6]

Plaintiffs' Opposition does not address any of the several *Rooker-Feldman* cases cited by the County. Instead, Plaintiffs argue, essentially, that the Fourth Circuit's decision in *Thana v. Board of License Commissioners for Charles County*, 827 F.3d 314 (4th Cir. 2016) "announced a 'narrow articulation' of the *Rooker-Feldman* doctrine." Opposition, at 10. But Plaintiffs do not explain why their view of *Thana* precludes application of *Rooker-Feldman* here.[7] Nor can they, as *Thana* reiterates that the focus of the *Rooker-Feldman* inquiry is whether a lawsuit asks a federal district court "to exercise appellate jurisdiction over a state court judgment." 827 F.3d at 322; *see also id.* at 321 (explaining that an allegation of harm from the state court judgment itself is "fundamental to the controlling indicia articulated by the Supreme Court in *Exxon*").

Here, as noted above, Plaintiffs seek for this court to overturn the Circuit Court's Order – indeed, the Prayer for Relief in Plaintiffs' Complaint expressly asks this court to enjoin the Circuit Court's Orders and any further interference with their use of the Property. ECF No. 1, p.

---

[6] Plaintiffs' assertion that the County is also liable to them for damages due to the "delayed issuance of the building permit for expanding the Chabad House" ignores common sense. *See Eisenstadt v. Barron*, 250 A.2d 85, 90–91 (Md. 1969) (affirming an order to enjoin use of a water line constructed in violation of a restrictive covenant and recognizing that, under Maryland law, a landowner has no right to violate a restrictive covenant, especially where the landowner knows of the covenant prior to, or by way of, conveyance of the deed). Not surprisingly, Plaintiffs cite no authority for the proposition that delay in constructing that which is unlawful is a compensable loss. By way of analogy, just as Maryland's "vested rights rule" prohibits recovery of damages because a plaintiff has no cognizable property interest in earlier zoning, here the Plaintiffs have no right to violate the setback covenant—it is unlawful. *Cf. Rockville Cars, LLC v. City of Rockville, Maryland*, 891 F.3d 141, 147 (4th Cir. 2018) (citing *Prince George's Cnty. v. Sunrise Dev. Ltd. P'ship*, 623 A.2d 1296, 1301 (Md. 1993)); *Baiza v. City of College Park*, 994 A.2d 495, 502 (Md. App. 2010).

[7] Nothing in *Thana* suggests that the decision further narrows *Rooker-Feldman* beyond the Supreme Court's decision in *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280 (2005) or the Fourth Circuit's decision in *Davani v. Va. DOT*, 434 F.3d 712 (4th Cir. 2006). In fact, the "narrow articulation" referred to in *Thana* is the Supreme Court's decision in *Exxon Mobil Corp. See Thana*, 827 F.3d at 320.

20–21.  Plaintiffs' Opposition does not mince words, acknowledging: "the Circuit Court decision is being *appealed* and is *vigorously contested*, both in the Maryland state court system *and in this federal court*."  Opposition, at 15.  In short, Plaintiffs' federal lawsuit aims to achieve precisely what *Thana* explains the *Rooker-Feldman* doctrine prohibits.

Since *Thana*, the Fourth Circuit has reaffirmed that *Rooker-Feldman* prohibits federal court review of claims that are "inextricably intertwined" with a state court judgment:

> *Rooker-Feldman*'s jurisdictional bar "extends not only to constitutional claims presented to or adjudicated by the state courts but also to claims that are inextricably intertwined with a state court judgment."  If the *Rooker-Feldman* doctrine bars review, a federal court can consider neither "adjudications of the state's highest court" nor "decisions of its lower courts."  The "controlling question" under the *Rooker-Feldman* doctrine is "whether a party seeks the federal court to review a state court decision and thus pass upon the merits of that state court decision."

*Lamar v. Ebert*, 681 F. App'x 279, 287 (4th Cir. 2017) (citation omitted).  Thus, Plaintiffs' argument that the "RLUIPA issues presented in this case—including the validity of the Circuit Court orders that rested on findings that were part and parcel of the RLUIPA violations—were not presented to the Circuit Court judges or decided by them because FOL had no reason to expect either Circuit Court judge to invoke and rely on the tainted findings" (Opposition, at 11–12) is irrelevant and merely confirms that they are asking this Court to "pass upon the merits" of Circuit Court decisions which resolved litigation about a private contractual agreement to which the County was not a party.  And, as explained in the County's prior Memorandum, Plaintiffs cannot avoid the doctrine's jurisdictional bar by asserting herein claims not raised in the Circuit Court.  *See* Mem. Supp. Mot. Dismiss (ECF 15-1), at 13–14 (citing cases).

