IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRIENDS OF LUBAVITCH, et al.,    *

    Plaintiffs,    *

v.    *   Civil Action No. GLR-18-3943

BALTIMORE COUNTY,    *
MARYLAND, et al.,
    *

    Defendants.

\*\*\*\*\*

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendants Baltimore County, Maryland, Baltimore County Department of Planning ("Department of Planning"), and Baltimore County Board of Appeals's (the "Board of Appeals") (collectively, the "County") Motion to Dismiss (ECF No. 15) and Defendant Circuit Court for Baltimore County's (the "Circuit Court") Motion to Dismiss (ECF No. 20). The Motions are ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the following reasons, the Court will grant the Motions.

## I.    BACKGROUND[1]

Plaintiff Friends of Lubavitch, Inc. ("FoL") is a religious corporation that was formed to support the global Orthodox Jewish Chabad-Lubavitch movement in Maryland

---

[1] Unless otherwise noted, the Court takes the following facts from Plaintiffs Friends of Lubavitch, Inc., Rabbi Menachem Rivkin, Sheina Rivkin, Avigail London, Uri London, Margaret Kay, Danielle Gold, Jessica Teich, Ilan Pluznik, Abby Adelman, and Jessica Rudin's Complaint (ECF No. 1), and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007)).

and which has helped establish Chabad centers, a rabbinical school, and a primary school. (Compl. ¶¶ 3, 23, ECF No. 1). Plaintiffs Rabbi Menachem Rivkin ("Rabbi Rivkin") and Sheina Rivkin (collectively, the "Rivkins") have administered one of those centers, the Towson Chabad House (the "Chabad House"), which has served Orthodox Jewish students or alumni of the nearby Towson University and Goucher College in Baltimore County, Maryland, including the eight other Individual Plaintiffs.[2] (Id. ¶¶ 4–13, 19). There are more than fifty such Chabad Houses in the United States, many of which serve as residences to their rabbis or schluchim, and many are zoned as residences or the local equivalent. (Id. ¶ 24).

In September 2008, FoL purchased the property at 14 Aigburth Road in Towson, Maryland (the "Property"), on which sat a 2,200-square-foot residence, intending to use it as a Chabad House, which would "provide Jewish religious hospitality and education" to local college students and residents. (Id. ¶¶ 18, 21). FoL picked the Property because it is approximately 1.7 miles from Goucher College and 700 feet from Towson University; Orthodox Jews cannot travel by automobile on the Sabbath, and the nearest Orthodox Jewish synagogue is 7.1 miles from the Property. (Id. ¶ 19). Beginning in 2008, the Rivkins posted a sign identifying the Property as the Chabad House and hosted students for kosher meals, prayer, and Jewish holidays. (Id. ¶¶ 25, 27). Within a few years, the popularity of the Chabad House increased such that FoL and the Rivkins decided to expand the building on the Property. (Id. ¶ 29).

---

[2] See infra n.1.

In December 2011, Rabbi Rivkin met with several Baltimore County officials about the contemplated expansion (the "Expansion") of the Chabad House. (Id. ¶ 31). They told him to consult with his neighbors, which he did. (Id.). In or about May 2014, FoL and Rabbi Rivkin obtained financing for the Expansion. (Id. ¶ 32). Thereafter, Rabbi Rivkin consulted with Baltimore County's Director of Permits, Approvals, and Inspections Arnold Jablon, who told Rabbi Rivkin that he would grant a building permit for the Expansion if the Chabad House qualified under local zoning laws as a synagogue. (Id.). Even though FoL and the Rivkins did not intend to build a synagogue, in anticipation of the issuance of a building permit, FoL and the Rivkins held a public ground-breaking in June 2014. (Id. ¶¶ 34–35).

At some point thereafter, neighbors and other Towson residents opposed the Expansion, which would at least triple the building square footage on the Property. (Id. ¶ 36; Defs.' Mot. Dismiss Ex. C ["Court of Special Appeals Opinion"] at 1, 8, ECF No. 15-5). When Rabbi Rivkin sought to meet with Jablon in October 2014, Jablon refused. (Id. ¶ 37). In an effort to address neighbors' concerns, Rabbi Rivkin offered to reduce the height of the proposed Expansion and to make the front of the building appear more "residential." (Id. ¶ 38). Rabbi Rivkin made no formal request that the building on the Property qualify as a synagogue. (Id.).

On January 29, 2015, the County issued a "Code Enforcement Correction Notice" (the "Notice") against the Chabad House, alleging that: (1) it was "an illegal House of Worship/ Religious Institution" that did not meet "the [residential transit area] requirements, the parking requirements and the Non Residential Principle Setback

requirements" of the Baltimore County Zoning Regulations ("BCZR"); and (2) it was "a Community Building" that failed to have a "Special Exception Hearing." (Id. ¶ 39). Under the BCZR, "buildings for religious worship or other religious institutions" are permitted as a matter of right, whereas "community buildings" are only permitted by "special exception." BCZR §§ 1B01.1.A.3, C.4 (2019). The Notice was converted into a citation (the "Citation") on March 2, 2015. (Compl. ¶ 39). Jablon told Rabbi Rivkin and his attorney that they should request a hearing under BCZR § 500.7, which they then did. (Id. ¶ 42). Specifically, FoL petitioned for a special hearing "to confirm continued use of the subject property as a residential parsonage with an accessory use for religious worship and religious education." (Court of Special Appeals Opinion at 6).[3] Administrative Law Judge John Beverungen ("ALJ Beverungen") presided over the hearing on June 19 and 25, 2015. (Compl. ¶ 42). At the hearing, Department of Planning Director Andrea Van Arsdale recommended the denial of FoL's petition because "it was operating a 'community building,' which would require a special exception." (Id. ¶ 43). On June 26, 2015, ALJ Beverungen ruled the Chabad House was not "a residential parsonage" because it was not attached to a house of worship and denied FoL's Petition. (Id. ¶ 45).[4] On August 10, 2015, ALJ Beverungen denied Rabbi Rivkin's motion for reconsideration, noting that he had "no

_____

[3] In its September 5, 2017 Opinion regarding Case No. 16-308-SPH, the Board of Appeals of Baltimore County characterized the FoL's first petition for a hearing, 15-223-SPH, as seeking "permission to construct the parsonage," an approximately 7,000-square-foot structure. Friends of Lubavitch, Inc., No. 16-308-SPH (B.A.Balt.Cty filed Sept. 5, 2017)). (Reply Mem. Supp. Mot. Dismiss ["Cty. Reply"] Ex. H ["Board of Appeals Decision"] at 2, ECF No. 30-1).

