UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

---

FRIENDS OF LUBAVITCH, INC., *et al.*

               *Plaintiffs,*

v.                                                             CIVIL NO: GLR-18-3943

BALTIMORE COUNTY, MARYLAND, *et al.*

               *Defendants.*

---

## PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Plaintiffs hereby move by their undersigned counsel for leave to file an Amended Complaint addressing the deficiencies of the initial Complaint discussed in the Court's Memorandum Opinion of September 30, 2019.

### (1) The Circuit Court Motion To Dismiss

Our initial Complaint named the "Circuit Court for Baltimore County" as one of four defendants. Paragraph 17 of the Complaint defined the "Circuit Court for Baltimore County" as "an agency of the State of Maryland that acts under color of State law and is a 'government' as defined by 42 U.S.C. § 2000cc-5(4)(i), 42 U.S.C. § 2000cc-5(4)(ii), and 42 U.S.C. § 2000cc-5(4)(iii)." Paragraphs 57-59 of the Complaint identified Circuit Judge Susan Souder as one of two judges of the Circuit Court for Baltimore County whose action was challenged by the Complaint. Paragraph 63 of the Complaint identified Circuit Judge Kathleen Gallogly Cox as a second judge of the Circuit Court for Baltimore County whose action was challenged by the Complaint.

Plaintiffs' counsel named the Circuit Court as a defendant rather than identifying by name the Circuit Judges who erroneously issued prejudicial and unlawful actions (now on appeal to the Maryland Court of Special Appeals), because he wished to be courteous and appropriate.

1

He anticipated that the Circuit Court's lawyer would agree and not demand that the Circuit Judges be named individually as defendants.

In his initial motion to dismiss the complaint, counsel for the Circuit Court appeared to acquiesce in this courtesy. His Eleventh Amendment ground for dismissal was based **_only_** on the ground that a State has immunity under the Eleventh Amendment. Plaintiffs responded with a citation to *Ex parte Young*, 209 U.S. 123 (1908), which held that "prospective injunctive relief" could be granted notwithstanding the Eleventh Amendment. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 73 (1996). The Circuit Court's reply then asserted, for the first time, that by suing the institution rather than naming the judges as defendants, the Complaint violated the Eleventh Amendment. Plaintiff sought to file a Surreply which would have advised, *inter alia*, that in light of this argument – first stated in the Circuit Court's reply memorandum – plaintiffs were prepared to amend the Complaint to remove the State institution and to name the individual judges as defendants. The Court refused to permit the filing of a Surreply. See footnote 7 of the Memorandum Opinion.

In an Amended Complaint, plaintiffs will no longer name the Circuit Court but will name the individual Circuit Judges as defendants. This amendment will resolve the Eleventh Amendment issue if this Court accepts plaintiffs' contention that the litigation may proceed against the Circuit Judges under *Ex parte Young*.

### (2) **The RLUIPA "Substantial Burden" Claim**

The Court's Memorandum Opinion faults plaintiffs' RLUIPA "substantial burden" claim on the ground that the Complaint's allegations do not satisfy the definition of "substantial burden" that appears in language quoted by the Court from the Fourth Circuit's opinion in *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore County*, 915 F.3d 256, 261 (4th Cir. 2019),

citing *Bethel World Outreach Ministries v. Montgomery County Council*, 706 F.3d 548, 557-558 (4th Cir. 2013). The Court's Opinion says that the Fourth Circuit standard is not met because (a) "the County's actions did not 'cause' the Circuit Court judgment or its razing remedy" (p. 21), (b) "the County's restriction on the Property's use was conditional, not absolute" (p. 21), (c) "Plaintiffs' religious exercise was not substantially burdened – they continued their activities on the Property and, in fact, expanded them" (p. 22), (d) "incidental costs would be not likely to state a claim for RLUIPA substantial burden" (p. 22), (e) "Plaintiffs, to the Court's knowledge, have not acquired a different property as a result of the County's citation" (p. 22), (f) "Plaintiffs have not pleaded facts that show they had a 'reasonable expectation' of their religious land use on the Property" (p. 22), and (g) "the Circuit Court of Baltimore County has concluded that Plaintiffs knew about the Covenant when they bought the Property, a finding that has preclusive effect here" (p. 22). Each of these asserted deficiencies will be addressed in plaintiffs' Amended Complaint as specified hereinafter:

(a) Although Paragraphs 63 and 64 of the Complaint presently allege that the County's actions did "cause" the Circuit Court judges to order that the plaintiffs' house be razed, the Amended Complaint will specify in greater detail the causal nexus between the actions of the defendants and the court orders directing destruction of the building.

