IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore)

| | | |
|---|---|---|
| FRIENDS OF LUBAVITCH, INC. *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | No. 1:18-cv-003943-GLR |
| BALTIMORE COUNTY, | * | |
| MARYLAND *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**STATE JUDGES' OPPOSITION TO PLAINTIFFS' RENEWED
MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

BRIAN FROSH
Attorney General of Maryland

JOSEPH DUDEK
D. Md. Bar No. 20261
Assistant Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
(410) 576-7934
(410) 576-6393 (fax)
jdudek@oag.state.md.us

December 4, 2020                    Attorneys for Defendants

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 3

LEGAL STANDARD ........................................................................................... 4

ALLEGED FACTS .............................................................................................. 4

ARGUMENT........................................................................................................ 7

I.     Amendment Would Be Futile, Because the Amended Complaint Fails to State a Claim Against the Judges. ............................................................. 7

     A.    Plaintiffs' First Cause of Action Does Not State a RLUIPA Claim Against the Defendant Judges. ...................................................... 7

     B.    No Other Cause of Action Alleges Actionable Wrongful Conduct of or Seeks Relief From the Defendant Judges. ................................ 8

II.    Amendment Would Be Futile, Because the Judges Are Immune From Suit in This Court. ................................................................................... 10

     A.    Plaintiffs' Claims Against the Judges Are Barred by Judicial Immunity. ...................................................................................... 10

     B.    Plaintiffs' Claims Against the Judges Are Barred by Eleventh Amendment Immunity. ............................................................... 11

III.   Amendment Would Be Futile, Because This Court Lacks Jurisdiction to Consider Any Claim Against the Judges Under the *Rooker–Feldman* Doctrine. ......................................................................................... 13

CONCLUSION ............................................................................................. 15

## INTRODUCTION

Plaintiffs seek leave to amend the complaint they originally filed in December 2018. *See* ECF No. 1.  For the most part, they have supplemented the complaint with new allegations about certain Baltimore County officials' conduct.  *See* ECF No. 61-1 (redline of amendments).  Plaintiffs also substituted defendants, replacing the Circuit Court for Baltimore County (which this Court already held is immune from suit) with two judges of that court, Judges Kathleen Gallogly Cox and Susan Souder.[1]  *Id.*  Plaintiffs now assert that the judges, not the court, violated the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc.

Plaintiffs' claims against the judges fail for the same reasons that their claims against the circuit court failed, so amendment would be futile.  Put simply, judges who merely adjudicate cases within their jurisdiction do not violate any law.  And even if Plaintiffs' amended complaint stated a claim against the judges, that claim would face insurmountable procedural hurdles to recovery—judicial immunity and the Eleventh Amendment would bar any claim against the judges.  Were the judges not immune from suit, this Court would lack jurisdiction to consider the claims attacking their judgments under the *Rooker–Feldman* doctrine.  For roughly the same reasons that this Court dismissed claims against the Circuit Court for Baltimore County, it should deny Plaintiffs' motion to amend.

---

[1] Plaintiffs have not served process on these new defendants.

**LEGAL STANDARD**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Thus, "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Drager v. PLIVA USA, Inc*., 741 F.3d 470 (4th Cir. 2014).

An amended complaint is futile if it cannot survive a motion to dismiss.  *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995).  To decide whether the amended complaint could survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), this Court asks whether, if all the plausible facts asserted in the amended complaint are true, Plaintiffs could win.  *See* Mem. Op., ECF No. 35, at 11-12.  That is, a complaint must contain enough facts to state a claim to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When reviewing the complaint, this Court should discount naked assertions, bald accusations, and bare speculation.  *Id*. at 555-56.  After all, mere "'naked assertions' of wrongdoing" generally cannot state a claim for relief.  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).  This Court should then decide whether the remaining allegations, if true, would entitle Plaintiffs to relief from this Court.

