IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

FRIENDS OF LUBAVITCH, et al.,     *

    Plaintiffs,              *

v.                            *        Civil Action No. GLR-18-3943

BALTIMORE COUNTY,       *
MARYLAND, et al.,
                          *

    Defendants.

***** 

## MEMORANDUM OPINION

THIS MATTER is before the Court on Plaintiffs Friends of Lubavitch, Inc. ("FoL"), Rabbi Menachem Rivkin, Sheina Rivkin, Avigail London, Uri London, Margaret Kay, Danielle Gold, Jessica Teich, Ilan Pluznik, Abby Adelman, and Jessica Rudin's Renewed Motion for Leave to File Amended Complaint (ECF No. 58) and Renewed Motion for Reconsideration (ECF No. 59). The Motions are ripe for disposition and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons outlined below, the Court will deny the Motions.

## I.    BACKGROUND

The facts as alleged by Plaintiffs are set forth in detail in the Court's September 30, 2019 Memorandum Opinion (ECF No. 35) (the "2019 Opinion"), and the Court will not reprint them here. In brief, FoL is a religious corporation that was formed to support the global Orthodox Jewish Chabad-Lubavitch movement in Maryland and to establish Chabad centers, a rabbinical school, and a primary school. (Compl. ¶¶ 3, 23, ECF No. 1). Plaintiffs Rabbi Menachem Rivkin ("Rabbi Rivkin") and Sheina Rivkin (collectively, the

"Rivkins") have administered one of those centers, the Towson Chabad House (the "Chabad House"), which has served Orthodox Jewish students and alumni of the nearby Towson University and Goucher College in Baltimore County, Maryland, including the eight other Individual Plaintiffs. (Id. ¶¶ 4–13, 18–19). The Chabad House is located at 14 Aigburth Road in Towson, Maryland (the "Property"), which FoL purchased in September 2008. (Id. ¶ 18).

This action arises from FoL's efforts to expand the Chabad House, which began in 2011 (the "Expansion"). (Id. ¶¶ 31–32). A determination by Defendants Baltimore County, Maryland, Baltimore County Department of Planning, and Baltimore County Board of Appeals (collectively, "County Defendants") temporarily suspended the Expansion upon finding that it violated residential zoning requirements. (Id. ¶¶ 35–50). The County eventually granted FoL a building permit to begin construction in 2016. (Id. ¶¶ 51–52). However, construction was stalled again when a neighbor and neighborhood organization sued FoL in the Circuit Court for Baltimore County, Maryland (the "Circuit Court") to enforce a covenant contained in the Chabad House deed that imposed a "setback" requirement that would prohibit the Expansion (the "Covenant"). (Id. ¶¶ 53–56). Following a bench trial in 2017, Judge Susan Souder ordered removal of the Expansion insofar as it violated the Covenant. (Id. ¶¶ 57–58). In a subsequent proceeding, Judge Kathleen Gallogly Cox ordered that the Expansion be "razed." (Id. ¶ 63).

On December 20, 2018, Plaintiffs sued County Defendants and the Circuit Court. (ECF No. 1). In their nine-count Complaint, Plaintiffs asserted various violations under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc ("RLUIPA")

(Counts I–V); violation of the Free Exercise Clause of the First Amendment to the U.S. Constitution (Count VI); violation of the Equal Protection Clause of the Fourteenth Amendment (Count VII); and violation of the Due Process Clause of the Fourteenth Amendment (Count VIII). (Compl. ¶¶ 18–84). Plaintiffs FoL and Rabbi Rivkin separately alleged defamation (Count IX). (Id. ¶¶ 85–90). Plaintiffs brought their three constitutional claims (Counts VI–VIII) under 42 U.S.C. § 1983. (Compl. at 18–19). Plaintiffs sought declaratory and injunctive relief, as well as monetary damages and their attorney's fees and costs. (Id. at 20–21).

On February 28, 2019, County Defendants and the Circuit Court each filed a Motion to Dismiss. (ECF Nos. 15, 20). After the motions were fully briefed, the Court issued a Memorandum Opinion and Order on September 30, 2019 granting the motions pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6) and dismissing Plaintiffs' Complaint. (ECF Nos. 35, 36).