The post-*Thana* cases cited by Plaintiffs—*Stogsdill v. Azar*, 2019 U.S. App. LEXIS 7233 (4th Cir. March 12, 2019) and *Adebusoye v. Prince George's Cnty.*, 2019 U.S. Dist. LEXIS

39440 (D. Md. March 12, 2019)—only serve to illustrate why *Rooker-Feldman* applies here. In *Stogsdill*, the Fourth Circuit reversed the trial court's application of *Rooker-Feldman* to Plaintiffs' claims for two reasons: "the South Carolina state court judgment was handed down only *after* Stogsdill had commenced th[e] federal court litigation, so it is clear that he was not seeking redress from that decisions itself"; and the federal court action sought review of "state *administrative actions*," not a court order. *Stogsdill*, 2019 U.S. App. LEXIS 7233, at *14 (italics in original). In contrast, here, the assailed state court decisions were final before Plaintiffs filed their federal lawsuit—in fact, the April 2017 decision had already been affirmed by the Court of Special Appeals—and, as explained above Plaintiffs federal action expressly seeks redress from the final decisions themselves. Additionally, Plaintiffs ask this Court to pass upon the merits not of an administrative action, but rather decisions rendered by the Circuit Court based on its independent fact-finding and application of Maryland contract and equity principles. Throughout their Opposition, Plaintiffs concede they "challenge the Circuit Court orders" themselves (Opposition, at 14, 15, 22)—indeed, the Circuit Court itself is a defendant herein.

Similarly, *Adebusoye* is of no help to Plaintiffs because it makes plain that federal jurisdiction is prohibited where, as here, the party invoking jurisdiction seeks to "'challenge the state-court decision *itself*.'" 2019 U.S. Dist. LEXIS 39440, at *14 (italics in original) (quoting *Lane v. Anderson*, 660 F. App'x 185, 189 (4th Cir. 2016)). Plaintiffs here admittedly seek to "challenge the Circuit Court orders" themselves. Opposition, at 14, 15, 22.

*Adebusoye* affirms that *Rooker-Feldman* is intended to prevent "'state court losers [from] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced. . . .'" 2019 U.S. Dist. LEXIS 39440, at 13–14 (citing cases). It further reiterates that *Rooker-Feldman* "'denies [federal courts] jurisdiction over federal claims

that are inextricably intertwined with state court decisions'" and that a "'federal claim is inextricably intertwined with a state court judgment *if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.*'" *Id.* at *19 (italics in original) (quoting *Allstate Ins. Co. v. W. Va. State Bar*, 233 F.3d 813, 818–19 (4th Cir. 2000)).[8]  In this case, Plaintiffs, state-court losers, contend that the Circuit Court decisions were "draconian," "erroneous and improper," and "might" have been favorable to Plaintiffs but for alleged RLUIPA violations by the County.[9]  Opposition, at 3, 14, 16.  Thus, Plaintiffs' claims in this Court can succeed only insofar as this Court, as Plaintiffs would have it, determines that the Circuit Court erred in applying principles of Maryland contract law and in fashioning a remedy for Plaintiffs' breach of contract.  *Rooker-Feldman* prohibits what Plaintiffs' seek in this case.

Accordingly, the Court should dismiss Plaintiffs' claims under the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction.

**B.     The Court Should Dismiss Plaintiffs' Claims Because Plaintiffs Lack Standing.**

Plaintiffs ignore that the Zolls (not the County) possess a judgment in their favor, ordering FOL to raze the Structure which, since its construction has violated (and continues to violate) the setback covenant and for over a year has violated (and continues to violate) the Circuit Court's April 2017 Order, also rendered against FOL in favor of the Zolls, to remove it. Plaintiffs do not distinguish, criticize, or even mention *Comite De Apoyo a Los Trabajadores v.*

_____

[8]  Plaintiffs' reliance on *Adebusoye* is curious because, even though the court declined to dismiss the case based on *Rooker-Feldman*, it nevertheless applied collateral estoppel, thereby giving preclusive effect to fact issues resolved in the state court proceedings—namely, that the plaintiff, a correctional officer terminated by Prince George's County, had used excessive force, termination was an appropriate sanction, and the sanction had been imposed in a timely manner.  2019 U.S. Dist. LEXIS 39440, at *20–26.  Here, Plaintiffs' claims, *inter alia,* are predicated on their continued assertions that they did not know about the setback covenant and that the Structure is residential in nature only—assertions rejected by the Circuit Court based on its own findings of fact, which findings Plaintiffs cannot relitigate here.

[9]  Notably, because the Circuit Court judges cannot be compelled to testify, the proposition is one Plaintiffs, in any event, could never prove.