[4] According to the Board of Appeals Decision, ALJ Beverungen's decision was published on June 25, 2015. (Board of Appeals Decision at 2).

authority to insist that the Code Enforcement Bureau rescind a citation or correction notice issued by one of its inspectors." (Id.). FoL did not appeal. (Defs.' Reply Ex. H ("Board of Appeals Decision") at 2, ECF No. 30-1).

On August 20, 2015, Rabbi Rivkin, through a letter from his attorney, asked the County "what specific objection(s) the County has to Rabbi and Mrs. Rivkin's submitting their building plans for review, comment and approval" so they could proceed with the Expansion. (Compl. ¶ 46). Jablon told Rabbi Rivkin that he would not permit the Expansion unless Rabbi Rivkin submitted another petition for a Section 500.7 hearing, which Rabbi Rivkin then did on behalf of FoL.[5] (Id. ¶ 47). "The neighbors began filing complaints with County Code Enforcement. Citations were issued but went nowhere." Board of Appeals Decision at 3. The neighbors then filed their own petition, 16-308-SPH. Id. On March 31, 2016, ALJ Beverungen presided over a second hearing regarding the petitions, where Jablon and Van Arsdale opposed FoL's second petition because the Expansion would not "be solely for 'additional living space for the family who resides therein'" because the Rivkins also hosted meals for local Orthodox Jews at the Chabad House. (Compl. ¶ 49). Nevertheless, on April 6, 2016, ALJ Beverungen dismissed the neighbors' petition as premature and approved Rabbi Rivkin's application for the Expansion. (Id. ¶ 51; Court of Special Appeals Opinion at 7–8; Board of Appeals Decision at 4).[6] On April 19, 2016,

---

[5] In its September 5, 2017 Opinion, the Board of Appeals characterized the FoL's second petition, 16-170-SPH, as containing the same construction plans but now designated as "home expansion plans." (Board of Appeals Decision at 2).

[6] In its September 5, 2017 Opinion, the Board of Appeals states the ALJ Beverungen noted that residential additions are permitted by right and that any use by FoL that exceeded residential use could be addressed via citations and zoning the FoL's second petition as

Rabbi Rivkin received a building permit for the Expansion, a 6,600-square-foot structure, and construction began on June 6, 2016. (Compl. ¶ 52; Court of Special Appeals Opinion at 8, 10).

On July 27, 2016, Rabbi Rivkin learned from a neighbor that a covenant (the "Covenant"), created in 1950 by the Property's deed, provided that its dwelling "shall have a setback equal to one-half of the total setbacks of the two houses erected on the lots adjoining to the East and West thereof, measured to the centre of said houses, exclusive of porches." (Compl. ¶ 53). Because halting construction and revising the plan for the Expansion would be very expensive, "construction continued pursuant to the building permit." (Id. ¶ 54).

On August 12, 2016, Robin Zoll, the Rivkins' next-door neighbor who had informed them of the Covenant, and the Aigburth Manor Association of Towson, Inc. ("the Neighbor Plaintiffs") sued FoL in the Circuit Court for Baltimore County to enforce the Covenant with respect to the Expansion. (Id. ¶ 56); see Zoll v. Friends of Lubavitch, Inc., No. 03-C-16-008420 (Cir.Ct.Balt.Cty. filed Aug. 12, 2016), http://casesearch.courts.state.md.us/casesearch/. On March 30 and 31, 2017, Circuit Court Judge Susan Souder presided over a bench trial regarding the Zoll lawsuit. (Compl. ¶ 57). Souder heard testimony regarding the community objection to the Expansion beginning in 2012 when it was first proposed, as well as about the Covenant. (Id. ¶ 58). On April 7,

---

containing the same construction plans but now designated as "home expansion plans." Board of Appeals Decision at 2, 4.

6

2017, Judge Souder ruled that the Covenant applied and ordered the "removal" of the Expansion insofar as it violated the Covenant. (Id.). FoL appealed. (See Id. ¶ 61).

Meanwhile, on October 27, 2016, the Board of Appeals began a de novo hearing on FoL's second petition (16-170-SPH) and the neighbors' petition (16-308-SPH). (Board of Appeals Decision at 4–5). The hearing was scheduled to continue on January 12, 2017, and on January 11, 2017, FoL dismissed its petition, and its counsel withdrew. (Id. at 5). Rabbi Rivkin did not appear to testify again, instead delivering a letter to the Board of Appeals in February 2017 that threatened a claim under the Religious Land and Institutionalized Persons Act ("RLUIPA"). (Id. at 6). On September 5, 2017, the Board of Appeals ruled 2-1 in favor of the neighbors regarding their petition. (Id. at 7). They credited the neighbors testimony over Rabbi Rivkin's and noted that the building on the Property was now close to 9,000 square feet with a dining room that could seat more than 120 people. (Id. at 6–9). Noting it only had the power to make a declaration, not issue an injunction, the Board of Appeals declared that the Chabad House's use of the Property "has exceeded the use compatible with that of a residential property" and that it "has assumed the dual status of a residence and a community center by consistently hosting events advertised to hundreds of people and attended by scores, and by acting as an outreach center to college students." (Compl. ¶ 59; Board of Appeals Decision at 16–17). The dissenting opinion called the zoning status of the Chabad House a "vexing question" and would have denied the petition and let the County Department of Permits, Approvals and Inspections determine on a case-by-case basis whether the Property's use violates the BCZR. (Board of Appeals Decision at 19–20).

On October 23, 2017, the Court of Special Appeals of Maryland affirmed the Circuit Court's order and, based in part on the "Zoning Hearings," held that there was "no abuse in discretion by the trial court fashioning an injunction akin to specific performance." (Compl. ¶ 61). Judge Souder had appointed a Receiver, Debra Dopkin, to administer compliance with the Circuit Court's ordered injunctive relief. (Id. ¶ 62). The Receiver recommended removal of the Property's original home and the relocation of the Expansion such that it would satisfy the Covenant, a course of action that would cost approximately $250,000.00. (Id.). On October 31, 2018, Judge Kathleen Cox of the Circuit Court rejected the Receiver's recommendation and ordered the Expansion "razed." (Id. ¶ 63). Judge Cox concluded that, because "FOL has been using the property without obtaining necessary approvals or complying with regulations," Rabbi Rivkin had "unclean hands," and that accepting the Receiver's recommendation would "tacitly endorse that which has been repeatedly found to be a violation of existing restrictions in the residential community." (Id.). On December 12, 2018, FoL and the Rivkins moved to stay Judge Cox's order. (Id. ¶ 65). On January 10, 2019, the Circuit Court granted FoL and the Rivkin's motion for stay, which the Neighbor Plaintiffs appealed on February 11, 2019. (Def. Cir. Ct. Balt. Cty.'s Mot. Dismiss ["Cty. Mot."] Ex. 2 ["State Court Docket"] at 17–18, ECF No. 20-2).