(b) The Amended Complaint will specify how the County's restriction on the "property's use" has imposed a substantial burden on the plaintiffs under the standard of the *Bethel World Outreach Ministries* decision even though the restriction "was conditional, not absolute." The "conditional" restriction in this case, like the restriction in the *Bethel World Ministries* case, prevented and delayed enlargement of the plaintiffs' facility to satisfy increasing demand for its religious services.

(c) The Amended Complaint will allege specifically that even though plaintiffs "continued their activities on the Property" and may even have "expanded them," the plaintiffs were delayed and prevented by the defendants from fully and adequately serving the religious needs of the Towson and Goucher students who would have benefited from the plaintiffs' Chabad House.

(d) The Amended Complaint will approximate the cost to the plaintiffs attributable to the improper and illegal citation and the wholly unjustified and unnecessary hearings imposed by the defendants' unlawful demands.

(e) Neither RLUIPA nor any decision of the Fourth Circuit (or any other Circuit) requires all RLUIPA plaintiffs to establish that they had to "acquire a different property as a result" of the defendants' conduct in order to claim under RLUIPA that the defendants' conduct created a "substantial burden." The Amended Complaint will allege with specificity the "delay, uncertainty, and expense" (see *Andon, LLC v. city of Newport News,* 813 F.3d 510, 515 (4th Cir. 2016)) that the defendants' conduct caused.

(f) Paragraphs 26 and 27 of the Complaint currently allege the plaintiffs' "reasonable expectation" that they would be able to use the Property for a Chabad House at which students at Towson and Goucher would fulfill Jewish religious needs. In response to the Court's assertion that these allegations are inadequate, the Amended Complaint will allege in greater detail how and why this particular Property was chosen for a Chabad House and why the plaintiffs believed, when FOL purchased the Property, that they would be able to enlarge the residence to accommodate increasing needs.

(g) Plaintiffs have contested and continue to contest the defendants' claim that the

"Plaintiffs knew about the Covenant when they bought the Property" and challenge any conclusion that such a finding is *res judicata*. Although plaintiffs do not believe that their legal position must be detailed among the facts alleged in the Complaint, the Amended Complaint will specify the reasons for the plaintiffs' position.

### (3) The RLUIPA "Equal Terms" Claim

The Complaint alleges on information and belief that no secular organization or institution has been subjected by the defendants to the "same or similar conditions and burdens" that the defendants imposed on the plaintiffs. The Court's Memorandum Opinion faults plaintiffs' "Equal Terms" allegation on the ground that the Complaint "has not cited a comparator institution" (p. 23).

The "conditions and burdens" imposed on the plaintiffs are, as the Complaint alleges in Paragraphs 39 through 52, unjustified issuance of a "Notice" of zoning violations, requirement of two administrative hearings to enlarge the plaintiffs' residence, oppositions filed by the County officials during those hearings, and other efforts to delay and deny the building permit. The Amended Complaint will allege that whether any secular organization or institution has ever been subjected to these draconian conditions is "peculiarly within defendants' knowledge and control." It is, therefore, entirely proper and within the pleading rules established by the Supreme Court decisions in *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to permit this allegation to be made "on information and belief." The necessary proof can be established only in discovery. *Malibu Media, LLC v. Doe*, 2014 WL 7188822 (D. Md. Dec. 16, 2014); *Kajoshaj v. New York City Dep't of Education*, 543 Fed. Appx. 11 (2d Cir. 2013).

5

The Court erroneously assumed (p. 24) that the plaintiffs could unilaterally learn from "public information" whether any secular organization or institution had been subjected to the same "conditions and burdens" when they sought to expand a building to accommodate use by a larger membership. To our knowledge there is no "public information" that would enable the plaintiffs to cite a particular secular organization or group that has filed a similar application and know whether it has been treated differently from the plaintiffs. Indeed, plaintiffs believe it likely that no other secular organization or group has been subjected to similar or comparable unjustified and unlawful "conditions and burdens."