**ALLEGED FACTS**

In 2008, Plaintiff Friends of Lubavitch, Inc. bought real property in Towson, Maryland that it intended to use as a Chabad House—a site for Jewish religious hospitality and education.  Amend. Compl., ECF No. 61, ¶ 18.  The Chabad-Lubavitch Hasidic movement assigned Plaintiffs Rabbi Menachem Rivkin and Sheina Rivkin to live in this

4

property and manage the Chabad House. *Id.* ¶ 21. Because the services provided by the Chabad House were so popular, Rabbi Rivkin and Mrs. Rivkin decided to install an addition on the property. *Id.* ¶ 29.

Plaintiffs allege that Baltimore County made it unreasonably difficult to install the addition. *Id.* ¶¶ 30-63. Plaintiffs expected to receive zoning approval for their addition and broke ground, *id.* ¶ 34, but Baltimore County's Code Enforcement Officer instead notified Rabbi Rivkin and Mrs. Rivkin that the modified house violated County requirements for houses of worship, *id.* ¶ 39. Rabbi Rivkin and Mrs. Rivkin requested and received a hearing before an administrative law judge, at which the Director of the Baltimore County Department of Planning argued that the Chabad House addition required a special exception from zoning regulations. *Id.* ¶¶ 42-43. The administrative law judge ruled against Rabbi Rivkin and Mrs. Rivkin, so they sought a new hearing on their addition proposal. *Id.* ¶¶ 45-49. County officials again opposed Rabbi Rivkin and Mrs. Rivkin's petition, but this time the administrative law judge approved the addition. *Id.* ¶¶ 49-51.

Rabbi Rivkin and Mrs. Rivkin obtained a building permit for the addition, but then learned that a covenant running with their land required them to maintain a setback from their neighbors' houses—a covenant that the addition would violate. *Id.* ¶¶ 52-53. Rabbi Rivkin and Mrs. Rivkin kept building anyway, so their neighbor sued them to enforce the covenant. *Id.* ¶¶ 54-56. Judge Susan Souder—a defendant here—presided over the trial in the lawsuit in 2017, admitted evidence at the trial, and ruled in the neighbor's favor, ordering that Rabbi Rivkin and Mrs. Rivkin restore the setback. *Id.* ¶¶ 57-58. Judge Souder's ruling was affirmed by the Court of Special Appeals of Maryland. *Id.* ¶ 61.

Plaintiffs specifically allege that Judge Souder's and the Court of Special Appeals's decisions were wrongly decided.  *See* Comparison Copy of Amend. Compl., ECF No. 60-1, ¶¶ 58, 61 (showing that Plaintiffs added allegations about wrongly decided state-court cases in the Amended Complaint).

Soon after Judge Souder's ruling, the Board of Appeals of Baltimore County held that Rabbi Rivkin and Mrs. Rivkin were not using the Chabad House purely as a residential property—that the property had "assumed the dual status of a residence and a community center."  Amend. Compl. ¶ 59.

The Circuit Court for Baltimore County appointed a receiver to administer compliance with Judge Souder's judgment.  *Id*. ¶ 62.  She recommended that the "original home on the property be removed and that the expansion be relocated," an expensive proposition that Judge Kathleen Gallogly Cox—the other judge defendant here—rejected. *Id*. ¶ 62-63.  Instead, Judge Cox noted the County's opposition to building the expansion at all, held that Rabbi Rivkin had unclean hands, and ordered that the Chabad House addition be demolished.  *Id*. ¶ 63.  In the Amended Complaint, Plaintiffs add the allegation that this order was "improper[]."  *See* Comparison Copy of Amend. Compl., ECF No. 60-1, ¶ 63.  Judge Cox then stayed her order pending appeal to the Maryland Court of Special Appeals, and the appeal remains pending.  Amend. Compl. ¶ 65.

**ARGUMENT**

I.   **AMENDMENT WOULD BE FUTILE, BECAUSE THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST THE JUDGES.**

A.   **Plaintiffs' First Cause of Action Does Not State a RLUIPA Claim Against the Defendant Judges.**

RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest."  42 U.S.C. 2000cc(a); Mem. Op., ECF No. 35, at 19-20.  To state a claim under this provision, Plaintiffs "must show that a government's imposition of a regulation regarding land use, or application of such a regulation, caused a hardship that substantially affected the plaintiff's right of religious exercise."  *Andon, LLC v. City of Newport News*, 813 F.3d 510, 514 (4th Cir. 2016).