On November 26, 2019, Plaintiffs filed a Motion for Leave to File Amended Complaint and Motion for Reconsideration pursuant to Rule 59(e). (ECF Nos. 39, 40). County Defendants filed their consolidated Opposition on January 21, 2020. (ECF No. 45). The Circuit Court filed its consolidated Opposition the same day. (ECF No. 46). On February 7, 2020, Plaintiffs filed a combined Reply in support of both Motions. (ECF No. 52). On September 1, 2020, this Court issued a Memorandum and Order denying Plaintiffs' Motions without prejudice on the basis that Plaintiffs had failed to attach a proposed amended complaint and red-lined comparison to their Motion as required by Local Rule 103.6 and Federal Rule of Civil Procedure 7(b). (ECF No. 55).

On November 2, 2020, Plaintiffs filed a Renewed Motion for Leave to File Amended Complaint and Renewed Motion for Reconsideration pursuant to Rule 59(e). (ECF Nos. 58, 59). Plaintiffs attached a proposed Amended Complaint to their Motion. (ECF No. 58-1). In the proposed Amended Complaint, among other changes, Plaintiffs added two individual circuit court judges, the Honorable Judge Susan Souder and the Honorable Judge Kathleen Gallogly Cox (the "Judge Defendants"). (Proposed Am. Compl. ["Am. Compl."] at 2, ECF No. 58-1). County Defendants filed their consolidated Opposition on December 4, 2020. (ECF No. 66). The Judge Defendants filed their consolidated Opposition the same day. (ECF No. 67). On January 4, 2021, Plaintiffs filed a combined Reply in support of their Motions. (ECF No. 68). County Defendants filed a Surreply on January 19, 2021. (ECF No. 71).

## II.    DISCUSSION

### A.    Standard of Review

The United States Court of Appeals for the Fourth Circuit recognized in Laber v. Harvey, 438 F.3d 404 (4th Cir. 2006), and more recently in Katyle v. Penn National Gaming, Inc., 637 F.3d 462, 470–71 (4th Cir. 2011), cert. denied, 132 S.Ct. 115 (2011), that the only distinction between a pre- and a post-judgment motion to amend is that the district court may not grant the post-judgment motion unless the judgment is vacated pursuant to Federal Rules of Civil Procedure 59(e) or 60(b). See Katyle, 637 F.3d at 470; Laber, 438 F.3d at 427. "To determine whether vacatur is warranted, however, the court need not concern itself with either of those rules' legal standards." Katyle, 637 F.3d at 471. Thus, "[t]he court need only ask whether the amendment should be granted, just as it would

on a prejudgment motion to amend pursuant to [Rule] 15(a)." Id. Consonant with the federal policy in favor of resolving cases on their merits, Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend a complaint] when justice so requires." Nonetheless, leave to amend is properly denied when amendment would prejudice the opposing party, the moving party has exhibited bad faith, or amendment would be futile. Edell & Assocs., P.C. v. Law Offices of Peter G. Angelos, 264 F.3d 424, 446 (4th Cir. 2001) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999)).

**B.    Analysis**

    **1.    Judge Defendants**

Judge Defendants argue, inter alia, that Plaintiff's claims against them are barred by the Eleventh Amendment. See Just Puppies, Inc. v. Frosh, 438 F.Supp.3d 448, 482 (D.Md. 2020) ("State officers sued in their official capacity are also entitled to Eleventh Amendment immunity because such a suit 'is not a suit against the official but rather is a suit against the official's office.'") (quoting Will v. Mich. Dep't of State Police, 491 U.S. 58, 70 (1989)). In Ex parte Young, 209 U.S. 123 (1908), however, the Supreme Court created an exception to Eleventh Amendment immunity for claims seeking prospective injunctive relief. As the Supreme Court has explained, the Ex parte Young exception "permits suits for prospective injunctive relief against state officials acting in violation of federal law." Frew ex rel. Frew v. Hawkins, 540 U.S. 431, 437 (2004).

Judge Defendants argue that Plaintiffs "allege no facts to show an ongoing violation of federal law by the judge defendants, and they seek no prospective injunctive relief

against the judges," but instead "seek relief from the judges' <u>past</u> acts—the orders and judgments they have already entered—which are subject to review on appeal." (State Judges' Opp'n Pls.' Renewed Mot. Leave File Am. Compl. ["Judges' Opp'n"] at 13, ECF No. 67). Plaintiffs respond that this is incorrect, noting that the Amended Complaint seeks an injunction against enforcement of Judge Defendants' orders and demolition of the Chabad House, which describe future actions that Plaintiffs allege violate federal law.