*Department of Labor*, 995 F.2d 510 (4th Cir. 1993), which precludes standing where, as here, the persons who would be most affected by the requested relief are not even parties to the case. Plaintiffs do not respond to the County's argument that they lack standing to challenge, in a case in which the Zolls are not parties, a judgment in favor of the Zolls. An argument not addressed is an argument conceded. *See*, *e.g.*, *Johnson v. United States*, 861 F. Supp. 2d 629, 634 (D. Md. 2012) ("Because the [plaintiffs] . . . failed to address the issue in any way in opposing summary judgment, they abandoned this argument."); *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010) (granting motion to dismiss as to theory of relief that the plaintiff did not address in her opposition, noting that "[b]y her failure to respond to this argument, the plaintiff abandons any discriminatory discharge claim").

Even if Plaintiffs limit their claims against the County to money damages (which they have not), they still lack standing. Plaintiffs have not alleged (and cannot allege) a cognizable "injury in fact," as violating a restrictive setback covenant (and court order enforcing the covenant) is not a legally protected interest. Plaintiffs' loss of the unlawful Structure is not a compensable "injury in fact." *Friends for Ferrell Parkway v. Stasko*, 282 F.3d 315, 320 (4th Cir. 2002) (the injury in fact element requires that the plaintiff "'suffer an invasion of a legally protected interest which is concrete and particularized.'"); *see also Adhi Parasakthi Charitable, Medical, Educational & Cultural Society of N. Am. v. West Pikeland*, 721 F. Supp. 2d 361, 382–84 (E.D. Pa. 2010) (holding that plaintiff lacked standing to pursue RLUIPA claims where a restrictive covenant prohibited it's desired use). Moreover, the County was not even involved in the Circuit Court case that generated the decisions about which Plaintiffs complain here.

Accordingly, the Court should dismiss Plaintiffs' claims for lack of standing.

**C.  The Court Should Dismiss Plaintiffs' RLUIPA Claims (Counts I–V) Because They Fail to State Plausible Claims for Relief.**

*1.  Plaintiffs' RLUIPA claims fail because the alleged harm does not result from the County's imposition or implementation of a land use regulation.*

Plaintiffs do not dispute that, as to each RLUIPA claim they assert, the statute requires them to show that the harm they allege results from the government's imposition or implementation of a land use regulation.  42 U.S.C. § 2000cc.  Here, in adjudicating the Zolls' breach of contract and specific performance claims, and in fashioning a remedy, the Circuit Court applied Maryland law of contracts—not any Baltimore County law or regulation.

Nonetheless, still claiming they were ignorant about the existence of the restrictive covenant,[10] boiled-down, Plaintiffs now argue that the various administrative proceedings initiated by Plaintiffs and their neighbors delayed the issuance of a building permit,[11] thereby depriving Plaintiffs of the opportunity to construct an illegal structure before their neighbors realized that the restrictive covenant existed.  Opposition, at 4–6, 10.  This stated desire to get the Structure built before the Zolls might realize that their contract rights were breached reinforces the correctness of the Circuit Court's finding that FOL acted with unclean hands.  October 2018 Circuit Court Memorandum (ECF 15-6), at 9.   In any event, Plaintiffs offer no authority for such a theory of liability; nor do they point to any allegations of fact to support it.  Moreover, they

---

[10]  Another finding of fact that is subject to the application of collateral estoppel is the Circuit Court's conclusion that Plaintiffs "had actual notice of the Setback Covenant in 2008," before the Property was purchased.  April 2017 Memorandum Opinion (ECF 15-4), at 11.  Notwithstanding that adverse finding of fact, Plaintiffs still blindly maintain that "FOL and the Rivkin Plaintiffs deny [they had] actual knowledge" about the restrictive covenant when the Property was purchased.  Opposition, at 17.

[11]  As acknowledged by the Board in its September 5, 2017 Opinion, there was no delay in the issuance of the building permit – FOL filed for and received a building permit for the Structure immediately after the Administrative Law Judge ("ALJ") entered the order permitting the construction of the residential addition, while the appeal of the Order to the Board was pending, and FOL immediately began construction despite the ALJ's warning that the property would be required to be returned to its original condition if his order was reversed on appeal.  **Exhibit H**, at 4 n. 3.

never had a right to build the Structure in violation of the restrictive setback covenant or maintain it in violation of the Circuit Court order directing them to remove it.