On December 20, 2018, Plaintiffs sued the County and the Circuit Court. (ECF No. 1). In their nine-count Complaint, Plaintiffs assert that: Defendants substantially burdened their religious exercise in violation of RLUIPA, 42 U.S.C. § 2000cc(a)(1) (2018) (Count I); Defendants imposed standards and conditions that treat religious institutions on less than equal terms with nonreligious institutions in violation of RLUIPA, § 2000cc(b)(1)

(Count II); Defendants' implementation of the County land use regulations discriminates against Plaintiffs on the basis of their religion in violation of RLUIPA, § 2000cc(b)(2) (Count III); Defendants' implementation of the County land use regulations will totally exclude the Plaintiffs' religious activity from Baltimore County in violation of RLUIPA, § 2000cc(b)(3)(A) (Count IV); Defendants' implementation of the County land use regulations unreasonably limits the Plaintiffs' religious activity in violation of RLUIPA, § 2000cc(b)(3)(B) (Count V); Defendants' implementation of the County land use regulations violates the Free Exercise Clause of the First Amendment to the U.S. Constitution (Count VI); Defendants' implementation of the County land use regulations violates the Equal Protection Clause of the Fourteenth Amendment (Count VII); Defendants' arbitrary implementation of the County land use regulations violates the Due Process Clause of the Fourteenth Amendment (Count VIII); and that the County, through its employees, defamed FoL and Rabbi Rivkin (Count IX). (Compl. ¶¶ 18–90). Plaintiffs bring their three constitutional claims (Counts VI–VIII) under 42 U.S.C. § 1983 (2018). (Compl. at 18–19). Plaintiffs seek declaratory and injunctive relief, as well as monetary damages and their attorney's fees and costs. (Id. at 20–21).

On February 28, 2019, the County filed its Motion to Dismiss, (ECF No. 15), as did

the Circuit Court, (ECF No. 20). On April 15, 2019, Plaintiffs filed a combined Opposition

to both Motions. (ECF No. 24). On May 29, 2019, the County filed a Reply. (ECF No. 30).

On June 27, 2019, the Circuit Court filed a Reply. (ECF No. 31).[7]

---

[7] On July 1, 2019, Plaintiffs filed a Motion for Leave to File Surreply. (ECF No. 32). The County filed an Opposition on July 5, 2019, (ECF No. 33), and the Circuit Court filed an Opposition on July 9, 2019, (ECF No. 34). To date, the Court has no record that Plaintiffs filed a Reply.

Plaintiffs argue that the Circuit Court made a new argument in its Opposition and that Defendants would suffer no prejudice if the Court allowed Plaintiffs to file a Surreply. The County counters that surreplies are not permitted except by permission of the Court and that this Court has only permitted surreplies when an opposing party raises a new argument in its reply, which they have not done here. The Circuit Court adds that it merely responded to the argument in Plaintiffs' Opposition and that Plaintiffs could have anticipated such a response, making their Motion improper. The Court agrees with Defendants.

"Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed." Local Rule 105.2(a) (D.Md. 2018). A party seeking to file a surreply must demonstrate the need for a surreply. Aguilar v. LR Coin Laudromat, Inc., No. CIV.A. RDB-11-02352, 2012 WL 1569552, at *3 (D.Md. May 2, 2012) (citing Stoyanov v. Mabus, No. 07–1764, 2009 WL 4664518, at *8 (D.Md. Dec. 9, 2009). "Surreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." CapitalSource Fin. LLC v. B & B Contractors, Inc., No. CIV.A. DKC 2004-3739, 2005 WL 1025953, at *2 (D.Md. Apr. 28, 2005) (citing Khoury v. Meserve, 268 F.Supp.2d 600, 605 (D.Md. 2003)). They are not permitted when Defendant "merely responded to arguments addressed by Plaintiff[s] in [their] opposition." Id.

Here, Defendants did not raise any new arguments in their Replies that would justify Plaintiffs' request to file a Surreply. Specifically, the Circuit Court argues in its Motion that the Eleventh Amendment bars Plaintiffs' claims against it in federal court, to which Plaintiffs respond by citing the Ex parte Young exception in their Opposition. In its Reply, the Circuit Court argues Ex parte Young does not apply here. The Circuit Court's arguments in its Reply are not new. The Court therefore sees no grounds for allowing the Plaintiffs leave to file a Surreply. See id. Plaintiffs do not make a specific argument about the County's Reply, other than that the County will suffer no prejudice if the Court allows Plaintiffs to submit another brief. Prejudice is not the standard; plaintiffs must show the need to file a surreply, and they have not done so. Aguilar, 2012 WL 1569552, at *3.

As a result, the Court will deny Plaintiffs' Motion.

## II.    DISCUSSION

**A.    Circuit Court Motion to Dismiss**

**1.    Standard of Review**

"The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to "test[ ] the sufficiency of a complaint," not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of America, N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom. Goss v. Bank of America, NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual

allegations in the light most favorable to the plaintiff. <u>Albright v. Oliver</u>, 510 U.S. 266, 268 (1994); <u>Lambeth v. Bd. of Comm'rs</u>, 407 F.3d 266, 268 (4th Cir. 2005) (citing <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, <u>United Black Firefighters v. Hirst</u>, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions couched as factual allegations, <u>Iqbal</u>, 556 U.S. at 678.

### 2. Analysis

The Circuit Court argues that the Eleventh Amendment bars the Plaintiffs' claims against it. Plaintiffs counter that their claims for prospective injunctive relief may proceed under the Supreme Court's holding in <u>Ex parte Young</u>, 209 U.S. 123 (1908). The Court agrees with the Circuit Court.