### 4. The RLUIPA Nondiscrimination Claim

The Court's Memorandum Opinion faults the Complaint because it does not specify evidence of anti-religious "discriminatory intent" as required in the Fourth Circuit's *Jesus Christ Is the Answer* opinion (915 F.3d at 263). Such intent may be inferred from the history of the conduct of neighbors and the responsible officials towards the Chabad House, but the Amended Complaint will, in response to this deficiency, allege specifically that when FOL and Rabbi Rivkin first consulted Mr. Jablon, then Director of Permits, Approvals, and Inspections of Baltimore County, Mr. Jablon spoke negatively about Chabad and said to Rabbi Rivkin, "Don't try to convert me. I'm Reform." Mr. Jablon again spoke negatively about Chabad on subsequent occasions. Additional evidence of religious discrimination will emerge, plaintiffs believe, in discovery and such intent has, therefore, properly been alleged on information and belief.

### 5. The RLUIPA Total Exclusion Claim

The Amended Complaint will allege specifically that by preventing plaintiffs from expanding the residence that is on the Property, the defendants have totally excluded from Towson the only facility that can serve the religious observances of the Jewish students at

6

Towson University and Goucher College. For reasons stated at pages 20-21 of Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions To Dismiss, this allegation is sufficient to withstand a motion to dismiss under *Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, 138 F. Supp.3d 352, 442 (S.D.N.Y. 2015). The view of the Seventh Circuit in *Vision Church v. Long Grove*, 468 F.3d 975, 990 (7th Cir. 2006) – that the "total exclusion" provision applies only when **all** churches are excluded – has not been adopted or approved by the Fourth Circuit and is wrong.

### 6. The RLUIPA Unreasonable Limits Claim

The Court's Memorandum Opinion faults the Complaint because it does not allege that the plaintiffs would have encountered the same unlawful conduct designed to delay, obstruct, and prevent expansion of an existing residence to accommodate use for religious education by a larger crowd "anywhere within the jurisdiction." The specified unlawful conduct described in the Complaint is, by its nature, not limited to a particular site within Baltimore County, and it is a legitimate natural inference that what the defendants did would have defeated a "reasonable expectation of being able to build" on any site in the County. However, because this is explicitly noted in the Court's Memorandum Opinion, the Amended Complaint will allege that the plaintiffs had no reasonable opportunity to build their Chabad House elsewhere in Baltimore County.

### 7. The Constitutional Free Exercise Claim

The Court's Memorandum Opinion dismissed the plaintiffs' Free Exercise Claim because the Court dismissed the RLUIPA claims. In light of the allegations that will be included in the Amended Complaint, the RLUIPA claims will be sustained. As a result, the dismissal of the Free Exercise claim should be vacated.

### 8. The Constitional Due Process Claim

The Amended Complaint will allege that the plaintiffs have a property interest in the Property and in the expanded residence that has now been constructed on the Property. The defendants' unlawful conduct vis-à-vis that Property has produced a ruling by judges of the Circuit Court for Baltimore County that threatens to raze the expanded residence and thereby deprive the plaintiffs of the use of the Property. This allegation suffices under 42 U.S.C. § 1983.

### 9. The Defamation Claim

Since the Amended Complaint will support denial of the defendants' motions to dismiss on all claims under RLUIPA and the federal civil rights laws, the Court should also address the Maryland state-law claim in the exercise of its pendent jurisdiction.

## CONCLUSION

For the foregoing reasons, the Court should grant plaintiffs leave to file an Amended Complaint.

Respectfully submitted,

Dated: November 26, 2017

*/s/Nathan Lewin*
Nathan Lewin, Bar No. 03312
LEWIN & LEWIN, LLP
888 17th Street NW, 4th Floor
Washington, DC 20006
(202) 828-1000
nat@lewinlewin.com

David Felsen, Esq.
FELSEN & SARGENT, LLC
600 Jefferson Plaza, Suite 201
Rockville, MD 20852
(301) 251-4010
dfelsen@mdlawyers.com

*Attorneys for Plaintiffs*