Plaintiffs' core claim against the judge defendants fails because the judges did not "impos[e] a regulation regarding land use."  *Id*.  "Regulation," in this context, means "[a]n official rule or order, having legal force, [usually] issued by an administrative agency."  *Regulation*, Black's Law Dictionary (11th ed. 2019).  By Plaintiffs' own admission, Judge Souder enforced a private covenant running with Plaintiffs' land—the "1950 setback covenant"—not the zoning ordinances or land-use regulations of Baltimore County.  Amend. Compl. ¶ 58.  Indeed, it was the County's Board of Appeals, not Judge Souder, that later decided that the Chabad House had "exceeded the use compatible with that of a

residential property." *Id.* ¶ 59.  And Judge Cox fashioned a remedy for Plaintiffs' violation of the setback covenant; she did not impose or adjudicate the County's zoning regulations. *Id.* ¶ 63.

Because RLUIPA governs land-use regulations imposed by government executives, the proposed amended complaint does not state a claim against the judge defendants under RLUIPA.

### B.  No Other Cause of Action Alleges Actionable Wrongful Conduct of or Seeks Relief From the Defendant Judges.

Plaintiffs' amended complaint carefully distinguishes between the conduct of County officials and the conduct of the judge defendants.  Plaintiffs allege that County officials acted with discriminatory intent and worked to undermine Plaintiffs' religious exercise in the Chabad House.  *See, e.g.*, Amend. Compl. ¶¶ 39, 41, 44.  But Plaintiffs make no similar allegations about Judges Souder and Cox.  Instead, Plaintiffs contend that these judges considered a case within their jurisdiction and resolved it.  When Plaintiffs allege that the judges were incorrect, they insist that any incorrect rulings were County officials' fault.  Amend. Compl. ¶¶ 58 ("Judge Souder's opinion and order were caused by the improper and unlawful actions of the [other] Defendants' false allegations"), 63 ("false allegations made by the [other] Defendants . . . caused Defendant Judges Souder and Cox to find . . .").

Consistent with these distinctions, only Plaintiffs' first claim appears to seek relief from the judge defendants.  Counts 2 through 8, by contrast, argue that "[t]he Defendants' implementation of the Baltimore County land use regulations" violates RLUIPA and the

U.S. Constitution.  Though these counts use the collective noun "Defendants," they do not appear to assert claims based on the judge defendants' conduct.  The judge defendants did not "implement[] Baltimore County land use regulations"; they adjudicated a property-rights lawsuit brought by Plaintiffs' neighbors.

And Count 9 seeks relief only from the County defendants.  It alleges that County officials defamed Plaintiffs, then contends that "Defendants Baltimore County, Baltimore County Department of Planning, and Baltimore County Board of Appeals are liable to pay compensatory damages."  Amend. Compl. ¶ 90.  On its face, this does not state a claim against the judge defendants.

Had Plaintiffs meant to plead any of these counts against the judges, that effort would fail.  Plaintiffs state no facts from which this Court could infer that the judge defendants discriminated on the basis of religion.  Although Plaintiffs attribute comments about religion to County officials, *see* Amend. Compl. ¶ 32, they do not attribute any comments about religion to the judge defendants.  And Plaintiffs do not allege that the judge defendants treated Jewish litigants or property owners differently than they treat non-Jewish litigants or property owners.  Plaintiffs allege only that the judges judged—they impartially resolved a pending dispute within their jurisdiction.  That does not violate RLUIPA or the U.S. Constitution.

## II. AMENDMENT WOULD BE FUTILE, BECAUSE THE JUDGES ARE IMMUNE FROM SUIT IN THIS COURT.

### A. Plaintiffs' Claims Against the Judges Are Barred by Judicial Immunity.

Judges "are not liable to civil actions for their judicial acts." *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978). This absolute judicial immunity bars claims based on judicial acts, no matter how "erroneous the act may have been, and however injurious in its consequences it may have proved to the plaintiff." *Bradley v. Fisher*, 80 U.S. 335, 347 (1871). "Although unfairness and injustice to a litigant may result on occasion, 'it is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself.'" *Id.* at 10 (quoting *Bradley v. Fisher*, 80 U.S. 335, 347 (1871)).