For three reasons, the Court agrees with Judge Defendants and finds that Plaintiffs' claims are barred by the Eleventh Amendment. First, as Judge Defendants argue, Plaintiffs fundamentally seek relief from actions Judge Defendants have already taken—the orders Judge Defendants issued in Plaintiffs' cases before them. (<u>See</u> Am. Compl. ¶¶ 57–65). But courts across the country have found that plaintiffs seeking relief from previous judicial decisions do not fall within the <u>Ex parte Young</u> exception. <u>See, e.g.</u>, <u>Martino v. Campbell</u>, No. 8:20-CV-694-T-33SPF, 2020 WL 2307559, at *2 (M.D.Fla. May 8, 2020) (finding that plaintiff "essentially asks this Court to vacate or reverse Judge Campbell's past rulings . . . . These are alleged past wrongs, not ongoing violations"); <u>Bowling v. McCraw</u>, No. 4:18-CV-610-ALM-CAN, 2019 WL 2517834, at *5 (E.D.Tex. Mar. 7, 2019) ("Plaintiff's requested injunctive relief is retroactive in nature: Plaintiff requests that the Court vacate and/or reverse Judge McCraw's previous orders in the state court case."), <u>report and recommendation adopted</u>, 2019 WL 3712025 (E.D.Tex. Aug. 7, 2019), <u>reconsideration denied,</u> 2020 WL 5096569 (E.D.Tex. Aug. 28, 2020). Plaintiffs may argue that they do not seek vacatur of Judge Defendants' orders, but rather a declaration that those orders were in

error and an order from this Court enjoining the effects of the orders. In the Court's view, this is a distinction without a difference; the relief they seek is a nullification of the orders.

Second, and relatedly, the relief Plaintiffs seek is fundamentally a request for the Court to mandate that Judge Defendants amend or alter their decisions. But "[f]ederal courts do not have the authority to order state courts to alter a judgment." Scott v. Morrison, 995 F.2d 1064, 1993 WL 212730, at *1 (4th Cir. 1993) (citing D.C. Ct. of Appeals v. Feldman, 460 U.S. 462, 483 (1983)). Put differently, federal district courts "do not have jurisdiction . . . over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." Feldman, 460 U.S. at 486. Instead, "[Plaintiffs'] proper avenue of relief is in the state judicial system." Scott, 1993 WL 212730, at *1.

Finally, even if the Court did construe the Amended Complaint as seeking prospective injunctive relief against Judge Defendants, Plaintiffs would not be entitled to relief under Ex parte Young because Judge Defendants lack a "special relationship" to the purportedly unlawful state action. As another Fourth Circuit court has explained, "the Young exception is not without boundaries. Plaintiffs must demonstrate a 'special relation' between the state officer sued and the allegedly unconstitutional statute to escape the bar of the Eleventh Amendment." Falwell v. City of Lynchburg, Va., 198 F.Supp.2d 765, 782–83 (W.D.Va. 2002) (citations omitted). Federal courts thus may enjoin state officers where those officers are "clothed with some duty in regard to the enforcement of the laws of the state, and who threaten and are about to commence proceedings, either of a civil or criminal nature, to enforce against parties affected an unconstitutional act." Id. at

782 (quoting <u>Ex parte Young</u>, 209 U.S. at 156–57). As the Supreme Court explained, "[t]he fact that the state officer, by virtue of his office, has some connection with the enforcement of the act, is the important and material fact[.]" <u>Ex parte Young</u>, 209 U.S. at 157. But "Plaintiffs' allegations that [Defendant] has a general obligation to enforce the laws are not sufficient to make him a proper party to litigation challenging" those laws. <u>Falwell</u>, 198 F.Supp.2d at 784. Applying this requirement to a state judge, the <u>Falwell</u> Court found:

> Judge Perrow is not clothed with any ability or duty to enforce the challenged statutes against the Plaintiffs; his role is to adjudicate cases brought before him—whether they are between the Commonwealth and a criminal defendant, church trustees and their congregation, or the trustees and some other party. In the event that he should preside over such a case, Judge Perrow would still not bear a sufficient connection to the challenged statute within the meaning of <u>Young</u> or the Eleventh Amendment.

<u>Falwell</u>, 198 F.Supp.2d at 785. The same logic applies to Judge Defendants in this matter. Because Judge Defendants are not "clothed with some duty" in regard to the laws underlying Plaintiffs' claims in this case, the Court finds that the <u>Ex parte Young</u> exception does not apply to them. Accordingly, Plaintiffs' claims against them are barred by the Eleventh Amendment.

For these reasons, the Court finds that Plaintiffs' proposed Amended Complaint is futile to the extent it asserts claims against Judge Defendants. The Court will therefore deny Plaintiffs' Motion for Leave to File Amended Complaint to assert those claims.