Plaintiffs also argue that their circumstances are the result of the County's "manipulation" of land use regulations from 2011–2017 Opposition, at 16[12] and, ultimately, the Board's "false finding," on "baseless allegations," that Plaintiffs were using the Property as both a residence for the Rivkin Plaintiffs and a community building—the latter requiring a special exception under the County's zoning regulations, which Plaintiffs have never requested. *Id.* at 7, 14, 16; *see also id.* at 2. Plaintiffs do not dispute that the applicable zoning regulations require special exception approval for a community building; rather they maintain that the Structure's use is residential in nature only. But for the County's actions, Plaintiffs' argument proceeds, the Circuit Court litigation against the Zolls "might" have ended differently. Opposition, at 16. Plaintiffs' wholly speculative argument does not save their RLUIPA claims.

*First*, Plaintiffs' supposition that the Circuit Court outcomes "might" have been different is not a cognizable basis for a claim; causation is required. *See Andon, LLC v. City of Newport News*, 813 F.3d 510, 514, 516 (4th Cir. 2016) (holding RLUIPA plaintiff must show that "imposition of a regulation regarding land use, or application of such a regulation, *caused* a hardship that substantially affected the plaintiff's right of religious exercise") (italics added);

---

[12] Plaintiffs' Opposition does not explain how, in their view, the County "manipulated" the zoning regulations, but they baldly contend that the so-called "false findings" of the Board "were generated by the RLUIPA violations of the Baltimore County zoning officials." Opposition, at 7. Plaintiffs' Opposition also does not express how exactly they contend County "zoning officials" violated RLUIPA. To the extent Plaintiffs are referring to events that occurred before December 20, 2014, their claims would be barred by RLUIPA's four-year statute of limitations. *Couch v. Jabe*, 479 F. Supp. 2d 569, 576–77 (W.D. Va. 2006) (applying 28 U.S.C. § 1658(a) catch-all statute of limitations to RLUIPA claims). If Plaintiffs are referring to citations issued to FOL, the citations were never enforced. October 2018 Circuit Court Memorandum (ECF 15-6), at 4; *see also id.* at 6 (noting that FOL's neighbors "'called upon County administrative resources in every reasonable way but without any ultimate success.'"). To the extent they are referring to the allegedly defamatory statements identified in Plaintiffs' Complaint, the statements are privileged, and thus not a basis for liability, for the reasons set forth in the County's Motion to Dismiss. *See* Mem. Supp. Mot. Dismiss (ECF 15-1), at 30–31. Plaintiffs' Opposition ignores the County's privilege argument.

*Incumaa v. Stirling*, 791 F.3d 517, 535 (4th Cir. 2015), *as amended* (July 7, 2015) (holding RLUIPA plaintiff "failed to show that his religious beliefs, rather than his choice to participate in a riot, are the proximate cause of his continued solitary confinement"). Plaintiffs ignore that the Circuit Court relied on *its own* findings of fact as to FOL's use of the Structure, made both at trial and following the September 5, 2018 post-trial evidentiary hearing. October 2018 Circuit Court Memorandum (ECF 15-6), at 7–10 (noting also that the trial judge reached conclusions that mirrored those reached by the Board of Appeals).

*Second*, Plaintiffs' bare assertion that the Board made a "false" finding on "baseless allegations" does not make it so, no matter how many times Plaintiffs repeat it. *See* Opposition, at 7, 14, 16. The Circuit Court, after conducting its own evidentiary hearing, expressly found: "[I]t is clear that the use of the [Property] as a Chabad House has expanded far beyond what can fairly be characterized as residential use." October 2018 Circuit Court Memorandum (ECF 15-6), at 8. The Circuit Court found credible Mrs. Zoll's testimony about Plaintiffs' use of the Property. *Id*. For the reasons explained in the County's Motion to Dismiss, collateral estoppel precludes Plaintiffs from disputing and relitigating here the Circuit Court's findings of fact. *See* Mem. Supp. Mot. Dismiss, at 32–33. Plaintiffs' Opposition does not address the County's collateral estoppel argument and, thus, effectively concedes on it. Thus, the Board's findings, in an unrelated administrative proceeding, that mirror the Circuit Court's finding are, as a matter of adjudicated fact, not "false."

Moreover, Plaintiffs' Opposition acknowledges that the Property's use is not residential in nature only, but rather institutional. Specifically, they claim FOL purchased the Property "for the purpose of teaching and furthering Jewish religious observance by Jewish students" and "immediately designated" it as a "Chabad House" (Opposition, at 2); they refer to the Structure,

not as a home, but as a "religious-mission building" (*id.* at 4); they sought to enlarge the Structure, not to accommodate the Rivkin family, but "to accommodate the increasing number of students who were benefiting from the Chabad House's religious service" (*id.)*; and they claim that the effect of the perceived RLUIPA violations is "to banish a religious institution." *Id.*[13]

*Third*, Plaintiffs' argument ignores—in fact, their Opposition does not even mention— their role in causing the circumstances about which they now complain. The Circuit Court ordered Plaintiffs to raze the Structure because Plaintiffs—not the County, not the Circuit Court, not the Zolls—knowingly constructed the Structure in violation of the setback covenant, and then they ignored the April 2017 order to remove the violation. This Court should not reward Plaintiffs for violating another court's lawful order "literally" (Opposition, at 3, 6, 13)—*i.e.*, correctly—enforcing the setback covenant.