The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State." U.S. Const. amend. XI. Notwithstanding the Eleventh Amendment's explicit mention of only "Citizens of another State," the U.S. Supreme Court has construed the Eleventh Amendment as also protecting states from federal court suits brought by the state's own citizens. <u>Id.</u>; <u>Lee-Thomas v. Prince George's Cty. Pub. Sch.</u>, 666 F.3d 244, 248 (4th Cir. 2012) (quoting <u>Port Auth. Trans-Hudson Corp. v. Feeney</u>, 495 U.S. 299, 304 (1990)). Thus, the Eleventh Amendment bars actions by any private citizen against a state. <u>See</u> <u>Project Life, Inc. v. Glendening</u>, 139 F.Supp.2d 703, 706–07 (D.Md. 2001) (quoting <u>Bd. of Trustees of the Univ. of Ala. v. Garrett</u>, 531 U.S. 356, 363 (2001)). Additionally,

"states' immunity extends to 'state agents and state instrumentalities.'" <u>Lee-Thomas</u>, 666 F.3d at 248 (quoting <u>Regents of the Univ. of Cal. v. Doe</u>, 519 U.S. 425, 429 (1997)). Maryland state courts, like the Circuit Court, are arms of the State, therefore, are immune from suit in federal court. <u>See</u> <u>Coleman v. Court of Appeals of Maryland</u>, 566 U.S. 30, 35 (2012) (affirming on the grounds the lower court, which ruled that Maryland Court of Appeals is an entity or instrumentality of the State for purposes of sovereign immunity); <u>Alexander v. Dist. Ct. of Md. for Charles Cty.</u>, 2008 WL 6124449, at *7 (D.Md. Mar. 20, 2008).

Although states retain immunity from suit, this constitutional bar is not absolute and is subject to three exceptions, only one of which is relevant here. <u>Lee-Thomas</u>, 666 F.3d at 248–49 (citing <u>Feeney</u>, 495 U.S. at 304). As interpreted by the Supreme Court in <u>Ex Parte Young</u>, the Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law." <u>Id.</u> at 248 (quoting <u>Frew ex rel. Frew v. Hawkins</u>, 540 U.S. 431, 437 (2004)).

Here, Plaintiffs seek prospective injunctive relief against the Circuit Court. Under the <u>Ex Parte Young</u> exception, private citizens can bring such suits against "<u>state officials</u> acting in violation of federal law." <u>Lee-Thomas</u>, 666 F.3d at 248 (quoting <u>Frew ex rel. Frew v. Hawkins</u>, 540 U.S. 431, 437 (2004) (emphasis added). The Circuit Court is not a state official; it is an institutional arm of the state. <u>Alexander</u>, 2008 WL 6124449, at *7. As a result, the <u>Ex Parte Young</u> exception does not apply to Plaintiffs' suit against the Circuit Court, and it is, therefore, barred by the Eleventh Amendment. Accordingly, the Court will grant the Circuit Court's Motion and dismiss the Complaint as to the Circuit Court.

**B.** **County Motion to Dismiss**

Defendants argue that the Court should dismiss Plaintiffs' claims under the Rooker-Feldman doctrine, because Plaintiffs lack standing, and because they fail to state a claim. Plaintiffs counter that their claims do not fall within the narrow confines of Rooker-Feldman, that they have standing to sue the County, and that they have pleaded all of their claims sufficiently. The Court will address these arguments in turn, as they apply to Plaintiffs' claims.

**1.** **Rule 12(b)(1) Standard of Review**

Defendants bring their Motion under Rule 12(b)(6), but Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction, the basis for Defendants' first two arguments. See CGM, LLC v. BellSouth Telecomms., Inc., 664 F.3d 46, 52 (4th Cir. 2011); Akers v. Md. State Educ. Ass'n, 376 F.Supp.3d 563, 569 (D.Md. 2019). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "challenges a court's authority to hear the matter brought by a complaint." Akers, 376 F.Supp.3d at 569. Under Rule 12(b)(1), "the plaintiff bears the burden of proving, by a preponderance of the evidence, the existence of subject matter jurisdiction." Id. (first citing Demetres v. E. W. Const., Inc., 776 F.3d 271, 272 (4th Cir. 2015); then citing Lovern v. Edwards, 190 F.3d 648, 654 (4th Cir. 1999)).

Defendants challenging a complaint under Rule 12(b)(1) may advance a "facial challenge, asserting that the allegations in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" Hasley v. Ward Mfg., LLC, No. RDB-13-1607, 2014 WL

3368050, at *1 (D.Md. July 8, 2014) (alteration in original) (quoting <u>Kerns v. United States</u>, 585 F.3d 187, 192 (4th Cir. 2009)); <u>see also</u> <u>Wikimedia Found. v. NSA</u>, 857 F.3d 193, 208 (4th Cir. 2017) (quoting <u>Beck v. McDonald</u>, 848 F.3d 262, 270 (4th Cir. 2017)).

When, as here, the defendants raise a facial challenge, the Court affords the plaintiffs "the same procedural protection" they would receive on a Rule 12(b)(6) motion to dismiss. <u>Wikimedia Found.</u>, 857 F.3d at 208 (quoting <u>Adams v. Bain</u>, 697 F.2d 1213, 1219 (4th Cir. 1982)). As such, the Court takes the facts alleged in the complaint as true and denies the motion if the complaint alleges sufficient facts to invoke subject matter jurisdiction. <u>See id.</u> With a factual challenge, the plaintiffs bear the burden of proving the facts supporting subject matter jurisdiction by a preponderance of the evidence. <u>U.S. ex rel. Vuyyuru v. Jadhav</u>, 555 F.3d 337, 347 (4th Cir. 2009). In determining whether the plaintiffs have met this burden, the Court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." <u>Richmond, Fredericksburg & Potomac R.R. Co. v. United States</u>, 945 F.2d 765, 768 (4th Cir. 1991) (citing <u>Adams</u>, 697 F.2d at 1219). Nevertheless, the Court applies "the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." <u>Id.</u> (citing <u>Trentacosta v. Frontier Pac. Aircraft Indus., Inc.</u>, 813 F.2d 1553, 1559 (9th Cir. 1987)). The movants "should prevail only if the material jurisdictional facts are not in dispute and the [movants are] entitled to prevail as a matter of law." <u>Id.</u> (citing <u>Trentacosta</u>, 813 F.2d at 1558). Unlike under the summary judgment

standard, however, the Court is permitted to decide disputed issues of fact, <u>Kerns</u>, 585 F.3d at 192, and weigh the evidence, <u>Adams</u>, 697 F.2d at 1219.