Judges lose this immunity only (1) "for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity"; or (2) "for actions, though judicial in nature, taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). A judge acts in a judicial capacity when the function is one "normally performed by a judge" and when the parties "dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362.

Plaintiffs do not allege either exception to judicial immunity. Plaintiffs' only allegations against the judges attack their rulings on motions and in court proceedings. Plaintiffs were defendants in civil litigation and the judges were presiding over a case within their jurisdiction. When presiding, Judges Souder and Cox took *judicial* actions— they heard cases and entered orders. Amend. Compl. ¶¶ 57, 63. They are therefore immune

from civil liability.  *See Macdonald v. Strafford County Sup. Court*, No. 18-cv-1100-JL, 2019 WL 1385106, at \*5-\*6 (D.N.H. Mar. 27, 2019) (rejecting a similar RLUIPA claim based on judicial immunity).

> ### B.    Plaintiffs' Claims Against the Judges Are Barred by Eleventh Amendment Immunity.

The Eleventh Amendment bars suit in federal court against the State, its agencies, and officials acting in an official capacity unless Congress abrogates the immunity or the State waives it.[2]  *Puerto Rico Aqueduct and Sewer Auth. v. Metcalfe and Easy, Inc.*, 506 U.S. 139, 144-45 (1993).  "The ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court."  *Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 363 (2001).

As this Court already held when resolving the first motions to dismiss, the Circuit Courts of Maryland are immune from this suit under the Eleventh Amendment.  Mem. Op., ECF No. 35, at 10.  They are the "highest common-law and equity courts of record exercising original jurisdiction within the State," and Maryland's constitution vests them with the judicial power of the State.  Md. Code Ann., Cts. & Jud. Proc. § 1-501; Md. Const. art. IV, §§ 1, 14, 18.  Courts thus enjoy the State's sovereign immunity and any claim brought against a circuit court is barred by Eleventh Amendment immunity.  *See, e.g.*, *Madison v. Wheat*, 2016 WL 3546223, at \*2 (D. Md. June 23, 2016); *Lemon v. The Circuit*

---

[2] The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State."  U.S. Const. amend. XI. This amendment also precludes citizens from bringing suits in federal court against their own states.  *Alden v. Maine,* 527 U.S. 706, 713, 729 (1999).

*Court for Howard Cty.*, 2015 WL 7012724, at *1 (D. Md. Nov. 12, 2015); *Fishback v. Maryland*, No. JFM-12-927, 2012 WL 1145034, at *2 (D. Md. Apr. 4, 2012).  Maryland's sovereign immunity has not been waived or abrogated for RLUIPA claims, *Sossamon v. Texas*, 563 U.S. 277, 285 (2011), or for § 1983 claims, *Lynn v. West*, 134 F.3d 582, 586-87 (4th Cir. 1998).

Eleventh Amendment immunity also protects the judges of the circuit court sued in their official capacity, including the judge defendants here.  *Puerto Rico Aqueduct and Sewer*, 506 U.S. at 144-45.  The office of circuit court judge is established by Maryland law, and the judge defendants wield the sovereign power of the state.  Md. Code Ann., Cts. & Jud. Proc. §§ 1-501, 1-503; Md. Const. art. IV, §§ 20, 21.  Plaintiffs do not clearly articulate whether they are suing the judges in their individual or official capacities, but they carefully describe the judge defendants as State actors operating under color of State law.  Amend. Compl. ¶ 17.  That makes sense, because Plaintiffs complain of judicial acts taken by the judges in their official capacity.  Amend. Compl. ¶¶ 58, 63.