2.    **County Defendants**

a.    **RLUIPA**

i.    **Substantial Burden**

RLUIPA provides that "[n]o government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution—(A) is in furtherance of a compelling governmental interest; and (B) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc(a). To state a RLUIPA substantial burden claim, a plaintiff "must show that a government's imposition of a regulation regarding land use, or application of such a regulation, caused a hardship that substantially affected the plaintiff's right of religious exercise." Hunt Valley Baptist Church, Inc. v. Balt. Cnty., Md., No. ELH-17-804, 2017 WL 4801542, at *25 (D.Md. Oct. 24, 2017) (quoting Andon, LLC v. City of Newport News, 813 F.3d 510, 514 (4th Cir. 2016)).

In its 2019 Opinion, the Court found that Plaintiffs failed to state a substantial burden claim against County Defendants because: (i) County Defendants could not be liable for the Circuit Court's decision in that County Defendants' actions did not "cause" the Circuit Court judgment or its razing remedy; (ii) County Defendants did not substantially burden Plaintiffs' ability to expand the Chabad House, particularly given that County Defendants eventually approved Plaintiffs' plans; (iii) Plaintiffs failed to show that they had a reasonable expectation of their religious land use on the Property because, as

the Circuit Court of Baltimore County concluded, Plaintiffs knew about the Covenant when they bought the Property; and (iv) the Circuit Court's finding had a preclusive effect on this litigation. (Sept. 30, 2019 Mem. Op. ["2019 Op."] at 20–22, ECF No. 35).

Plaintiffs have moved for leave to amend their Complaint to add certain allegations disclaiming foreknowledge of the Covenant. (See, e.g., Am. Compl. ¶¶ 18, 19, 31). Plaintiffs' proposed amendments, however, cannot overcome the preclusive conclusions of the state courts. Specifically, the Circuit Court held as follows:

> Therefore, although Rabbi Rivkin testified that he did not have actual notice of the Setback Covenant until July 2016, Defendant is charged with constructive notice of the Setback Covenant and is liable thereto. Also, even though Rabbi Rivkin and Rabbi Kaplan said they did not have actual notice of the Setback Covenant, Defendant is charged with actual notice. Michael Schleupner's [sic] testified that a title search conducted in 2008 when Defendant purchased 14 Aigburth Road revealed the restrictive covenants. Also, the title insurance policy included an exception to coverage for the 1950 restrictive covenants. Thus, **Defendant had actual notice of the Setback Covenant in 2008.**

(Apr. 7, 2017 Cir.Ct. Mem. Op. ["Cir. Ct. Op."] at 10–11, ECF No. 15-4) (citation omitted) (emphasis added). If there was any ambiguity concerning whether the Circuit Court's holding reached the issue of Plaintiffs' knowledge of the Covenant, the Maryland Court of Special Appeals was emphatic in its affirmance:

> FOL acted with actual knowledge of the restrictive covenants and intentionally completed construction of the offending Building prior to the completion of trial. FOL seems to suggest that it had only constructive knowledge of the restrictive covenants but **the circuit court found that FOL had actual knowledge as of 2008**. FOL offers no explanation for why this finding by the circuit court is clear error. Contrary to FOL's characterization of facts on appeal, the record reveals that . . .

10

FOL was a "willful violator" of the Setback Covenant. **Despite receiving actual notice of the restrictive covenants in 2008 and again in July 2016, Rabbi Rivkin testified that FOL decided to "go ahead and build" anyway and to proceed "aggressively."**

(Oct. 23, 2018 Ct.Spec.App. Mem. Op. ["Ct. Spec. App. Op."] at 40, ECF No. 15-5) (citations omitted) (emphasis added).

As this Court held in its 2019 Opinion:

> [T]he issue of whether FoL knew about the Covenant was the same in state court as it is here. Further, FoL had a fair opportunity to contest the issue in state court before the Circuit Court entered a final judgment on the merits. As a result, this Court concludes that the state court's decision has preclusive effect here.

(2019 Op. at 22–23 n.8) (citations omitted). That finding is undisturbed by Plaintiffs' proposed amendments to their Complaint. Thus, the Amended Complaint still fails to adequately allege that Plaintiffs had a reasonable expectation of their religious land use on the Property. Moreover, Plaintiffs' proposed amendments do not disturb this Court's findings that Plaintiffs failed to allege that County Defendants were the proximate cause of the Circuit Court's actions that harmed Plaintiffs, or that County Defendants substantially burdened Plaintiffs' ability to expand the Chabad House. Accordingly, the Court finds that Plaintiffs' proposed Amended Complaint is futile to the extent it continues to assert substantial burden RLUIPA claims against County Defendants. The Court will therefore deny Plaintiffs' Motion for Leave to File Amended Complaint to the extent the proposed amendments seek to support those claims.