Accordingly, all of Plaintiffs' RLUIPA claims (Counts I–V) fail as a matter of law.

        2.    *Additional arguments for dismissing the individual RLUIPA counts.*

        a.    <u>Substantial burden (Count I)</u>

Plaintiffs' Opposition misconstrues the County's substantial burden argument under *Andon,* 813 F.3d 510, by focusing on one piece of the argument: Plaintiffs' actual knowledge of the setback covenant in the Property's chain of title. Plaintiffs continue to "deny any such actual knowledge" and argue that FOL "would not have purchased the property if it could not be used by the Chabad rabbi residing in the building to accommodate Towson and Goucher students in religious rituals." Opposition, at 17. *First*, as a threshold matter, collateral estoppel precludes Plaintiffs from relitigating whether they lacked actual knowledge of the setback covenant. The Circuit Court found in April 2017 (and the Court of Special Appeals affirmed) that FOL "had

---

[13] Plaintiffs' accusation that the County made "false findings" about the Property's use as a community building is especially absurd because FOL, in order to obtain property tax exemption, represented to State taxing authorities, under penalty of perjury, that the Property is used, not as a residence, but as a "Jewish student center and Rabbi's parsonage." *See* **Exhibit I,** at 2.

actual knowledge of the setback covenant in 2008" and made "no innocent mistakes."  April 2017 Memorandum Opinion (ECF 15-4), at 11, 16.

*Second*, Plaintiffs' actual knowledge of the setback covenant before and during construction of the Structure is only one of the several reasons why Plaintiffs' alleged burden is self-imposed and, thus, not actionable under RLUIPA.  FOL also "chose to proceed with construction," despite knowing about the setback covenant, *id.* at 19, and knowing all the while that the specific relief sought by its litigation adversaries, the Zolls, was that the Structure "be torn down."[14]  Appellant's Reply Br. (April 23, 2018); *Friends of Lubavitch, Inc. v. Zoll*, 2018 Md. App. LEXIS 972 (October 23, 2018) at *1.  FOL also failed to comply with the Circuit Court's April 2017 order enjoining it from continuing to violate the covenant and to remove the Structure by March 1, 2018 (giving it nearly a year to comply),

Plaintiffs' current predicament is entirely self-imposed.   Based upon the Fourth Circuit's decision in *Andon,* which affirmed the dismissal of a RLUIPA substantial burden claim, Plaintiffs' substantial burden claim also must fail as a matter of law.

b.      Equal terms (Count II)

The best Plaintiffs offer in argument against dismissal of their RLUIPA equal terms claim is that "discovery will establish that" the County "treated FOL's request to expand its residence differently than similar applications by nonreligous entities and individuals."[15]  Opposition, at 18.  But discovery exists to uncover evidence that might support a properly pleaded cause of action; Plaintiffs do not get discovery to determine whether they even have a cause of action to begin with.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("[E]ven

---

[14]  As a matter of fact, the Circuit Court found that only excavation for the Structure had begun when the Zolls commenced litigation in that court.  April 2017 Memorandum Opinion (ECF 15-4), at 18.  Thus, FOL could have stopped construction but instead chose to complete the building at its own risk.

[15]  Plaintiffs' use of the pronoun "its" to describe "its residence" underscores that the Structure is an institutional building.  FOL, a religious entity, does not require a "residence."

though Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.") (quotation marks and ellipses omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)); *accord Greiner v. Md. Dep't of Pub. Safety & Corr. Servs.*, 2010 U.S. Dist. LEXIS 123442, *6–7 (D. Md. Nov. 22, 2010). Rather, to avoid dismissal, a plaintiff must *plead* "factual content" that, if true, shows the defendant is liable for the wrong alleged. *Iqbal*, 556 U.S. at 678. Here, Plaintiffs' Complaint does not plead "factual content"—and their Opposition does not raise any—suggesting that the County treats religious assemblies less favorably than comparable secular institutions. In fact, in the Property's zone, "buildings for religious worship" are permitted by right and "community buildings" (secular or religious) are permitted by special exception. *See* note 3, *supra*. Plaintiffs, however, have insisted the Structure is residential in nature only.