### 2. Analysis

#### a. **Rooker-Feldman** Doctrine

The <u>Rooker-Feldman</u> doctrine prohibits federal district courts from exercising appellate jurisdiction over state court judgments. <u>Thana v. Bd. of License Comm'rs</u>, 827 F.3d 314, 318–19 (4th Cir. 2016) (citing <u>Lance v. Dennis</u>, 546 U.S. 459, 463 (2006) (per curiam); <u>see</u> <u>Rooker v. Fidelity Tr. Co.</u>, 263 U.S. 413, 414–16 (1923) (affirming district court's dismissal, for lack of subject-matter jurisdiction, of a federal suit by a party who lost at the Indiana Supreme Court and failed to obtain review by U.S. Supreme Court); <u>D.C. Court of Appeals v. Feldman</u>, 460 U.S. 462, 482–83 (1983) (holding plaintiffs could sue to challenge constitutionality of bar admission rule but not challenge the state court's judgment denying their waiver petitions). Since then, the Supreme Court and the U.S. Court of Appeals for the Fourth Circuit have construed the doctrine narrowly, to compel dismissal only of federal suits that explicitly challenge a state court judgment. In <u>Thana</u>, the Fourth Circuit held that the doctrine did not apply to plaintiffs who had "commenced an independent, concurrent action challenging actions by a state administrative agency," and had not requested the federal court to "conduct appellate review of the state court judgment itself." 827 F.3d at 316 (citing <u>See</u> <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 284 (2005).

Here, Plaintiffs reference their ongoing challenge of the Circuit Court for Baltimore County's order to raze the Expansion and, at times, suggest they are challenging the Circuit

Court's judgment itself in this case. But Plaintiffs also make RLUIPA and constitutional claims against the County that do not seek to appeal the Circuit Court judgment. The Court concludes these are the kinds of "independent, concurrent" claims that Rooker-Feldman does not cover. Id. Further, the Court has already concluded the Circuit Court is immune from this suit. As a result, the Court declines to dismiss Plaintiffs' claims against the County on this basis.

### b. Standing

County Defendants argue Plaintiffs lack standing because they have not suffered an injury-in-fact, fairly traceable to the County, that a verdict in Plaintiffs' favor would redress. Plaintiffs counter that the years they spent meeting with the County and participating in hearings was sufficient injury-in-fact and that those injuries are traceable to the County and redressable with monetary damages. The Court agrees with Plaintiffs.

Standing's "irreducible constitutional minimum" comprises three prongs. Spokeo, 136 S.Ct. at 1547 (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Id. Lujan, 504 U.S. 560–61). The party invoking federal jurisdiction bears the burden of establishing standing. Id. (citing FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990)). At the pleading stage, plausible factual allegations, which the Court accepts as true, may suffice to establish each element of standing. Id.; Beck, 848 F.3d at 270 (quoting Lujan, 504 U.S. at 561). Although plaintiffs must establish standing for each claim and for each form of relief sought, Bostic v. Schaefer, 760 F.3d 352, 370 (4th Cir. 2014)

(citing <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 352 (2006) ("The standing requirement applies to each claim that a plaintiff seeks to press."), "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement," <u>id.</u> (quoting <u>Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.</u>, 547 U.S. 47, 52 n.2 (2006)).

To satisfy the injury-in-fact prong, a plaintiff must establish that he or she "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" <u>Spokeo</u>, 136 S.Ct. at 1548 (quoting <u>Lujan</u>, 504 U.S. at 560). To be particularized, an injury "must affect the plaintiff in a personal and individual way." <u>Curtis v. Propel Prop. Tax Funding, LLC</u>, 915 F.3d 234, 240 (4th Cir. 2019) (quoting <u>Spokeo</u>, 136 S.Ct. at 1548). To be concrete, an injury "must actually exist" and be "real, and not abstract." <u>Dreher v. Experian Info. Sols., Inc.</u>, 856 F.3d 337, 344 (4th Cir. 2017) (quoting <u>Spokeo</u>, 136 S.Ct. at 1548). That is, an alleged injury cannot be "too speculative for Article III purposes." <u>Clapper v. Amnesty Int'l USA</u>, 568 U.S. 398, 409 (2013) (quoting <u>Lujan</u>, 504 U.S. at 564 n.2). Though a threatened injury is sufficient to confer standing, the injury must be "certainly impending," or there must be a "'substantial risk' that the harm will occur." <u>Susan B. Anthony List v. Driehaus</u>, 573 U.S. 149, 158 (2014) (quoting <u>Clapper</u>, 568 U.S. at 409 n.5).

Here, to the extent Plaintiffs challenge the state court's ruling regarding the application of the Covenant and the razing remedy, the Court questions whether Plaintiffs have suffered an invasion of a legally protected interest that is fairly traceable to the County. However, Plaintiffs have pleaded enough to otherwise establish standing. They have stated, for instance, that the Notice, which became the Citation and regarding which

FoL requested and received a hearing, burdened their right to religious free exercise. The alleged injury is fairly traceable to the County because it issued the Notice-turned-Citation and held the hearing resulting in a declaration that FoL's use of the Property was non-conforming. And even if the Court cannot enjoin the razing, the Court could redress the injury by awarding compensatory damages. As a result, the Court concludes, again, that it has subject-matter jurisdiction in this case.

### c.     Failure to State a Claim

### 1.     RLUIPA

The County makes a similar argument with respect to the RLUIPA claims, that it was not party to and did not cause the Circuit Court case or the razing remedy Plaintiffs are challenging in the Court of Special Appeals of Maryland. The County responds that the Circuit Court relied, in part, on the County proceedings to reach its decision and that Plaintiffs suffered no financial harm by challenging the citation.

### a.     Substantial Burden

RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a). To state a RLUIPA substantial burden claim, a plaintiff "must show that a government's imposition of a regulation regarding land use, or application of such a regulation, caused a hardship that

substantially affected the plaintiff's right of religious exercise." <u>Hunt Valley</u>, 2017 WL 4801542, at *25 (quoting <u>Andon, LLC v. City of Newport News</u>, 813 F.3d 510, 514 (4th Cir. 2016)).

"[L]and use regulations can substantially burden religious exercise where an organization acquires property expecting to use it for a religious purpose but is prevented from doing so by the application of a zoning ordinance." <u>Jesus Christ Is the Answer Ministries, Inc.</u>, 915 F.3d 256, 260–61 (4th Cir. 2019), <u>as amended</u> (Feb. 25, 2019). "[T]wo questions are usually relevant to determining whether RLUIPA has been violated." <u>Id.</u> at 261. First, the Court must ask whether the impediment to the organization's religious practice is substantial. <u>Id.</u> A burden is typically substantial "where use of the property would serve an unmet religious need, the restriction on religious use is absolute rather than conditional, and the organization must acquire a different property as a result." <u>Id.</u> (citing <u>Bethel World Outreach Ministries v. Montgomery Cty. Council</u>, 706 F.3d 548, 557–58 (4th Cir. 2013)). Second, the Court must ask whether the government or the religious organization is responsible for the impediment. <u>Id.</u> To answer this question, a court looks to "whether the organization had a 'reasonable expectation' of religious land use and whether the burden faced by the organization is 'self-imposed.'" <u>Id.</u> (first quoting <u>Bethel</u>, 706 F.3d at 558; and then quoting <u>Andon</u>, 813 F.3d at 515). By way of example, "[w]hen a religious organization buys property reasonably expecting to build a church, governmental action impeding the building of that church may impose a substantial burden." <u>Hunt Valley</u>, 2017 WL 4801542, at *25 (quoting <u>Bethel</u>, 706 F.3d at 557).