Plaintiffs' claims for declaratory and injunctive relief are also barred by the Eleventh Amendment because they do not fit into the "narrow exception" created by the *Ex Parte Young* doctrine.  *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 76 (1996); *see generally Ex Parte Young*, 209 U.S. 123 (1908).  Under this doctrine, the Eleventh Amendment "permits suits for prospective injunctive relief against state officials acting in violation of federal law."  *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

To determine whether the *Ex Parte Young* doctrine applies, "a court need only conduct a 'straightforward inquiry into whether the complaint alleges an ongoing violation

12

of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland v. Public Service Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (*quoting Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997)).  Plaintiffs fail both parts of this test— they allege no facts to show an ongoing violation of federal law by the judge defendants, and they seek no prospective injunctive relief against the judges.  Amend. Comp. at 25. Plaintiffs instead seek relief from the judges' *past* acts—the orders and judgments they have already entered—which are subject to review on appeal.  *See, e.g.*, *Davis v. Fraser*, No. 3:17-cv-00708, 2017 WL 3605444, at \*4 (S.D. Cal. Aug. 22, 2017) (rejecting *Ex Parte Young* claim based on decisions already made by judge).  Plaintiffs' remedy for an errant judicial decision is to appeal, not to sue the judges in this Court.

Plaintiffs are also statutorily prohibited from seeking an injunction under 42 U.S.C. § 1983.  Section 1983's text does not permit injunctive relief against a judicial officer "for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable."  Plaintiffs have not alleged a violation of a declaratory decree or that declaratory relief is unavailable.

**III.   AMENDMENT WOULD BE FUTILE, BECAUSE THIS COURT LACKS JURISDICTION TO CONSIDER ANY CLAIM AGAINST THE JUDGES UNDER THE *ROOKER–FELDMAN* DOCTRINE.**

Once the damages claims fall away under the immunity doctrines, all that remains is a request that this Court intervene to invalidate the state-court judgments.  That is, in effect, an appeal of those state-court judgments to this Court.  But this type of appeal is unavailable; one may only appeal from state-court judgments to federal court by petitioning the Supreme Court of the United States under 28 U.S.C. § 1257.

Under the *Rooker–Feldman* doctrine,[3] a federal trial court lacks jurisdiction to overturn a state-court judgment. *Adkins v. Rumsfeld,* 464 F.3d 456, 463-64 (4th Cir. 2006). The doctrine applies to deny subject matter jurisdiction in cases, such as this one, "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the [federal] district court proceedings commenced and inviting [federal] district court review and rejection of those judgments." *Exxon-Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005). As the Fourth Circuit has since explained, "[u]nder *Exxon*, . . . if the state-court loser seeks redress in the federal district court for the injury caused by the state-court decision, his federal claim is, by definition, 'inextricably intertwined' with the state-court decision, and is therefore outside of the jurisdiction of the federal district court." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 719 (4th Cir. 2006). The doctrine exists because "28 U.S.C. § 1257 vests sole jurisdiction to review [state-court judgments] in the Supreme Court [of the United States]." *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012).

Plaintiffs' requests for a declaration that the judge defendants erred or an injunction preventing the judge defendants from implementing their judgments are barred by this doctrine. That relief would be equivalent to this Court reversing the state court on appeal. Even if, as this Court already held, there are some claims against the County defendants

---

[3] *See generally D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 416 (1923).

that the *Rooker–Feldman* doctrine does not preclude,[4] all claims against the judge defendants are barred.

The state courts have finally adjudicated Plaintiffs' neighbors' property-law claim. This Court may not unwind that judgment; only the Supreme Court can do that. That state-court judgment, holding that Plaintiffs violated their neighbors' property rights, is entitled to res judicata effect in this Court. *Macdonald v. Strafford County Sup. Court*, 2019 WL 1385106, at *7 (declining to apply *Rooker–Feldman* in a RLUIPA action when res judicata precludes review).

## CONCLUSION

This Court should deny Plaintiffs' request for leave to amend their complaint, because their proposed amendment would be futile.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

    /s/ Joseph Dudek
JOSEPH DUDEK
Federal Bar No. 20261
Assistant Attorney General
200 Saint Paul Street, 20th Floor
Baltimore, Maryland 21202
jdudek@oag.state.md.us
(410) 576-7934
(410) 576-6393 (fax)

---

[4] *See* Mem. Op., ECF No. 35, at 15-16.

**CERTIFICATE OF SERVICE**

I certify that on December 4, 2020, I served this opposition on all parties entitled to

service by filing it in this Court's CM/ECF system.

        /s/ Joseph Dudek
JOSEPH DUDEK

16