###### ii.        Equal Terms

RLUIPA prohibits a government from imposing or implementing a land use regulation "in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1). In its 2019 Opinion, the Court dismissed Plaintiffs' equal terms claim on the basis that Plaintiffs had failed to name a comparator organization or institution to which a factfinder might refer in determining whether Plaintiffs were treated on equal terms with nonreligious assemblies or institutions. (2019 Op. at 23–25). The Court found that Plaintiffs' allegations on information and belief—specifically, that "[o]n information and belief the Defendants did not impose on any secular organization or institution the same or similar conditions and burdens that they imposed on [Plaintiffs]," (Compl. ¶ 70)—were insufficient under the pleading standards set forth in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), noting that the information was not "particularly within defendants' knowledge and control." Mann Bracken, LLP v. Exec. Risk Indem., Inc., No. DKC 15-1406, 2015 WL 5721632, at *7 (D.Md. Sept. 28, 2015) (quoting Kajoshaj v. N.Y.C. Dep't of Educ., 543 F.App'x 11, 16 (2d Cir. 2013)).

Plaintiffs propose amending their Complaint to remove the "[o]n information and belief" language and to add generalized allegations that no secular organization has been subjected to the treatment they experienced in conjunction with attempting to build the Expansion. (See Am. Compl. ¶ 70). To prevail on an equal terms claim, however, a plaintiff "must identify a similarly situated comparator." Canaan Christian Church v. Montgomery Cnty., Md., 491 F.Supp.3d 39, 67 (D.Md. 2020) (citation omitted). Plaintiffs have failed to

do so. Accordingly, the Court finds that Plaintiffs' proposed Amended Complaint is futile to the extent it continues to assert equal terms RLUIPA claims against County Defendants. The Court will therefore deny Plaintiffs' Motion for Leave to File Amended Complaint to the extent the proposed amendments seek to support those claims.

### iii.      Nondiscrimination

RLUIPA's non-discrimination provision states that "[n]o government shall impose or implement a land use regulation that discriminates against any assembly or institution on the basis of religion or religious denomination." 42 U.S.C. § 2000cc(b)(2). The provision incorporates elements of an equal protection analysis. See Hunt Valley, 2017 WL 4801542, at *29. "Under that precedent, a plaintiff must demonstrate that the government decision was motivated at least in part by discriminatory intent, which is evaluated using the 'sensitive inquiry' established in Village of Arlington Heights v. Metropolitan Housing Development Corp., 429 U.S. 252, 266–68, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977)." Jesus Christ Is the Answer Ministries, Inc. v. Balt. Cnty., Md., 915 F.3d 256, 263 (4th Cir. 2019), as amended (Feb. 25, 2019).

Courts may examine several factors to determine whether a decision-making body was motivated by discriminatory intent:

> (1) evidence of a "consistent pattern" of actions by the decisionmaking body disparately impacting members of a particular class of persons; (2) historical background of the decision, which may take into account any history of discrimination by the decisionmaking body or the jurisdiction it represents; (3) the specific sequence of events leading up to the particular decision being challenged, including any significant departures from normal procedures; and (4)

> contemporary statements by decisionmakers on the record or
> in minutes of their meetings.

Sylvia Dev. Corp. v. Calvert Cnty., Md., 48 F.3d 810, 819 (4th Cir. 1995). "Under

RLUIPA, a plaintiff need only establish a prima facie claim of religious discrimination,

after which the defendant bears the burden of persuasion on all elements of the claim."

Jesus Christ Is the Answer, 915 F.3d at 263.

With respect to Plaintiffs' nondiscrimination claim, the Court found:

> Plaintiffs have not pleaded facts to support a prima facie claim
> of religious discrimination. They have not pleaded any
> consistent pattern of actions disparately impacting FoL or
> similarly situated groups. As discussed above, many of
> Plaintiffs' allegations are directed at the Circuit Court
> judgment, making them immaterial to the County's liability.
> With respect to the County's actions, Plaintiffs' allegations
> regarding disparate treatment or impact are on information and
> belief, which is impermissible here where the information at
> issue is public. Plaintiffs have also not pleaded any history of
> discrimination by the County. Plaintiffs have not alleged what
> the County's normal procedures are and therefore have not
> pleaded a deviation from those procedures. Plaintiffs have also
> not pleaded any statements from County decision-makers or
> community members that evidences any discriminatory intent.
> This distinguishes this case from Jesus Christ is the Answer,
> which involved allegations of specific comments about the
> race and religion of the plaintiffs and where the County Board
> of Appeals denied the plaintiffs' petition even though County
> officials did not oppose it, which they did here.