Additionally, Plaintiffs do not point to any allegations of fact disputing the County's argument that they have not alleged a plausible reason to believe a similarly situated nonreligious entity would not have been ordered by the Circuit Court to tear down a building that violates a private setback covenant and prior court order to cease violating the covenant; rather, they simply posit that the County's argument lacks "substance." Opposition, at 19. Plaintiffs' position ignores that *they* have the burden to plead and prove their allegations of unequal treatment.[16] That said, Maryland Courts have precluded at least one secular entity from constructing a residential development because of a restrictive covenant. *See Dumbarton Improvement Ass'n v. Druid Ridge Cemetery Co.*, 73 A.3d 224, 242 (Md. 2013).

---

[16] In stating their intention to ask Baltimore County officials "to identify a nonreligious entity whose 'offending building' was 'torn down' in comparable circumstances" (Opposition, at 19), Plaintiffs appear to forget that Baltimore County officials did not order their building to be razed; rather, it was ordered by the Circuit Court judges who adjudicated the Zolls' breach of contract and specific performance claims.

Accordingly, FOL's RLUIPA equal terms claim fails as a matter of law.

c.    Nondiscrimination (Count III)

Plaintiffs' argument against dismissal of their RLUIPA nondiscrimination claim also resolves to the proposition that they "are entitled to pursue discovery on this allegation." Opposition, at 19.  Thus, their argument is unavailing for the same reason as their argument against dismissal of their equal terms claim.

Additionally, Plaintiffs' effort to distinguish *Bethel v. Montgomery Cnty.,* 706 F.3d 548 (4th Cir. 2013) (which held that a plaintiff on a RLUIPA nondiscrimination claim must show that it was discriminated against *because of* religion), on the basis that *Bethel* was decided at the summary judgment stage (Opposition, at 19–20), ignores that the legal principles stated in *Bethel* are no less applicable here simply because this case is at the motion to dismiss stage.  While Plaintiffs need not point to evidence supporting their allegation of religiously-motivated discrimination, they must point to allegations of fact which, if proven true, show that the County discriminated against Plaintiffs because FOL is a religious organization.  *See Bethel*, 706 F.3d at 559–60 ("Bethel [] has failed to put forth any evidence that the County took those measures because Bethel and Dearwood are religious organizations").  Indeed, the only "factual content" set forth by Plaintiffs' Complaint on the discrimination issue—Plaintiffs' self-serving, conclusory allegations do not count—comes from the Circuit Court's October 31, 2018 Memorandum Opinion, which Plaintiffs submitted with their Complaint.  In its opinion, the Circuit Court quoted from the Board of Appeals, which noted "'everyone's natural inclination to defer to religious organizations'" and that FOL's neighbors, "'[l]ike most people of goodwill, . . . tolerated [FOL's] activities until it was announced that [FOL] was going to expand the size of the structure . . . .'"  October 2018 Circuit Court Memorandum (ECF 15-6), at 6–7.

Accordingly, FOL's RLUIPA nondiscrimination claim fails as a matter of law.

d.    Total exclusion (Count IV)

Plaintiffs' argument against dismissing their RLUIPA total exclusion claim ignores that the County does not exclude religious assemblies at all; it expressly allows them.  *Vision Church v. Long Grove*, 468 F.3d 975 (7th Cir. 2006), which Plaintiffs' Opposition does not address, is instructive.  There, the Seventh Circuit held that, "by permitting churches in all residential districts as a special use," the defendant did "not completely or totally exclude[] religious assemblies from its jurisdiction."  *Vision Church*, 468 F.3d at 990.  Here, in the Property's zone, "buildings for religious worship or other religious institutions" are permitted by right, and "community buildings" (religious or secular) actually are permitted by special exception.  BCZR § 1B01.1.A.3, C.4.[17]  Accordingly, FOL's RLUIPA total exclusion claim fails as a matter of law.

e.    Unreasonable limits (Count V)

Similarly, Plaintiffs' argument against dismissal of the RLUIPA unreasonable limits claim cites no authority and points to no allegations of fact showing that in Baltimore County "religious organizations are left without a reasonable opportunity to build elsewhere" in Baltimore County.  *See Bethel*, 706 F.3d at 560.  Instead, they complain of "the threat . . . to demolish" the Structure and "the tactics employed between 2011 and 2017 to hinder and delay the building permit."  Plaintiffs' argument is irrelevant to the RLUIPA unreasonable limits analysis.  Furthermore, the County never threatened to demolish the Structure[18] and, even crediting Plaintiffs' allegation of delay, Plaintiffs still built (and still maintain) the Structure unlawfully, in violation of the setback covenant.  Not surprisingly, Plaintiffs cite no authority for the proposition that delay in constructing that which is unlawful is a compensable loss.