Here, Plaintiffs have failed to state a substantial burden claim against the County. First, to the extent Plaintiffs argue that the County is at all liable for the Circuit Court's decision, Plaintiffs' claim must fail because the County's actions did not "cause" the Circuit Court judgment or its razing remedy. Andon, 813 F.3d at 514. The burden of that state court judgment and remedy was not "imposed by" the County. Id. at 516. That the County took certain actions before Zoll learned of the Covenant and filed suit in the Circuit Court does not constitute proximate cause for the burden or hardship of the state court judgment. See Incumaa v. Stirling, 791 F.3d 517, 535 (4th Cir. 2015), as amended (July 7, 2015) (requiring RLUIPA plaintiff "to show that his religious beliefs, rather than his choice to participate in a riot, are the proximate cause of his continued solitary confinement" (emphasis added)). The Court now turns to Plaintiffs' RLUIPA claim as it concerns the alleged substantial burden directly caused by the County.

With respect to the first question from Jesus Christ Is the Answer, Plaintiffs have pleaded that the Chabad House was serving an unmet religious need. But the County's restriction on the Property's use was conditional, not absolute. The County action at issue, the Notice-turned-Citation that eventually led to the Board of Appeals declaration, stated that Plaintiffs' use of the Property was not in accord with BCZR because it did not meet certain requirements for religious institutions and was a "Community Building" for which FoL had not obtained a special exception, per the BCZR. The BCZR, therefore, provided avenues for FoL to come into compliance with the BCZR. Plaintiffs petitioned for its first hearing, received an unfavorable result, and did not appeal. Instead of appealing the hearing result, Plaintiffs filed a petition to build the Expansion, which the County approved and

which Plaintiffs built despite the state court litigation based on the Covenant. In other words, Plaintiffs' religious exercise was not substantially burdened—they continued their activities on the Property and, in fact, expanded them, in part, due to the County's approval of the plans and issuance of building permits. Plaintiffs have not pleaded the extent of the financial cost of the Notice-turned-Citation or the hearings to allow the Court to assess the substantiality, but even if pleaded, such incidental costs would be not likely to state a claim for RLUIPA substantial burden. Further, Plaintiffs, to the Court's knowledge, have not acquired a different property as a result of the County's citation—likely because ALJ Beverungen approved FoL's plans for the Expansion, and the County issued building permits.

With respect to the second question from <u>Jesus Christ Is the Answer</u>, Plaintiffs have not pleaded facts that show they had a "reasonable expectation" of their religious land use on the Property. <u>Bethel</u>, 706 F.3d at 558. When FoL purchased the Property, they knew or should have known that synagogues were permitted as of right but that a Chabad House, which has a residential component but is expressly not a synagogue, would require a special exception. <u>See</u> <u>Andon</u>, 813 F.3d at 515. Further, the Circuit Court of Baltimore County has concluded that Plaintiffs knew about the Covenant when they bought the Property, a finding that has preclusive effect here.[8] Therefore, the burden, to the extent it stems from

---

[8] The doctrine of collateral estoppel precludes relitigation of issues under certain circumstances. <u>Allen v. McCurry</u>, 449 U.S. 90, 94 (1980). The purpose of the doctrines is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." <u>Id.</u> (citing <u>Montana v. United States</u>, 440 U.S. 147, 153–154 (1979)). "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the

FoL's plans, permits, and decision to build the Expansion in violation of the Covenant, is "self-imposed." Id. This distinguishes FoL's Complaint from that in Jesus Christ is the Answer, where the plaintiff planned to build a church, relied on her realtor's advice regarding the BCZR, and was still denied permits. Here, even apart from the Covenant issue, which the Jesus Christ is the Answer plaintiff did not face, FoL pleads it did not intend to build a religious building (a synagogue) and, after submitting its plans as a residential extension, was approved for permitting.

As a result, the Court will grant the County's Motion with respect to Plaintiffs' substantial burden claim.

### b.      Equal Terms

The County argues Plaintiffs' claim that the County treated FoL, a religious institution, differently than non-religious institutions also must fail because FoL has not cited a comparator institution. Plantiffs contend their "information and belief" allegation is

---

courts of the State from which the judgments emerged would do so." Gilliam v. Sealey, 932 F.3d 216, 231 (4th Cir. 2019) (quoting Allen, 449 U.S. at 96).

In Maryland, collateral estoppel is established if each of these questions is answered in the affirmative: (1) "Was the issue decided in the prior adjudication identical with the one presented in the action in question?"; (2) "Was there a final judgment on the merits?"; (3) "Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?"; and (4) "Was the party against whom the plea is asserted given a fair opportunity to be heard on the issue?" Colandrea v. Wilde Lake Cmty. Ass'n, Inc., 761 A.2d 899, 909 (Md. 2000).

Here, the issue of whether FoL knew about the Covenant was the same in state court as it is here. Further, FoL had a fair opportunity to contest the issue in state court before the Circuit Court entered a final judgment on the merits. Id. As a result, this Court concludes that the state court's decision has preclusive effect here. See Gilliam, 932 F.3d at 231.

sufficient to allow the Court to "assume that most applications to enlarge buildings" in the County do not follow the same course as Plaintiffs'.

After Twombly and Iqbal, a complaint wholly based "upon information and belief" is "insufficient to defeat a motion to dismiss." Mann Bracken, LLP v. Exec. Risk Indem., Inc., No. DKC 15-1406, 2015 WL 5721632, at *7 (D.Md. Sept. 28, 2015) (quoting Harman v. Unisys Corp., 356 F.App'x 638, 640–41 (4th Cir. 2009)). Complaints that use "upon information and belief" as an "inadequate substitute" for providing sufficient facts differ, however, from those that properly use the phrase "where a plaintiff does not have personal knowledge of the facts being asserted." Malibu Media, LLC v. Doe, No. PWG-13-365, 2014 WL 7188822, at *4 (D.Md. Dec. 16, 2014) (quoting Lilley v. Wells Fargo N.A., No. 10-81078C-13D, 2011 WL 1428089, at *3 (Bank.M.D.N.C. Apr. 13, 2011)). Notably, "'pleading on the basis of information and belief is generally appropriate' where information is 'particularly within defendants' knowledge and control.'" Mann Bracken, LLP, 2015 WL 5721632, at *7 (quoting Kajoshaj v. N.Y.C. Dep't of Educ., 543 F.App'x 11, 16 (2d Cir. 2013)).