(2019 Op. at 26–27). On these bases, the Court dismissed the claim.

Plaintiffs propose curing the deficiencies in their nondiscrimination claim by adding

two discriminatory statements allegedly made by Arnold Jablon, Baltimore County's

Director of Permits, Approvals, and Inspections. (See Am. Compl. ¶¶ 32, 37). Specifically,

Plaintiffs allege that Jablon said to Rabbi Rivkin, "Don't try to convert me. I'm Reform,"

14

and that, referencing Plaintiffs, Jablon said to FoL's attorney, "Don't call them Jewish like me. They are extreme Jews like evangelical Christians." (Id.). Plaintiffs' proposed Amended Complaint does not meaningfully address the other deficiencies identified by the Court, including the absence of allegations concerning: (a) a consistent pattern of actions disparately impacting FoL or similarly situated groups; (b) allegations regarding disparate treatment or impact that identify similarly situated comparators; (c) a history of discrimination by County Defendants; or (d) what the County's normal procedures are and the alleged deviations from those procedures.

The two statements allegedly made by Jablon in 2014 must be viewed in context: specifically, that the County ultimately approved Rabbi Rivkin's application for the Expansion. (See Am. Compl. ¶ 51; Ct. Spec. App. Op. at 7–8). Thus, in the end, after following processes for seeking an exception to County zoning regulations that Plaintiffs do not allege were abnormal,[1] County Defendants granted Plaintiffs the relief they sought: permission to build the Expansion. It was the Circuit Court that ordered Plaintiffs to discontinue work on and ultimately raze the Expansion, and it made its decisions based on the existence of the Covenant, not on County zoning regulations. To the extent Plaintiffs allege that they were harmed by the process imposed by County Defendants for obtaining an exception to the zoning regulations—i.e., receiving a citation and notice and being forced to attend multiple hearings—they do not allege that the process differed from that

---

[1] Plaintiffs broadly allege "no secular organization or institution has been subjected to" the process to which County Defendants subjected them, (see Am. Compl. ¶ 73), but they do not attempt to describe the County's normal process for evaluating zoning issues or how their experience deviated from that process.

imposed on any similarly situated comparator institution. See Bethel World Outreach Ministries v. Montgomery Cnty. Council, 706 F.3d 548, 560 (4th Cir. 2013) ("The application of a neutral ordinance may violate RLUIPA's nondiscrimination provision if it differentially treats similarly situated religious assemblies on the basis of denomination.") (quoting Church of Scientology of Ga., Inc. v. City of Sandy Springs, 843 F.Supp.2d 1328, 1361 (N.D.Ga. 2012)).[2]

Viewing the allegations holistically, the Court finds that Plaintiffs have not plausibly alleged that County Defendants imposed any meaningful burden on Plaintiffs that arose out of discriminatory intent. Accordingly, the Court finds that Plaintiffs' proposed Amended Complaint is futile to the extent it continues to assert nondiscrimination RLUIPA claims against County Defendants. The Court will therefore deny Plaintiffs' Motion for Leave to File Amended Complaint to the extent the proposed amendments seek to support those claims.[3]

### iv.    Total Exclusion

RLUIPA prohibits a government from imposing or implementing a land use regulation that "totally excludes religious assemblies from a jurisdiction." 42 U.S.C.

---

[2] While it is true that "RLUIPA's nondiscrimination provision doesn't require a comparison to similarly situated entities," Jesus Christ Is the Answer, 915 F.3d at 263 (citing Chabad Lubavitch of Litchfield Cnty., Inc. v. Litchfield Historic Dist. Comm'n, 768 F.3d 183, 199 (2d Cir. 2014)), "such evidence is certainly germane to a selective enforcement analysis." Chabad Lubavitch, 768 F.3d at 199. Likewise, the absence of such evidence, while not fatal, weighs in County Defendants' favor in determining whether Plaintiffs have adequately pleaded discriminatory intent.

[3] Because the analysis is the same under the Equal Protection Clause, the Court will also deny Plaintiffs' Motion for Leave to File Amended Complaint to the extent the proposed amendments seek to support that claim.