---

[17]  Plaintiffs appear to characterize the County's argument as advocating for dismissal of the RLUIPA total exclusion claim "because there are churches—*i.e.*, non-Jewish 'religious assemblies'—in the Towson area."  Opposition, at 20.  The County makes no such argument.
[18]  *See* note 3, *supra*.

Further, Plaintiffs ignore that an unreasonable limits claim cannot be asserted based on enforcement of a restrictive covenant upon an individual landowner. *Adhi, supra,* 721 F. Supp. 2d at 387. Accordingly, FOL's unreasonable limits claim fails as a matter of law.

f.     Standing of individual Plaintiffs under RLUIPA

Plaintiffs' argument against dismissal of individual Plaintiffs' RLUIPA claims ignores the plain statutory text. Not surprisingly, Plaintiffs cite to no case law in support of their readings of RLIUPA's provisions. Accordingly, all RLUIPA counts (Counts I through V) should be dismissed as to Plaintiffs Avigail London, Uri London, Margaret Kay, Danielle Gold, Jessica Teich, Ilan Pluznik, Abby Adelman, and Jessica Rudin because they do not have a property interest in the Property, as is plainly required by the statute. And the equal terms, nondiscrimination, total exclusion, and unreasonable limits counts (Counts II through V) must be dismissed as to those same individual Plaintiffs, plus Plaintiffs Rabbi Menachem Rivkin and Sheina Rivkin, because they are not religious assemblies, again, as required by the statute.

**D.     The Court Should Dismiss Plaintiffs' Section 1983 Claims (Counts VI–VIII) Because They Fail to State Plausible Claims for Relief.**

Plaintiffs' Opposition commits less than a page to trying to preserve their Section 1983 claims. Except for their mistaken characterization of the Circuit Court as a "Baltimore County agency," Plaintiffs' Section 1983 argument does not materially distinguish their Section 1983 claims from their RLUIPA claims. Accordingly, for the reasons set forth above and in the County's Motion to Dismiss, Plaintiffs' Section 1983 claims fail as a matter of law.

**E.    The Court Should Dismiss Plaintiffs' State Law Defamation Count (Count IX) Because It Fails to State a Plausible Claim for Relief.**

Plaintiffs'[19] demand for compensatory damages from the County rests on a state law defamation claim, over which they request this Court to exercise supplemental jurisdiction. Compl. ¶¶ 68, 85.  Plaintiffs complain that they "could not have been expected to institute a defamation claim within one year of the defamatory statements" because of the "likelihood of retaliation."  Opposition, at 23.  Thus, they maintain, their defamation count should not be dismissed for limitations.  Their argument fails for several reasons.

*First*, Plaintiffs cite no authority supporting their argument that the Maryland one-year limitations period may be tolled (or otherwise prevented from accruing) based on a prospective plaintiff's belief that, in response to the filing of a lawsuit, the prospective defendant might somehow retaliate against it.[20]  *Second*, Plaintiffs' Complaint does not allege "factual content," *see Iqbal*, 556 U.S. at 678, supporting their allegation of "a real likelihood of retaliation." Indeed, the Complaint does not mention it even in conclusory terms.  *Third*, even if Plaintiffs' concern, however unfounded, prevented accrual of their defamation claim (and it does not), the claim is still time-barred under the Local Government Tort Claims Act's notice provision, which requires notice of the claim to the local government, in the manner set forth in the statute, within one year "after the *injury*," regardless of when the cause of action accrues.  MD. CODE, CTS. & JUD. PROC., § 5-304(b)(1).

---

[19]  Only FOL and Rabbi Rivkin assert the defamation claim.

[20]  In making this argument, Plaintiffs impliedly acknowledge that they were aware of the alleged defamation within the limitations period.  In Maryland, defamation actions have a one year statute of limitations, MD. CODE, CTS. & JUD. PROC. § 5-105, which begins to run "when the plaintiff knew or reasonably should have known that the defendant committed a wrongful act which injured or damaged the plaintiff."  *Hickey v. St. Martin's Press, Inc*., 978 F. Supp. 230, 235 (D. Md. 1997)(citation omitted).  In this case, Plaintiffs reasonably should have known of the allegedly defamatory statements when they were published. *See Tani v. Washington Post*, 2009 U.S. Dist. LEXIS 132132, at *6–7 (D. Md. June18, 2009).