Here, Plaintiffs plead: "On information and belief the Defendants did not impose on any secular organization or institution the same or similar conditions and burdens that they imposed on [Plaintiffs]." (Compl. ¶ 70). They do not name a single organization or institution, nor do they relate any attempt to find one, even though, as public information, such information is not "particularly within [the County's] knowledge and control." Mann Bracken, 2015 WL 5721632, at *7. To satisfy the Twombly plausibility pleading standard,

Plaintiffs must do more than speculate what they will find in the County's records. As a result, the Court will grant the County's Motion with respect to this claim.

### c.    Nondiscrimination

The County argues FoL has failed to allege facts that show the County's actions were based on religious animus or that the County discriminated among religious groups. Plaintiffs contend that their "information and belief" allegations are sufficient to merit discovery.

RLUIPA's non-discrimination provision states that "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). The provision incorporates elements of an equal protection analysis. See Hunt Valley, 2017 WL 4801542, at *29. "Under that precedent, a plaintiff must demonstrate that the government decision was motivated at least in part by discriminatory intent, which is evaluated using the 'sensitive inquiry' established in Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68 (1977)." Jesus Christ Is the Answer, 915 F.3d at 263.

The Fourth Circuit has recognized several factors that are probative of whether a decision-making body was motivated by discriminatory intent: "(1) evidence of a 'consistent pattern' of actions by the decision-making body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decision-making body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being

challenged, including any significant departures from normal procedures; and (4) contemporary statements by decision-makers on the record or in minutes of their meetings." <u>Reaching Hearts Intern. v. Prince George's Cty.</u>, 584 F.Supp.2d 766, 781 (D.Md. 2008) (quoting <u>Sylvia Dev. Corp. v. Calvert Cty.</u>, 48 F.3d 810, 819 (4th Cir. 1995)). Notably, "a government decision influenced by community members' religious bias is unlawful, even if the government decisionmakers display no bias themselves." <u>Jesus Christ Is the Answer</u>, 915 F.3d at 263 (citing <u>City of Cleburne v. Cleburne Living Ctr.</u>, 473 U.S. 432, 448 (1985)). Further, "[s]uch impermissible influence may be inferred where expressions of community bias are followed by irregularities in government decision-making." <u>Id.</u> (citing <u>Smith v. Town of Clarkton</u>, 682 F.2d 1055, 1066 (4th Cir. 1982)). "Under RLUIPA, a plaintiff need only establish a prima facie claim of religious discrimination, after which the defendant bears the burden of persuasion on all elements of the claim." <u>Id.</u> (first citing 42 U.S.C. § 2000cc-2(b); then citing <u>Chabad Lubavitch of Litchfield Cty., Inc. v. Litchfield Historic Dist. Comm'n</u>, 768 F.3d 183, 198 (2d Cir. 2014)).

Here, Plaintiffs have not pleaded facts to support a prima facie claim of religious discrimination. They have not pleaded any consistent pattern of actions disparately impacting FoL or similarly situated groups. As discussed above, many of Plaintiffs' allegations are directed at the Circuit Court judgment, making them immaterial to the County's liability. With respect to the County's actions, Plaintiffs' allegations regarding disparate treatment or impact are on information and belief, which is impermissible here where the information at issue is public. Plaintiffs have also not pleaded any history of

discrimination by the County. Plaintiffs have not alleged what the County's normal procedures are and therefore have not pleaded a deviation from those procedures. Plaintiffs have also not pleaded any statements from County decision-makers or community members that evidences any discriminatory intent. This distinguishes this case from <u>Jesus Christ is the Answer</u>, which involved allegations of specific comments about the race and religion of the plaintiffs and where the County Board of Appeals denied the plaintiffs' petition even though County officials did not oppose it, which they did here.

As a result, the Court will grant Defendants' Motion as to Plaintiffs' nondiscrimination claim.[9]

### d.    Total Exclusion

Defendants argue that Plaintiffs have not alleged facts that plausibly support that the County has totally excluded Plaintiffs' religious activity from the County. Plaintiffs counter that the County's actions will prevent a Chabad House from operating in the Towson area.

In <u>Vision Church v. Vill. Of Long Grove</u>, the Seventh Circuit held that that the government defendant, "by permitting churches in all residential districts as a special use, has not completely or totally excluded religious assemblies from its jurisdiction." 468 F.3d 975, 990 (7th Cir. 2006).

Here, Plaintiffs do not cite contrary case law on this point, other than a case from New York where the district court reconsidered its conclusion on the question of total

---

[9] Because the analysis is the same under the Equal Protection Clause, the Court will grant the County's Motion with respect to that claim as well.

exclusion in light of <u>Vision Church</u>. <u>See</u> <u>Congregation Rabbinical Coll. of Tarkitov, Inc.</u>

<u>v. Village of Pomona</u>, 280 F.Supp.3d 426, 486 (S.D.N.Y. 2017). Plaintiffs then attempt to

distinguish their claim from <u>Vision Church</u>[10] and <u>Congregation Rabbinical College</u> by

narrowing it to "total exclusion from the Towson area of the Jewish religious activities

provided by and to the Plaintiffs." (Pls.' Opp'n at 20–21). But besides stating that there is

an Orthodox synagogue 7.1 miles away, which does not support a claim for "total

exclusion," Plaintiffs make no other factual allegations that indicate the County has totally

excluded FoL from the jurisdiction. Further, the BCZR, as discussed above, permits

"buildings for religious worship" as of right and "community buildings" with a "special

exception." BCZR §§ 1B01.1.A.3, C.4. As a result, the Court concludes that Plaintiffs fail

to state a claim for total exclusion under RLUIPA and will grant the County's Motion as

to this claim.

### e. Unreasonable Limits

The County argues that FoL has not pleaded facts to support the allegation that they

were left without a reasonable opportunity to build elsewhere. Plaintiffs maintain that their

allegations regarding the County's "tactics between 2011 and 2017 to hinder and delay

the building permit" are sufficient.