§ 2000cc(b)(3)(A). In <u>Vision Church v. Village Of Long Grove</u>, the Seventh Circuit held that that the government defendant, "by permitting churches in all residential districts as a special use, has not completely or totally excluded religious assemblies from its jurisdiction." 468 F.3d 975, 990 (7th Cir. 2006).[4] In the present case, the Court dismissed Plaintiffs' RLUIPA total exclusion claim upon finding that (a) Plaintiffs do not allege that County Defendants totally excluded FoL from the jurisdiction, and (b) County zoning regulations permit "buildings for religious worship" as of right and "community buildings" with a "special exception." (2019 Op. at 28).

Plaintiffs have not made meaningful changes in the Amended Complaint to address the Court's prior holding regarding their total exclusion claim. Plaintiffs attempt to evade the "total" portion of the "total exclusion" claim by alleging that County zoning regulations "totally exclude" Towson University and Goucher College students from receiving certain religious services because "[n]o Orthodox Jewish institution exists less than 7 miles distant from the Chabad House." (Am. Compl. ¶ 76). As other courts have held, this is not the showing Plaintiffs must make to survive a motion to dismiss a RLUIPA total exclusion claim. <u>See</u> <u>Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, N.Y.</u>, 945 F.3d 83, 125 (2d Cir. 2019) ("The exclusion provision of RLUIPA forbids the <u>total</u> exclusion of religious assemblies from a jurisdiction. The challenged laws do not totally exclude all religious assemblies from Pomona. The district court correctly dismissed

---

[4] The Fourth Circuit has cited <u>Vision Church</u> approvingly, albeit with respect to a different section of RLUIPA. <u>See</u> <u>Bethel</u>, 706 F.3d at 560 (citing <u>Vision Church</u>, 468 F.3d at 990–92).

these claims.") (footnote and citations omitted), <u>cert. denied</u>, 141 S. Ct. 885 (2020); <u>Adhi Parasakthi Charitable, Med., Educ., & Cultural Soc'y of N. Am. v. Twp. of W. Pikeland</u>, 721 F.Supp.2d 361, 386 (E.D.Pa. 2010) ("Plaintiff's claim for a total exclusion under RLUIPA must be denied for the same reason . . . . Plaintiff's religious use simply has not been totally excluded from Defendant's jurisdiction.").

Plaintiffs' proposed Amended Complaint does not allege that they have been totally excluded from the County. Accordingly, the Court finds that Plaintiffs' proposed Amended Complaint is futile to the extent it continues to assert total exclusion RLUIPA claims against County Defendants. The Court will therefore deny Plaintiffs' Motion for Leave to File Amended Complaint to the extent the proposed amendments seek to support those claims.

### v.   Unreasonable Limitations

RLUIPA's unreasonable limitation provision prohibits the imposition or implementation of a land use regulation that "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3)(B). The Fourth Circuit has clarified that "[w]hile a religious institution may succeed on a substantial burden claim when government defeats its reasonable expectation of being able to build on a particular property, RLUIPA's unreasonable limitation provision prevents government from adopting policies that make it difficult for religious institutions to locate anywhere within the jurisdiction." <u>Bethel</u>, 706 F.3d at 560 (noting that a regulation requiring special use permit to locate in a residential district left religious assemblies with

"a reasonable opportunity to build within the Village" (citing <u>Vision Church</u>, 468 F.3d at 990–92)).

The Court dismissed Plaintiffs' unreasonable limitation claim on the basis that, as noted above, Plaintiffs have not alleged that religious organizations like FoL are without a reasonable opportunity to build within the County. (2019 Op. at 29). Plaintiffs' Amended Complaint does not include sufficient facts for the Court to plausibly infer that the County uses its zoning provisions to "make it difficult" for religious institutions like FoL "to locate anywhere within the jurisdiction." <u>Bethel</u>, 706 F.3d at 560 (citation omitted). Instead, Plaintiffs' proposed amendments on this subject only clarify that "if the Chabad House is demolished"—an action that, if it occurs, will have been caused by the state courts, not County Defendants—"no student of at Towson University or Goucher College will realistically be able to obtain on Sabbaths and Jewish holidays dietary permissible (kosher) prepared meals and religious instruction." (Am. Compl. ¶ 78). Once again, this allegation does not satisfy Plaintiffs' burden for their unreasonable limitation claim. Accordingly, the Court finds that Plaintiffs' proposed Amended Complaint is futile to the extent it continues to assert unreasonable limits RLUIPA claims against County Defendants. The Court will therefore deny Plaintiffs' Motion for Leave to File Amended Complaint to the extent the proposed amendments seek to support those claims.