Plaintiffs also maintain that they need discovery to respond to the County's arguments that the alleged defamatory statements are privileged and true. As explained above, Plaintiffs are not entitled to discovery to see whether they have a cause of action. Moreover, Plaintiffs do not explain how, in their view, discovery would bear on the County's arguments. The best they offer is that discovery will allow the Court "to resolve conflicts based on witness testimony and documents," but this ignores the grounds supporting the County's arguments—there is nothing for the Court to resolve, which is precisely why the Court should dismiss the defamation claim. The statements are privileged and, thus, not actionable (regardless of their truth) because they were made in the context of quasi-judicial proceedings. In any event, the statements are true as a matter of adjudicated fact because the Circuit Court, after conducting its own evidentiary hearing, found that: "[I]t is clear that the use of the [Property] as a Chabad House has expanded far beyond what can fairly be characterized as residential use." October 2018 Circuit Court Memorandum (ECF 15-6), at 8. No amount of discovery will change the Circuit Court's findings of fact adverse to Plaintiff or its analysis and application of Maryland contract law to the claims asserted by the Zolls in state court. Further, Plaintiffs do not respond directly to the County's privilege or collateral estoppel arguments.[21]

### F.      The Court Should Abstain Under the *Younger* Doctrine.

The Court should dismiss Plaintiffs' Complaint in its entirety. But in the alternative, *Younger* abstention is warranted. Plaintiffs' argument against *Younger* abstention ignores recent controlling Supreme Court precedent and rests on an oversimplified understanding of the state interests at stake. Essentially, Plaintiffs argue that abstention is inappropriate here because the "pending appeal in Maryland's Court of Special Appeals concerns the narrow legal issue of the

---

[21] Plaintiffs' Opposition ignores the County's independent argument that the statements about which they complain, as a matter of law, are not defamatory.

Circuit Court's exercise of discretion in the particular facts of a setback-covenant dispute." Opposition, at 13. But Plaintiffs ignore what matters under *Younger*: the Circuit Court issued its October 2018 order to enforce its April 2017 order, with which Plaintiffs failed to comply. As the Supreme Court observed in *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013), *Younger* abstention prevents what Plaintiffs seek here: federal judicial interference with "a State's interest in enforcing the orders and judgments of its courts." And, as the Fourth Circuit observed in *Harper v. PSC*, 396 F.3d 348, 352 (4th Cir. 2005), "enforcing state court judgments cuts to the state's ability to operate its own judicial system, a vital interest for *Younger* purposes." Plaintiffs' Opposition does not address *Jacobs* or *Harper*.[22]

## V.  CONCLUSION

For the reasons set forth above and in the County's Memorandum of Law in Support of its Motion to Dismiss, the Court should dismiss Plaintiffs' Complaint.

MICHAEL E. FIELD
COUNTY ATTORNEY

| _/s/_____ | _/s/_____ |
|---|---|
| James J. Nolan, Jr. (Bar No. 01875) | Harry S. Johnson (Bar No. 00618) |
| Paul M. Mayhew (Bar No. 22210) | Howard R. Feldman (Bar No. 05991) |
| R. Brady Locher (Bar No. 29990) | Jennifer Ryan Lazenby (Bar No. 25886) |
| Assistant County Attorneys | Aaron Casagrande (Bar No. 28518) |
| BALTIMORE COUNTY OFFICE OF LAW | Ioana Kastellorizios (Bar No. 07213) |
| 400 Washington Avenue, Room 219 | WHITEFORD, TAYLOR & PRESTON L.L.P. |
| Baltimore, Maryland 21204 | Seven Saint Paul Street, Suite 1500 |
| (410) 887-4420 | Baltimore, Maryland 21202 |
| mefield@baltimorecounty.gov | (410) 347-8700 |
| jnolan@baltimorecounty.gov | hjohnson@wtplaw.com |
| pmayhew@baltimorecountymd.gov | hfeldman@wtplaw.com |
| blocher@baltimorecountymd.gov | jlazenby@wtplaw.com |
| | acasagrande@wtplaw.com |
| *Attorneys for Defendants* | ikastellorizios@wtplaw.com |
| *Baltimore County, Maryland,* | |
| *Baltimore County Department of Planning* | |
| *and Baltimore County Board of Appeals* | |

---

[22] Plaintiffs' Opposition also does not address the County's additional argument that abstention is necessary here because the Circuit Court assumed *in rem* jurisdiction over the Property when it put the Property in the hands of a receiver. *See* Mem. Supp. Mot. Dismiss, at 34.

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that on this 29th day of May, 2019, the foregoing Reply

Memorandum in Further Support of Defendants' Motion to Dismiss and Exhibits were served

via the Court's CM/ECF system, in accordance with the Federal Rules of Civil Procedure and the

Local Rules of the United States District Court for the District of Maryland, to all counsel of

record and that a paper copy of each was sent via currier to the Court in accordance with Section

III.C.2. of the Electronic Case Filing Policies and Procedures Manual.


                                       _____/s/_____
                                       Howard R. Feldman