RLUIPA's unreasonable limitation provision prohibits the imposition or

implementation of a land use regulation that "unreasonably limits religious assemblies,

---

[10] The Fourth Circuit has cited <u>Vision Church</u> approvingly with respect to an "unreasonable limits" claim under RLUIPA. <u>See</u> <u>Bethel</u>, 706 F.3d at 560 (citing <u>Vision Church</u>, 468 F.3d at 990–92).

institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(B). The Fourth Circuit has clarified that "[w]hile a religious institution may succeed on a substantial burden claim when government defeats its reasonable expectation of being able to build on a particular property, RLUIPA's unreasonable limitation provision prevents government from adopting policies that make it difficult for religious institutions to locate anywhere within the jurisdiction." Bethel, 706 F.3d at 560 (citing Vision Church, 468 F.3d at 990–92 (noting that a regulation requiring special use permit to locate in a residential district left religious assemblies with "a reasonable opportunity to build within the Village")).

Here, as noted above, Plaintiffs have not alleged that religious organizations like FoL are left without a reasonable opportunity to build elsewhere in the County. To the contrary, the BCZR explicitly provides for religious buildings and special exceptions. See Vision Church, 468 F.3d at 990–92. Plaintiffs have not pleaded sufficient facts for the Court to plausibly infer that the County uses those zoning provisions to "make it difficult" for religious institutions like FoL "to locate anywhere within the jurisdiction." Bethel, 706 F.3d at 560.

### 2. Constitutional Claims

#### a. Free Exercise

Defendants argue that Plaintiffs have not alleged facts that show the County imposed a discriminatory law or facts that show the County applied a neutral law in a discriminatory manner. Plaintiffs again counter that the County violated their constitutional rights before the state court litigation over the Covenant.

"Under the Supreme Court's free exercise doctrine, a neutral government decision of general applicability is subject to rational basis review, even where it has the incidental effect of burdening religious exercise." Jesus Christ Is the Answer, 915 F.3d at 265 (citing Emp't Div., Dep't of Human Res. v. Smith, 494 U.S. 872, 879 (1990)). A decision that aims "to infringe upon or restrict practices because of their religious motivation," however, is subject to strict scrutiny. Id. (quoting Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)). Notably, where a plaintiff has not stated a RLUIPA claim, there is no need for the court to separately consider the claim under the First Amendment because RLUIPA provides more protection for a religious exercise than the Free Exercise Clause. See Ryidu-X v. Foxwell, No. CV CCB-18-2213, 2019 WL 4060388, at *11 (D.Md. Aug. 27, 2019) (citing Lovelace v. Lee, 472 F.3d 174, 198 (4th Cir. 2006) ("RLUIPA incorporates and exceeds the Constitution's basic protections of religious exercise.") (emphasis added))).

Here, as discussed above, Plaintiffs have not adequately alleged that the County discriminated against them on the basis of their religion, nor do they allege that the pertinent BCZR provisions are discriminatory on their face. Similarly, the Court has concluded that Plaintiffs have not stated a RLUIPA claim, which contains greater protections than the First Amendment. See Lovelace, 472 F.3d at 198. As a result, the Court concludes that Plaintiffs fail to state a Free Exercise claim under § 1983.

### b. Due Process

The County argues that Plaintiffs have not alleged a property interest nor that the County arbitrarily deprived them of a property interest, to which Plaintiffs do not specifically respond.

Based on the Complaint's use of the word "arbitrarily" and the hearings Plaintiffs have received and appeals they have pursued, the County, and the Court, presume Plaintiffs intend to bring a substantive due process claim as opposed to a procedural due process claim. To do so, a plaintiff must allege: (1) "that it possessed a 'cognizable property interest, rooted in state law'"; and (2) "that the [County] deprived it of this property interest in a manner 'so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'" Siena Corp. v. Mayor & City Council of Rockville, 873 F.3d 456, 461 (4th Cir. 2017) (first quoting L.M. Everhart Constr., Inc. v. Jefferson Cty. Planning Comm'n, 2 F.3d 48, 51 (4th Cir. 1993); then quoting Sylvia Dev. Corp., 48 F.3d at 827). A cognizable property interest requires "a legitimate claim of entitlement" that "stem[s] from an independent source such as state law." Id. (citing Bd. of Regents v. Roth, 408 U.S. 564, 577 (1972)).

Here, Plaintiffs do not allege a constitutionally protected property interest of which the County deprived them. First, FoL does not specify the property interest at issue. The Court assumes it is their property interest in building the Expansion on the Property they own. But for this claim, Plaintiffs' property interest must stem from an independent source like state law, and here, state law does not give Plaintiffs that property interest. The Circuit Court for Baltimore County and the Court of Special Appeals of Maryland have concluded

that the Covenant is valid and prohibits the Expansion in its current location. Further, even if they had pleaded a property interest, they have not pleaded deprivation by the County "in a manner so far beyond the outer limits of legitimate governmental action that <u>no process</u> could cure the deficiency." <u>Siena Corp.</u>, 873 F.3d at 461 (internal quotations omitted).

As a result, the Court will grant the County's Motion as to this claim.

### 3.     Defamation

As defamation is a state-law claim, the Court must determine whether it is appropriate to retain jurisdiction over it. "[F]ederal courts are courts of limited jurisdiction." <u>Home Buyers Warranty Corp. v. Hanna</u>, 750 F.3d 427, 432 (4th Cir. 2014) (quoting <u>Kokkonen v. Guardian Life Ins. Co. of America</u>, 511 U.S. 375, 377 (1994)). There are three principal bases for subject-matter jurisdiction in federal court: (1) federal-question jurisdiction; (2) diversity jurisdiction; (3) and supplemental jurisdiction. <u>Costley v. City of Westminster</u>, No. GLR-16-1447, 2017 WL 5635463, at *1 (D.Md. Jan. 26, 2017); <u>see also</u> <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S. 546, 552 (2005). Federal district courts have federal question jurisdiction over civil actions that arise under federal law. 28 U.S.C. § 1331 (2018).

The Court has original jurisdiction over this case through federal question jurisdiction. Because the Court has dismissed the claims over which it had original jurisdiction, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. See 28 U.S.C. § 1367(c) (2018) (providing that "district courts may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has

dismissed all claims over which it has original jurisdiction"). Accordingly, the Court will dismiss Plaintiffs' defamation claim.

### III.    CONCLUSION

For the foregoing reasons, the Court will grant the County's Motion to Dismiss (ECF No. 15) and the Circuit Court's Motion to Dismiss (ECF No. 20). A separate Order follows.

Entered this 30th day of September, 2019.

_____/s/_____
George L. Russell, III
United States District Judge