### b.    Free Exercise

"Under the Supreme Court's free exercise doctrine, a neutral government decision of general applicability is subject to rational basis review, even where it has the incidental effect of burdening religious exercise." <u>Jesus Christ Is the Answer</u>, 915 F.3d at 265

(citing Emp't Div., Dep't of Human Res. v. Smith, 494 U.S. 872, 879 (1990)). A decision that aims "to infringe upon or restrict practices because of their religious motivation," however, is subject to strict scrutiny. Id. (quoting Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah, 508 U.S. 520, 533 (1993)).

Notably, where a plaintiff has not stated a RLUIPA claim, there is no need for the court to separately consider the claim under the First Amendment because RLUIPA provides more protection for a religious exercise than the Free Exercise Clause. See Ryidu-X v. Foxwell, No. CV CCB-18-2213, 2019 WL 4060388, at *11 (D.Md. Aug. 27, 2019) (citing Lovelace v. Lee, 472 F.3d 174, 198 (4th Cir. 2006) ("RLUIPA incorporates and exceeds the Constitution's basic protections of religious exercise.") (emphasis added))). As set forth above, Plaintiffs' proposed amendments to their RLUIPA claims are futile. Accordingly, the Amended Complaint fails to state a claim under the Free Exercise Clause. The Court will therefore deny Plaintiffs' Motion for Leave to File Amended Complaint to the extent the proposed amendments seek to support that claim.

### c.  Due Process

In its 2019 Opinion, the Court inferred that Plaintiffs sought to advance a substantive due process claim. Plaintiffs have not objected to that inference in their briefing on the instant Motions. To survive a motion to dismiss on a substantive due process claim, a plaintiff must allege: (1) "that it possessed a 'cognizable property interest, rooted in state law'"; and (2) "that [defendants] deprived it of this property interest in a manner 'so far beyond the outer limits of legitimate governmental action that no process could cure the deficiency.'" Siena Corp. v. Mayor & City Council of Rockville, Md., 873 F.3d 456, 461

(4th Cir. 2017) (first quoting <u>L.M. Everhart Constr., Inc. v. Jefferson Cnty. Planning Comm'n</u>, 2 F.3d 48, 51 (4th Cir. 1993); then quoting <u>Sylvia Dev. Corp.</u>, 48 F.3d at 827). A cognizable property interest requires "a legitimate claim of entitlement" that "stem[s] from an independent source such as state law." <u>Id.</u> (citing <u>Bd. of Regents v. Roth</u>, 408 U.S. 564, 577 (1972)).

Plaintiffs define the property interest at issue as their interest in the Property as residents. (Am. Compl. ¶ 84). The proposed Amended Complaint further states that "Defendants' implementation of the Baltimore County land use regulations arbitrarily denies to these Plaintiffs rights" they are guaranteed under the Fourteenth Amendment. (<u>Id.</u>). While this sentence is not a model of clarity, the Court infers that Plaintiffs mean to allege that the County zoning regulations have deprived them of their ability to build and maintain structures on the Property as they see fit, including by expanding the Chabad House.

This claim must fail for two reasons. First, County Defendants have not prohibited Plaintiffs from expanding the Chabad House; the state courts did so on the basis of the Covenant. Second, Plaintiffs have not adequately alleged that the actions of any Defendant deprived them of their property "in a manner so far beyond the outer limits of legitimate governmental action that <u>no process</u> could cure the deficiency." <u>Siena Corp.</u>, 873 F.3d at 461 (internal quotation marks and citation omitted). Accordingly, the proposed Amended Complaint fails to state a claim for a violation of the Due Process Clause. The Court will therefore deny Plaintiffs' Motion for Leave to File Amended Complaint to the extent the proposed amendments seek to support that claim.

### d.     Defamation

Defamation is a state-law claim. In its 2019 Opinion, having dismissed all of Plaintiffs' federal claims, the Court dismissed their defamation claim for lack of jurisdiction. <u>See</u> 28 U.S.C. § 1367(c) (providing that "district courts may decline to exercise supplemental jurisdiction over a claim [if] . . . the district court has dismissed all claims over which it has original jurisdiction"). Because the Court will not grant Plaintiffs' Motion for Leave to File Amended Complaint with respect to their federal claims, the Court will not reconsider its decision to dismiss Plaintiffs' defamation claim.

## III.     CONCLUSION

For the foregoing reasons, the Court will deny Plaintiffs' Renewed Motion for Leave to File Amended Complaint (ECF No. 58). Because it will not grant Plaintiffs leave to amend their Complaint, the Court will also deny Plaintiffs' Renewed Motion for Reconsideration (ECF No. 59). A separate Order follows.

Entered this 3rd day of June, 2021.

                                         /s/
                                    _____
                                    George L. Russell, III
                                    United States District Judge